IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE:<br><br>ANTHONY CARVER MCCLARN,<br><br>    Debtor. | Case No. 14-75160-sms<br>Chapter 13 |
| ANTHONY CARVER MCCLARN,<br><br>    Plaintiff,<br><br>v.<br><br>CITIZENS TRUST BANK and LOANCARE, LLC,<br><br>    Defendants. | Adversary No. 20-06070-sms |

**<u>DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT</u>**

COME NOW, Citizens Trust Bank ("Citizens"), LoanCare, LLC ("LoanCare") (collectively, the "Defendants"), and file this Memorandum of Law in Support of their Motion for Summary Judgment, pursuant to Fed. R. Civ. P. 56, respectfully showing this Honorable Court as follows:

**<u>INTRODUCTION</u>**

In this case, Plaintiff Anthony Carver McClarn ("Plaintiff" or "Debtor") is suing his mortgage lender, Citizens, and its loan servicer, LoanCare, for civil contempt related to a consent order entered in the underlying bankruptcy case. That consent order required the Plaintiff to tender a specific amount of funds to the Defendants in a certified form by February 10, 2020, but he instead waited until February 24, 2020, to do so. Once those funds were applied and

1

LoanCare applied certain other funds it was holding (which were spelled out in the consent order), the mortgage loan would be due for February 1, 2020. LoanCare fully applied those funds by May 5, 2020.

Because of that three month wait to have the funds applied, the Plaintiff contends that the Defendants are in contempt of court for violating the terms of the consent order, despite the consent order setting forth no deadline related to the funds other than the Plaintiff's tender of them, which he failed to comply with. Even if the Defendants had violated some term of the consent order related to application of the funds, this Court should not permit a party with such unclean hands to recover any damages for contempt. Moreover, the undisputed facts show that the Plaintiff has failed to establish that he suffered any compensable damages caused by the Defendants' alleged contempt. This Court should grant summary judgment to the Defendants.

## STATEMENT OF MATERIAL FACTS

On May 31, 2007, the Plaintiff executed a promissory note and security deed in the amount of $178,450.00 at a fixed interest rate of 6.5% in favor of Citizens. *See* Defendants' Statement of Material Facts ("SOMF") at ¶ 1. Citizen remains the holder of the promissory note and security deed, and LoanCare is the servicer on behalf of Citizens. *Id.* at ¶ 2.

Fast forward over seven years later, and the Plaintiff filed the underlying Chapter 13 case on December 30, 2014 (the "Bankruptcy Case"). *Id.* at ¶ 3. Citizens filed a proof of claim in the case, which showed that the Debtor owed $34,546.01 in pre-petition arrears. *Id.* at ¶ 4. The Debtor's Chapter 13 Plan was confirmed on March 24, 2015, which proposed to cure the arrearage on the subject mortgage and make ongoing monthly payments. *Id.* at ¶ 5.

The Bankruptcy Case was initially closed on January 17, 2019, without entry of discharge, *id.* at ¶ 6, but a little over a month later, on February 26, the Chapter 13 Trustee

moved to reopen the case, stating that "[d]ue to a clerical error, the Trustee did not file a Notice of Final Cure Payment pursuant to Fed. R. Bankr. P. 3002.1(f) in reference to the claim of Citizens Trust Bank/LoanCare, LLC." *Id.* at ¶ 7. This motion was granted on February 28, 2019. *Id.*

After the case was reopened, the Chapter 13 Trustee filed a Notice of Final Cure in the Bankruptcy Case, stating that the Trustee had paid the full amount of the pre-petition arrears -- $34,546.01. *Id.* at ¶ 8. On March 22, 2019, Citizens filed a Response to Notice of Final Cure Payment, agreeing that the pre-petition arrears had been cured, but asserting that there was a post-petition default in the amount of $6,779.50. *Id.* at ¶ 9. Apparently disagreeing and believing the loan was current, the Debtor filed a motion on April 23, 2019, titled "Motion to Deem Mortgage Current". *Id.* at ¶ 10. Citizens filed a response in opposition on June 7, 2019, asserting that the loan was *not* current. *Id.* at ¶ 11.

Seven months later, on January 30, 2020, this Court entered a Consent Order on the Motion to Deem Mortgage Current (the "Consent Order"). *Id.* at ¶ 12. The Consent Order stated:

> THE PARTIES AGREE:
> That the post-petition arrearage through January 1, 2020 is $19,899.80. Once Debtor tenders certified funds to Respondent in the amount of $15,794.24 and Respondent applies the excess escrow balance of $4,105.56, Debtor will be current through January 1, 2020 and due for the February 1, 2020 payment. The parties further agree:
> That Debtor has paid in full the amount required to satisfy Respondent's pre-petition arrearage claim. The parties further agree
> That Respondent has not and will not assess Debtor's loan any additional interest due to Debtor tendering mortgage payments later than their respective due dates, or in other words, interest charged on the account will be the same as if all payments had been tendered timely. The partiers further agree;
> Debtor will be allowed online access to his mortgage account once the case has closed. Accordingly, it is hereby
> **ORDERED** that Debtor shall tender certified funds in the amount of $15,794.24 to Respondent within ten (10) days of entry of this Order; it is
> **FURTHER ORDERED** that Respondent shall apply the excess escrow balance of $4,105.56 to Debtor's principal and interest payments; it is

3

> **FURTHER ORDERED** that Respondent shall allow Debtor online access to his account within seven calendar days following the closing of this case and through and until the loan is satisfied or transferred.
> This matter resolves all outstanding issues in the case. The Clerk may close this bankruptcy case.

*Id.*

Despite the Consent Order requiring the Debtor to tender certified funds by February 10, 2020, he did not deliver them to LoanCare until February 24, 2020 – two weeks late. *Id.* at ¶ 13. Although the funds were tendered late, the Certified Funds have since been applied to the subject loan, and on May 5, 2020, LoanCare applied the excess escrow balance of $4,105.56, which then brought the loan due and owing for February 1, 2020. *Id.* at ¶ 14.

In this action for contempt, the Plaintiff contends that the Defendants violated the terms of the Consent Order as follows:

1. Failure to provide accurate statements;
2. Failure to provide online access to tender the funds;
3. Failure to apply funds;
4. Seeking to collect erroneous amounts in excess of what was allowed by the Consent Order;
5. Failing to update Plaintiff's account to reflect the Consent Order.

*Id.* at ¶ 15.

Although the Plaintiff alleges that the Defendants failed "to provide online access to tender the funds," he later admitted that the Consent Order did not permit the Certified Funds to be tendered via the internet. *Id.* at ¶ 16.

With respect to damages, the Plaintiff is seeking the following damages in this action:

- Interest incurred from 2019 to present due to not being able to modify or refinance the loan due to having dispute inaccurate accounting and other issues that prevented the bankruptcy from closing: $14,161.96 (30 months of 6.50% vs. 2.7%)
- Lost promotion opportunity ($20,000 annual): $21,667
- Medical costs: $63,832.26
- Pain and suffering, anxiety, sleep and memory problems: $50,000.00

- Punitive damages
- Attorney fees/costs: $4,850 ($200/hourly)

*Id.* at ¶ 17.

When the Plaintiff was asked about the first category of damages – additional interest – he stated that he last applied for a refinance loan in November 2019, and a modification prior to filing the Bankruptcy Case (which was filed on December 30, 2014). *Id.* at ¶ 18. These dates are well before the Consent Order was entered in January 2020.

The Plaintiff was also asked at his deposition about the supposed lost promotion opportunity. He testified that he never applied for a promotion and that "[i]t was a promotion that somebody was going to get, and I was a senior person there, and it went to somebody that – well, I'll just put it like this, it went to someone else." *Id.* at ¶ 19. He does not know when the promotion opportunity arose other than being sometime in 2020 and has no evidence that he would have received the promotion but for the alleged actions of the Defendants. *Id.* at ¶¶ 20-21.

He was then asked about his claimed medical costs, for which he has never produced any evidence that he incurred the claimed costs, or any costs whatsoever. *Id.* at ¶ 22. In fact, the Plaintiff admitted that insurance and/or Medicare paid for nearly all of the claimed costs, except for "somewhere in the neighborhood of eight thousand dollars." *Id.* at ¶ 23. Whatever the amount may be, the Plaintiff thinks that the Defendants should pay them because his cancer "was worsened by the stress that I was under." *Id.* at ¶ 24. However, the Plaintiff has never been told by any medical professional that there is a causal link between his cancer and the actions of the Defendants. *Id.* at ¶ 25.

Next, the Plaintiff testified that he has no idea why he claimed $50,000.00 in damages for "pain and suffering, anxiety, sleep and memory problems." *Id.* at ¶ 26. When asked about his memory problems, it was established that he has had these issues since at least September 2018 –

long before the Consent Order was entered. *Id.* at ¶ 27. Moreover, just like his cancer, the Plaintiff has never been told by any medical professional that his claimed memory problems are the result of any of the Defendants' actions. *Id.* at ¶ 28. His claimed sleep problems follow the same pattern, with it being established that they began in September 2018, *id.* at ¶ 29, but by April 2020, the Plaintiff reported having no daytime drowsiness despite any sleeping issues. *Id.* at ¶ 30.

The Plaintiff's stress is – yet again – an issue he has been dealing with for years. He was prescribed Prozac in 2005 for anxiousness, and testified that he believes he's been under stress since at least 2018, and perhaps 2017. *Id.* at ¶¶ 31-32. He was prescribed another antidepressant – citalopram – in May 2019, but he voluntarily stopped taking it by October 2019. *Id.* at ¶ 33. While the Plaintiff stated that his stress levels during the operative time period – February through March or April 2020 – were higher, he cannot measure how much higher they were. *Id.* at ¶ 34. However, his stress levels decreased simply by the filing of this adversary proceeding. *Id.* at ¶ 35.

Notably, the relevant time period coincides with the onset of the COVID-19 pandemic in March 2020, which the Plaintiff said added stress to his life. *Id.* at ¶ 36. The Plaintiff initially testified that his stress was affecting him between February and April 2020 such that he was missing out on his child's extracurricular activities and impacting his plans to open two businesses. *Id.* at ¶ 37. However, he later clarified that his son's extracurricular activities were actually cancelled during the referenced timeframe due to COVID-19 and that his stress was instead impacting his ability to enjoy binge watching television shows with his son. *Id.* at ¶ 38. The business plans that the Plaintiff claims were impacted had been in the works for several

years and this alleged issue is not related to stress, but to his inability to get a business loan. *Id.* at ¶ 39.

Finally, with respect to the Plaintiff's claimed attorney's fees, he has never produced any evidence to support his claim of fees, such as a fee agreement, cancelled checks for payment, or invoices. *Id.* at ¶ 40.

## RELEVANT PROCEDURAL HISTORY

This adversary proceeding was filed on April 27, 2020, setting forth seven causes of action. [Doc. 1]. The Defendants filed a Motion for Judgment on the Pleadings and Motion to Dismiss on August 31, 2020. [Doc. 13]. That motion was granted except as to Count 6, for civil contempt related to alleged violations of the Consent Order. *See* [Doc. 17]. This Court acknowledged in its order that it was allowing the contempt claim to continue to be heard in the adversary, but that it would "apply the appropriate burden of proof" to the claim, which is clear and convincing evidence. *Id.* (citation omitted).

## ARGUMENT AND CITATION OF AUTHORITY

### A. STANDARD OF REVIEW

Fed. R. Civ. P. 56 provides that a defending party "may, at any time, move with or without supporting affidavits for a summary judgment in the parties' favor as to all or any part [of a claim filed against that party]." A party is entitled to have a judgment in its favor "rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "If the nonmoving party fails to make a sufficient showing on an essential element with respect to which it has the burden of proof, the moving party is entitled to summary judgment." *Celotex*

7

*Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265, 274 (1986). Although the moving party has the initial burden of showing the absence of a genuine issue of material fact, *id.*, "the non-moving party [must then] show the existence of a genuine issue of material fact to avoid summary judgment. *Edmondson v. Velvet Lifestyles, LLC*, ___ F.4th ____, No. 20-11315, 2022 WL 3098100, at *3 (11th Cir. Aug 4, 2022) (citation omitted).

**B.    THE PLAINTIFF CANNOT PROCEED WITH HIS CONTEMPT ACTION DUE TO HIS UNCLEAN HANDS**

The only claim remaining in this case is for civil contempt for the Defendants' alleged failure to comply with the terms of the Consent Order. Specifically, the Plaintiff alleges that the Defendants failed to apply the funds he tendered to LoanCare on February 24, 2020, despite the fact the Consent Order required them to be tendered by February 10. Pretermitting that the Consent Order did not contain a deadline by which the Defendants needed to apply the funds and that they were applied by May 5, 2020, the Plaintiff cannot proceed with his claim because he was in clear breach of the terms of the Consent Order through his tardy delivery of funds.

"[A] movant's unclean hands can be a basis for denying the remedy of civil contempt." *L.J. ex rel. V.J. v. Audubon Bd. of Educ.*, No. 06-5350 (JBS), 2007 WL 3252240, at *5 (D.N.J. Nov. 5, 2007) (citing *Trustees of the Buffalo Laborers' Pension Fund v. Accent Stripe*, No. 01-CV-76C, 2007 WL 1540267, at *5 (W.D.N.Y. May 24, 2007)). "The 'unclean hands' doctrine 'closes the door of a court of equity[1] to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant." *Accent Stripe*, 2007 WL 1540267, at *5.

---

[1] Civil contempt is purely equitable in nature. *See Taggart v. Lorenzen*, 139 S. Ct. 1795, 1801 (2019) ("[T]he bankruptcy statutes incorporate the traditional standards in equity practice for determining when a party may be held in civil contempt . . . .").

8

Here, the undisputed facts show that the Plaintiff is seeking to have the Defendants held in civil contempt for allegedly failing to apply payments even though he was two weeks late – based on the deadline set forth in the Consent order – tendering the funds. It would be extremely inequitable to allow the Plaintiff to proceed with his claim when he originally committed the exact same offense. This Court should find that the Plaintiff has unclean hands and is estopped from bringing a contempt action against the Defendants.

C. **THE DEFENDANTS DID NOT VIOLATE THE CONSENT ORDER**

Even if the Plaintiff did not have unclean hands, he cannot prevail here because the Defendants did not violate the Consent Order in any of the ways he is claiming they did. A creditor can only be held in civil contempt of an order "where there is not a 'fair ground of doubt' as to whether the creditor's conduct might be lawful under the [ ] order." *Taggart v. Lorenzen*, 139 S. Ct. 1795, 1804 (2019). "This standard reflects the fact that civil contempt is a 'severe remedy' [cit.] and that principles of 'basic fairness require that those enjoined receive explicit notice of 'what conduct is outlawed' before behind held in civil contempt." *Id.* (quoting *Schmidt v. Lessard*, 414 U.S. 473, 476 (1974)). This is an objective standard and does not take the creditor's subjective beliefs into account. *Id.* at 1802.

The Plaintiff contends that the Defendants violated the Consent Order in the following ways:

1. Failure to provide accurate statements;
2. Failure to provide online access to tender the funds;
3. Failure to apply funds;
4. Seeking to collect erroneous amounts in excess of what was allowed by the Consent Order;
5. Failing to update Plaintiff's account to reflect the Consent Order.

However, the Consent Order does not address account statements or the ability to tender the Certified Funds online. In fact, the Plaintiff testified that he knew he could not pay those

9

funds online and "that was never my defense." With respect to issues 3, 4, and 5, the undisputed facts show that all funds were applied by May 4, 2020, and the loan was then current for February 1, 2020, as dictated by the Consent Order. Since the application of the funds in the amounts set forth in the Consent Order brought the loan current for the date set forth in the Consent Order, it follows that the Defendants did not seek to collect amounts in excess of what was allowed for by the Consent Order. Even thought the funds were not fully applied until after this adversary was filed, the Consent Order did not set forth a deadline by which the funds had to have been applied.

As the Supreme Court stated, a party must "receive explicit notice of what conduct is outlawed" to be held in contempt and this Court cannot graft a deadline in the Consent Order where none existed. *See Taggart*, 139 S. Ct. at 1804. "Even if 'the defendants have violated the spirit of the . . . order, but unless the actual terms of the order are violated, an adjudication of contempt would be improper." *Ethicon, Inc. v. Randall*, No. 220CV13524BRMJBC, 2021 WL 4099752, at *3 (D.N.J. Sept. 9, 2021) (quoting *Nutrisystems.com, Inc. v. Easthaven, Ltd.*, Civ. A. No. 00-4835,2001 WL 484068, at *2 (ED. Pa. Mar. 30, 2001)) (also collecting cases). The order at issue is a *consent* order, and the Plaintiff could have easily insisted on a deadline being added to the order or simply refused to sign off on the consent order if the Defendants would not agree to such a deadline. Surely it cannot be said that there is "not a 'fair ground of doubt'" about when the funds were required to be applied so as not to be in violation of the Consent Order. *See id*. This Court should grant summary judgment in favor of the Defendants.

**D.    THE PLAINTIFF DOES NOT HAVE ANY RECOVERABLE DAMAGES**

Even if the Plaintiff could show that the Defendants violated any provision(s) of the Consent Order, summary judgment should still be granted to the Defendants because the Plaintiff does not have any recoverable damages.

> Civil contempt sanctions generally fall into two categories: (a) coercive measures, such as a conditional fine or imprisonment which the contemptor may avoid by compliance with the court's adjudication; and (b) compensatory provisos, such as a monetary levy payable to the offended party which will remedy damages flowing from past disobedience or other orders designed to restore the status quo.

*Fowler v. Huber*, 437 F.2d 1117, 1118 (5th Cir. 1971).

Here, the facts show that the Defendants have applied the funds at issue and that the Plaintiff is seeking only compensatory damages. "Compensatory sanctions may be imposed for actual damages incurred by a debtor as a result of a creditor's violation of a bankruptcy court order." *In re Rhodes*, 563 B.R. 380 (Bankr. M.D. Fla. 2017) (citing *Green Point Credit, LLC v. McLean (In re McLean)*, 794 F.3d 1313, 1325 (11th Cir. 2015)). "An award of damages in a civil contempt proceeding requires proof of both the fact of injury to the aggrieved party and the amount of damages the aggrieved party has suffered." *McGregor v. Chierico*, 206 F.3d 1378, 1386-87 (11th Cir. 2000) (citation omitted). Where a debtor seeks to recover damages for emotional distress, the Eleventh Circuit has established a test for lower courts to use: "[t]o recover damages for emotional distress, "a plaintiff must (1) suffer significant emotional distress, (2) clearly establish the significant emotional distress, and (3) demonstrate a causal connection between that significant emotional distress and the violation of the [court order]." *In re McLean*, 794 at 1325–26 (citing *Lodge v. Kondaur Capital Corp.*, 750 F.3d 1263, 1271 (11tth Cir. 2014)). Punitive damages can be awarded, but only where there is "some showing of reckless or callous disregard for the law or rights of others." *Id.* at 1325 (citations omitted). Additionally, "punitive

11

sanctions are appropriate only where a party acted with sufficient notice concerning the legal import of its offending actions." *Id.* (citation omitted).

As detailed in the Statement of Material Facts, the Plaintiff has failed to establish that any of his claimed damages were caused – either actually or proximately – by the Defendants' alleged violation(s) of the Consent Order. The specific damages claimed by the Plaintiff will be addressed in turn:

*First*, the Plaintiff claims as damages "Interest incurred from 2019 to present due to not being able to modify or refinance the loan due to having dispute inaccurate accounting and other issues that prevented the bankruptcy from closing: $14,161.96 (30 months of 6.50% vs. 2.7%)." However, the Plaintiff testified that he last applied for a refinance loan in November 2019, and a modification prior to December 30, 2014. The issues in the instant case arose between February and May 2020. Thus, the alleged issues in this case clearly did not have an impact on the Plaintiff's ability to qualify for a refinance loan or loan modification, and these are not recoverable damages. Summary judgment should be granted to the Defendants on this category of damages.

*Second*, the Plaintiff claims a "[l]ost promotion opportunity ($20,000 annual): $21,667." However, the undisputed facts show that the Plaintiff never applied for a promotion, has no idea when in 2020 this promotion was potentially available to him, and has no evidence that he would have received the promotion but for the alleged actions of the Defendants. The Plaintiff's claim that he lost this promotion opportunity is based solely on a personal belief and nothing more. This certainly does not establish any causation or even that he even lost a promotion opportunity. Summary judgment should be granted to the Defendants on the Plaintiff's claim of a lost promotion.

*Third*, the Plaintiff is seeking to have the Defendants found liable for his medical bills in the amount of $63,832.26. This is a number that is completely unsupported by any evidence produced by the Plaintiff, as he never produced any medical bills, and he further admitted that insurance and/or Medicare paid for nearly all of this claimed amount. Even if he had paid out of pocket and produced the bills, the Plaintiff thinks that the Defendants should be liable for these bills because his cancer "was worsened by the stress that I was under." However, no medical professional has ever told him that there is a causal link between his cancer and the actions of the Defendants. Without any evidence and without any causal link, the Defendants are entitled to summary judgment on this category of damages.

*Fourth*, the Plaintiff is claiming damages for "[p]ain and suffering, anxiety, sleep and memory problems" in the amount of $50,000.00. To begin with, this number has no basis in reality and the Plaintiff has no idea why he claimed this amount. In any event, the undisputed facts show that the Plaintiff has been suffering from stress, anxiety, sleep, and memory problems for many years. He was first prescribed an antidepressant in 2005 and again in May 2019, and he testified that he has been under stress since at least 2018, and perhaps 2017. The Plaintiff's sleep problems have likewise been present for several years – since at least September 2018 – and during the relevant time frame of February through May 2020, he had no daytime drowsiness despite any nighttime sleeping issues. His memory issues are another health problem that have been present since at least September 2018, and no medical professional has ever told the Plaintiff that his memory problems are the result of any actions of the Defendants.

With respect to the Plaintiff's overall stress levels, he did testify that his stress was increased in February through March or April 2020, but he has no way to measure how might higher they were. And he then stated that his stress levels decreased as soon as this adversary

proceeding was filed on April 27, 2020. Additionally, the alleged timing of the issues in this case (February through May 2020) coincided with the onset of the COVID-19 pandemic, which was declared to be a pandemic on March 11, 2020. *See* https://www.cdc.gov/museum/timeline/covid19.html. The Plaintiff testified that the pandemic added stress to his life, which again shows a lack of causation between his stress levels and any actions of the Defendants. And when he was asked how the Defendants' actions impacted his life, the Plaintiff tried to say that they caused him to miss his son's extracurricular activities before clarifying that those activities were actually cancelled during the relevant timeframe due to the pandemic and his stress was instead impacting his ability to enjoy binge watching television shows with his son. The Plaintiff further said that his stress impacted business plans he had to potential new businesses, but these were plans that had been developed years ago, and the impact on these plans was related to the Plaintiff's ability to get business loans rather than his stress level.

Taken together, this evidence does not add up to recoverable damages for emotional distress, which must be "significant . . . clearly establish[ed] . . . [and with a] demonstrate[d] causal connection between that significant emotional dress and the violation of the [court order]." *In re McLean*, 794 at 1325–26 (citing *Lodge*, 750 F.3d at 1271). "In showing emotional distress, 'a debtor must prove that his emotional distress is more than fleeting, inconsequential, and medically insignificant.'" *In re Cowan*, No. 18-54666-JWC, 2020 WL 7330049, at *7 (Bankr. N.D. Ga. Dec. 11, 2020) (quoting *In re Nibblelink*, 403 B.R. 113, 120 (Bankr. M.D. Fla. 2009) (citation omitted)). The evidence here shows that the Plaintiff has been treated for various emotional issues (stress, sleeping problems, and memory problems) since well before the alleged issues with the Defendants arose and there is nothing connecting his emotional distress to the

Defendants' actions. While the Plaintiff claimed that his stress levels increased in early 2020, he was unable to say by how much, which certainly does not establish "significant" emotional distress. Additionally, it simply cannot be said that the impact of one's ability to enjoy binge watching television can be deemed significant emotional distress. The Defendants are thus entitled to summary judgment on the Plaintiff's claims of emotional distress.

*Fifth*, the Plaintiff is claiming attorney's fees and costs in the amount of $4,850. However, he never produced any evidence to substantiate that he actually incurred these fees and costs or what he actually paid. When asked for evidence, the Plaintiff produced nothing. Summary judgment should be granted on this category of damages.

*Sixth*, and lastly, the Plaintiff asserts that he is entitled to punitive damages. However, without any compensatory damages or other harm established by the Plaintiff, he is not entitled to an award of punitive damages. *See SE Prop. Holdings, LLC v. Judkins*, 822 F. App'x 929, 936-37 (11th Cir. 2020); *see also Anderson v. Brezeale*, 507 F.2d 929, 931 (5th Cir. 1975) (noting "the general rule that punitive damages are not recoverable absent proof of actual damages."). Moreover, punitive damages can only be awarded in a civil contempt action where there is "some showing of reckless or callous disregard for the law or rights of others." *In re McLean*, 794 at 1325–26 (citing *Lodge*, 750 F.3d at 1271). Here, the Plaintiff has not produced any evidence showing that either Defendant acted consistent with this standard. Accordingly, this Court should grant summary judgment to the Defendants with respect to punitive damages.

Since the Plaintiff has failed to show that he is entitled to any of the damages that he has claimed, summary judgment should be granted to the Defendants on the Plaintiff's contempt claim as a whole and this case should be dismissed with prejudice.

## CONCLUSION

Based on the foregoing, the Defendants respectfully request that this Court grant their Motion for Summary Judgment.

Respectfully submitted, this 17th day of August, 2022.

        */s/ Bret J. Chaness*
        BRET J. CHANESS (GA Bar No. 720572)
        **RUBIN LUBLIN, LLC**
        3140 Avalon Ridge Place, Suite 100
        Peachtree Corners, GA 30071
        (678) 281-2730 (Telephone)
        (404) 921-9016 (Facsimile)
        bchaness@rlselaw.com

        *Attorney for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on the 17th day of August, 2022, I caused a copy of the within and foregoing to be served via U.S. First Class mail on the following:

Elizabeth Williams Winfield
Simmons, Finney & Winfield, LLC
741 W. Lanier Avenue, Suite 220
Fayetteville, GA 30214

        */s/ Bret J. Chaness*
        BRET J. CHANESS (GA Bar No. 720572)