**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| IN RE:<br><br>**ANTHONY CARVER MCCLARN,**<br><br>    **Debtor.** | **CHAPTER 13**<br><br>**CASE NO. 14-75160-sms** |
| **ANTHONY CARVER MCCLARN,**<br><br>    **Plaintiff,**<br>**v.**<br><br>**CITIZENS TRUST BANK and**<br>**LOANCARE LLC,**<br><br>    **Defendants.** | **ADVERSARY PROCEEDING**<br><br>**NO. 20-06070-sms** |

<u>**PLAINTIFF'S CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT**</u>

Plaintiff Anthony Carver McClarn ("Plaintiff") hereby moves the Court for partial summary judgment in his favor and against Citizens Trust Bank and LoanCare LLC ("Defendants") because there is no genuine issue as to any material fact regarding Defendants' liability for contempt under count VII of Plaintiff's complaint  In support of this Motion, Plaintiff relies on (a) all pleadings of record; (b) the *Affidavit of Anthony Carver McClarn*, attached as **Exhibit 1**; (c) *Plaintiff's Brief in Opposition to Summary Judgment and in Support of Plaintiff's Cross Motion for Partial Summary Judgment*, filed contemporaneously herewith; and (d) *Plaintiff's Statement of Material Facts in Support of Cross Motion for Partial Summary Judgment*, attached as **Exhibit 2**.

Respectfully submitted this 29th day of September, 2022.

        **JONES & WALDEN LLC**
        */s/ Leon S. Jones*
        Leon S. Jones
        Georgia Bar No. 003980
        699 Piedmont Avenue, NE
        Atlanta, Georgia 30308
        (404) 564-9300
        ljones@joneswalden.com
        Attorney for Plaintiff

# Exhibit 1

IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

IN RE:

ANTHONY CARVER MCCLARN,

     Debtor.

CHAPTER 13

CASE NO. 14-75160-SMS

ANTHONY CARVER MCCLARN,
     Plaintiff,

v.

CITIZENS TRUST BANK AND LOANCARE, LLC
     Defendants.

ADV. PROC. NO. 20-06070-SMS

**AFFIDAVIT OF ANTHONY CARVER MCCLARN IN SUPPORT OF
ADVERSARY PROCEEDING**

STATE OF GEORGIA
COUNTY OF FULTON

     I, Anthony Carver McClarn, personally appeared before the undersigned officer authorized by law to administer oaths and, after being duly sworn, deposed and said the following:

     1.     My name is Anthony Carver McClarn. I am over 18 years of age and do not labor under any mental illnesses or disabilities. I am competent and qualified to give this Affidavit and do so based upon my own personal, first-hand knowledge of the subject matter discussed herein.

     2.     I make and give this Affidavit in support of my claims in the above-styled Adversary Proceeding and for all other purposes permitted by law.

     3.     On or about February 19, 2009, I was in a car accident which interfered with my ability to work for several years.

1

4.      As a result of my temporary disability, I fell behind on several debts including my Mortgage held by Citizens Trust Bank ("Citizens Trust") and serviced by LoanCare, LLC ("Loancare") (together, the "Defendants") for the property located at 4038 Boulder Vista Dr, Conley, Georgia 30288 (the "Mortgage").

5.      On or about December 30, 2014, I filed a Chapter 13 Bankruptcy Case to address my various debt. That case was numbered 14-75160-sms (the "Chapter 13 Case").

6.      On March 3, 2015, I filed my 1st Amended Chapter 13 Plan (Doc. No. 21). On March 24, 2015, the Court entered an Order Confirming the Plan (Doc. No. 28).

7.      On December 28, 2018, the Chapter 13 Trustee filed the Notice of Plan Completion. (Doc. No. 65).

8.      On January 14, 2019, the Chapter 13 Trustee filed her Final Report and Accounting. (Doc. No. 67). On January 17, 2019, the case was closed.

9.      On February 28, 2019, the case was re-opened, and the Trustee filed a Notice of Final Cure Payment on March 1, 2019. (Doc. No. 73).

10.     On April 23, 2019, I filed a Motion to Deem the Mortgage Current, (Doc. No. 76).

11.     In that same period, the re-opening of my Chapter 13 Case created an obstacle to paying my scheduled mortgage payments to Defendants because Defendants would not accept and process payments that I tendered. In addition, Defendants claimed I owed a post-petition arrearage.

12.     On or about January 30, 2020, the Court entered the *Consent Order on Debtor's Motion to Deem Mortgage Current* (Doc. No. 85) (the "Consent Order).

13.     Among other things, that Consent order (1) established that the outstanding sum of the post-petition arrearage as $15,794.24, to be paid to Defendants within 10 days of the entry of the order; (2) ordered Defendants to apply the held escrow funds to my total outstanding principal;

2

(3) ordered Defendants to grant me electronic access to my Mortgage account within 7 days of the entry of the Order, (4) ordered that Defendants bring my loan current through February 1, 2020; (5) clarified that defendants were not to assess my loan any additional interest due to the late tendering of mortgage payments in accordance with the Consent Order; (6) closed my Chapter 13 case.

14.     In accordance with the Consent Order, I tendered a Certified Check (the "Check") in the amount of $15,794.24 to my attorney, Jeff Fields, on or around February 7, 2020. A true and correct copy of the Check is attached hereto as **Exhibit A**. As is evident from the face of the check, this check was issued by the Bank on February 6, 2020. I timely obtained this check on the 7th day following entry of the Consent Order and delivered the check to my attorney the following day. Therefore, I timely obtained and presented good funds to my attorney for the $15,794.24 due under the Consent Order (which required me to fund within 10 days).

15.     At that time my attorney advised that he should not tender the check to Defendants to pay off the arrearage until I received access to my online account. The Defendants had not and did not grant me electronic access at this time, as required by the Consent Order. The Defendants were required to grant me such access the day before, on February 6th, according to the Consent Order. My attorney advised me that his withholding of the check as payment may encourage the Defendants to come into compliance with the Consent Order more readily.

16.     On or about February 7, 2020, I went to Citizens Trust Bank to try to gain access to my online account and resolve any issues with same. On that date Ladaria Smith ("Ms. Smith"), a Loan Manager for Citizens Trust, told me that she could not help me or accept my payments and informed me that all payments were to be made through Loancare directly. Specifically, Citizens Trust refused to grant me online access to my account on that date. On that same day, I sent Ms.

3

Smith a copy of the Consent Order by email, which stated that Defendants were to grant me electronic access to my loan account and bring me current through February 1, 2020.

17.     Eventually my attorney advised that he should send the check, despite Defendants failure to grant electronic account access. Following his advice, I instructed him to tender the Check to Defendants on February 20, 2020. On February 21, 2020 my attorney sent the Check attached to a copy of the Consent Order directly to Defendants. A true and correct copy of the mailing receipt for said transfer is attached hereto as **Exhibit B**. As is evident from the face of the receipt, the Check was mailed on February 21, 2020, and was expected to be delivered to Defendant's on February 24, 2020.

18.     On or about February 27, 2020, I attempted to make a payment in person on my loan at Citizens Trust Bank, but I was told by Ms. Smith that she could not accept my payment because my account was in bankruptcy proceedings.

19.     On that same day, Ms. Smith sent me an email directing me to contact Loancare's bankruptcy department in order to sort out the issue of my rejected payments. A true and correct copy of that email from Ms. Smith is Attached Hereto as **Exhibit C**.

20.     Since February 20, 2020, when I tendered the Check for the post-petition arrearage, I have never been able to make a payment on my Mortgage with Defendants. I have tried to make payments multiple times.

21.     When I attempt to make a payment in person, employees tell me they cannot accept my payments and advise me to speak with Loancare's Bankruptcy Counsel.

22.     When I attempt to make a payment by phone, I am transferred to the bankruptcy department or collections, and I am told that my loan is in foreclosure.

23.     One such instance occurred on March 30, 2020, when I attempted to make a payment by phone through Loancare's servicing center. On that call, I spoke to a loan care collection agent named T.J., who told me that my account was in foreclosure, but also that my loan was in active bankruptcy. I told that agent that I was in fact current, and that the bankruptcy had already been resolved. She insisted that my payment still could not be accepted; and that I would need to speak to Loancare's foreclosure attorneys.

24.     In addition, I have never been granted electronic access to my loan account, except for temporary and limited access given on February 13, 2020. At that time, I could log into the account but was unable to view the entirety of my account information, and even that limited electronic access was removed shortly thereafter.

25.     Moreover, while I have been unable to make regular payments on my loan since the date of the Consent Order due to Defendants' rejection of those tendered payments, Defendants have continued to assess interest to the past due amounts on my loan.

26.     My Mortgage now carries $22,122.63 in assessed interest.

27.     Defendants provided me a pay-off statement dated May 31, 2022. The interest which Defendants have assessed to my Mortgage loan is shown on the pay-off statement which Defendants provided to me on May 31, 2022. The pay-off statement dated May 31, 2022, reflects accrued interest in the amount of $22,122.63. A true and correct copy of such pay-off statement provided by Defendant is attached hereto as **Exhibit D**.

28.     I also have an additional issue with Defendants regarding reimbursements from my insurance company which Defendants have withheld from me.

29.     On or around October 10, 2019, the real property that is subject to the Mortgage underwent flooding and had to be repaired. I contracted for and paid for those repairs out of pocket

5

so as to not delay the repair process. I had all necessary inspections of the repairs done, and submitted all invoices of work for the repairs. The Defendants sent an agent to inspect the repair work. The work was certified to be 100% complete and satisfactory by Defendant's inspector.

30.    After the repair work was complete, the insurance company reimbursed me for the repairs through several checks in varied amounts.

31.    Because Loancare is a loss payee on the insurance policy, the insurance company's checks were made jointly payable to Loancare and me. Loancare's endorsement was therefore necessary to deposit the insurance checks. I negotiated those checks by sending endorsed copies to Loancare and Loancare did endorse and deposit those checks, and then would send a check in the same amount amount to me. The final reimbursement check was issued to me in the amount of $15,054.53. On or about April 22, 2021, I sent that check to Loancare to endorse, but Loancare never returned that amount to me. Loancare retained the insurance proceeds and now holds that $15,054.53, which rightfully belongs to me as reimbursement for repair costs. Loancare holds my $15,054.53 in what it calls "restricted escrow" (the "Escrow Funds").

32.    The amount of $15,054.53 of my funds which Loancare currently holds in "restricted escrow" is shown on the Reinstatement Quote provided to me by Defendants which is attached hereto as **Exhibit E.** I have requested on several occasions that Loancare return that amount to me. In addition, I alternatively have requested that Loancare apply that amount to the principal balance of the Mortgage loan. Despite my requests, Loancare has neither: (a) paid me the $15,054.53 of my Escrow Funds which is wrongfully held in escrow, or (b) applied the funds to the debt.

33.    On April 27, 2020, by and through prior counsel, I filed the *Complaint* in this case. It is my understanding of the Complaint, that I am demanding that Defendants come into

compliance with the Consent Order by: (a) granting me access to my account, (b) refunding or applying all Escrow Funds Defendants are withholding, and (c) bringing my account current through February 2020.

34.    In or around May 2020, I submitted an application to refinance my mortgage with Defendants.  Defendants failed to respond to my application to refinance my loan.

35.    Because of the problems I have had with Defendants regarding their failures in servicing my loan, I determined to obtain a loan to refinance and pay-off my Mortgage. Without limitation, in early 2022, I began speaking to Credit Union Financial Service ("CUFS") to refinance my loan through them. My prospective refinance lender needed a pay-off statement from Defendants. CUFS, of their own accord, sent Defendants multiple written requests for a payoff statement. Defendants failed to respond to CUFS' requests or provide it with a pay-off statement. Therefore, in March of 2022, I too requested a pay-off statement be sent to CUFS by Defendants, and subsequently Defendants still failed to provide a pay-off statement to CUFS as my new prospective lender.

36.    Instead of providing a pay-off statement to my refinance lender, Defendants provided it directly to me. However, this was not helpful or adequate because my refinance lender needed to receive the pay-off statement from Defendants and not from me. In addition, the Defendants provided me with a pay-off statement which was inaccurate and incomplete. That pay-off statement made no note of the $15,054.53 insurance check (the Escrow Funds), which Defendants have held in restricted escrow. (See Exhibit C). In other words, the pay-off statement did not credit my Escrow Funds in any way.

37.    In July 2022, still looking to refinance my mortgage through Credit Union Financial Services, I once more requested a written pay-off statement through my attorney. On July 31, 2022,

Defendants again provided the requested payoff statement directly to me, and not to CUFS. Additionally, that Pay-off failed to mention my $15,054.53 Escrow Funds which are being held by Defendants. A true and correct copy of the July 31, 2022 payoff statements issued by Defendants is attached hereto as **Exhibit F**.

38.     I have incurred atleast $18,500 in attorneys' fees bringing this action. Specifically, I have been billed $18,500 by attorneys to prosecute this adversary proceeding in an effort to enforce the Consent Order. True and correct copy of the invoices from my counsel and prior counsels are available for use at trial.

39.     The Exhibits attached hereto as Exhibit A and Exhibit B are business records of Plaintiff maintained in the regular course of Plaintiff's business, and it is the regular course of its business to make and maintain said records. The events noted on said records were noted at or near the time the events occurred and made by, or from information transmitted by, a person with personal knowledge and a business duty to report. Said records are kept under my direct control and supervision. The Exhibits attached hereto as Exhibits C, D, E, and F were received by me from Defendants and copies of the same have been maintained by me in the regular course of my business.

FURTHER AFFIANT SAYETH NOT.

Anthony Carver McClarn
Affiant

Sworn to and subscribed before me
this 28th day of September, 2022.

Notary Public



8

# Exhibit A

1st Choice Credit Union

CHOICE
CREDIT UNION

REMITTER: ANTHONY C MCCARN

PAY FIFTEEN THOUSAND SEVEN HUNDRED NINETY FOUR DOLLAR(S) AND TWENTY FOUR CENT(S)

TO THE
ORDER
OF
CITIZEN TRUST BANK
LOANCARE SERVICING CENTER

DATE
02/06/2020

1st Choice Credit Union
2325 Auburn Ave
Atlanta, GA 30309
404-521-6040

$15,794.24

CHECK NO: 333350

18-4053
3118

VOID AFTER 90 DAYS

THIS CHECK IS VOID WITHOUT A BLUE & BURGUNDY BACKGROUND AND AN ARTIFICIAL WATERMARK ON THE BACK - HOLD AT AN ANGLE TO VIEW

⑈333350⑈ ⑆041194054⑆ 2770

# Exhibit B

```
==============================================
                    SCOTTDALE
             3328 E PONCE DE LEON AVE
             SCOTTDALE, GA 30079-9998
                  127854-0319
                  (800)275-8777
               02/21/2020 10:55 AM
==============================================
==============================================
----------------------------------------------

Product           Qty    Unit      Price
                         Price
----------------------------------------------
PM 2-Day           1    $7.75      $7.75
Window FR Env
    (Domestic)
    (VIRGINIA BEACH, VA  23450)
    (Flat Rate)
    (Expected Delivery Day)
    (Monday 02/24/2020)
    (USPS Tracking #)
    (9505 5114 1421 0052 1823 16)
Insurance                          $0.00
    (Up to $50.00 included)
----------------------------------------------
Total:                             $7.75
----------------------------------------------

----------------------------------------------
Cash                              $10.00
Change                           ($2.25)
----------------------------------------------

Includes up to $50 insurance

Text your tracking number to 28777
(2USPS) to get the latest status.
Standard Message and Data rates may
apply. You may also visit www.usps.com
USPS Tracking or call 1-800-222-1811.

Save this receipt as evidence of
insurance. For information on filing
```





Casey Brown <casey@fieldlawoffice.com>

## Anthony Carver McClarn

1 message

**Casey Brown** <casey@fieldlawoffice.com>                                Fri, Feb 21, 2020 at 11:05 AM
To: Chris Sleeper <chris@fieldlawoffice.com>, Mai Theodocion <mai@fieldlawoffice.com>

Mailed the check and the Order to:
Citizens Bank
ATTN: Cashiering Department
P.O. Box 8068
Virginia Beach, VA 23450

**Priority Tracking No.9505 5114 1421 0052 1823 16**
Expected delivery Monday 2/24/20

--
**Best regards,
Casey L. Brown,
Paralegal
Jeff Field & Associates
342 N. Clarendon Ave
Scottdale, GA 30079**
404.499.2700
Fax: 404.499.2728
fieldlawoffice.com

# Exhibit C

**amcclarn@gmail.com**

| | |
|---|---|
| **From:** | Ladaria G. Smith <ladaria.smith@ctbatl.com> |
| **Sent:** | Thursday, February 27, 2020 6:05 PM |
| **To:** | amcclarn@gmail.com |
| **Cc:** | onealpha918@gmail.com |
| **Subject:** | Re: Emailing: Case Closure and Final Determination.pdf |

Mr. Mcclarn,

It was great seeing you even under these extreme circumstances.  Here is the information below that you will need to send to Loancare Bankruptcy.  Please follow up with them Wednesday afternoon, hopefully this will be resolved soon, or you may have to go back to court.

LaShay
bankruptcy.spoc@loancare.net


Have a great evening.

Ladaria Jones
AVP/Loan Operations Manager

230 Peachtree St. NW, Suite 2700
Atlanta, GA 30303

404-575-8283 Direct
404-575-8290 Fax
email: ladaria.smith@ctbatl.com
website:  www.ctbconnect.com


_____

From: amcclarn@gmail.com <amcclarn@gmail.com>
Sent: Friday, February 7, 2020 11:49 AM
To: Ladaria G. Smith
Cc: onealpha918@gmail.com
Subject: Emailing: Case Closure and Final Determination.pdf

  Good morning again Ms. Jones,

Please find attached the document from the court that we spoke of this morning directing the mortgage agency and/or their representatives to allow access to my online flies.

Thank you,

Anthony McClarn

Your message is ready to be sent with the following file or link
attachments:

Case Closure and Final Determination.pdf

Note: To protect against computer viruses, e-mail programs may prevent sending or receiving certain types of file attachments.  Check your e-mail security settings to determine how attachments are handled.

# Exhibit D

# RUBIN LUBLIN, LLC

ATTORNEYS AND COUNSELORS AT LAW
3145 AVALON RIDGE PLACE, SUITE 100
PEACHTREE CORNERS, GA 30071
TEL (877) 813-0992
FAX (470) 508-9401

May 31, 2022

Anthony C. McClarn
4038 Boulder Vista Drive
Conley, GA 30288

| | |
|---|---|
| **Client Name** | **LoanCare, LLC** |
| **Case No:** | **LNC-13-07761-54** |
| **Property Address:** | **4038 Boulder Vista Drive**<br>**Conley, GA 30288** |
| **Current Payoff Amount ("Payoff Amount"):** | **$173,907.78** |
| **Payoff Amount Good Through:** | **05/31/2022** |

Thank you for contacting our office regarding a Payoff Amount for your loan. The Payoff Amount provided is good through 05/31/2022. After this date, it will be necessary to contact our office to request an updated Payoff Amount. **You should contact this office immediately prior to remitting any funds so that we may answer any questions and/or verify the exact amount that is due and owing as of the intended receipt date.**

The Payoff Amount as of 05/31/2022 is broken down as follows:

| | |
|---|---|
| Unpaid Principal Balance | $140,899.99 |
| Interest | $22,122.63 |
| Property Inspections | $15.00 |
| Foreclosure Fees and Costs | $740.50 |
| Escrow Advance Amt: | $10,974.86 |
| Suspense Balance: | $-1,125.20 |
| Total Fees Amt: | $25.00 |
| Rec Corp Adv Balance: | $255.00 |
| Grand Total | $173,907.78 |

**Important notice regarding restricted escrow.** If your quote includes a line item for restricted escrow, those funds are not automatically applied towards the total debt.

In order for the restricted escrow funds to be applied towards the debt balance, you must include with your payoff a letter stating that you want the restricted escrow amount to be applied to the total amount

to payoff the loan. You can send that letter of request to us at fcquote@rlselaw.com. If you do NOT include the letter requesting the application of the restricted escrow, the total amount needed to payoff the loan will increase by the amount of the restricted escrow.

The payoff funds must be for the entire Payoff Amount quoted above with no exceptions. In addition, payoff funds must be wired to Loan Care at:

WELLS FARGO BANK, NA
420 MONTGOMERY ST. SAN FRANCISCO CA 94101
ABA#: 121000248
ACCOUNT NUMBER: 2000037424631
ACCOUNT NAME: LOANCARE, LLC
ATTN: CASHIERING DEFAULT SUPERVISOR

Please reference: Mortgage/Loan Account Number, Customer Name and Type of Payment.

In order to ensure receipt of funds prior to a scheduled foreclosure sale, we must receive funds one (1) business day prior to the scheduled sale date. We cannot accept payoff funds on the scheduled sale date.

THIS LETTER IS NOTICE TO THE EXTENT THE FAIR DEBT COLLECTION PRACTICES ACT APPLIES. NOTHING CONTAINED HEREIN OR IN FUTURE NOTICES SHALL BE DEEMED AN ADMISSION THAT THE FAIR DEBT COLLECTION PRACTICES ACT APPLIES TO THIS FIRM'S REPRESENTATION. SHOULD IT APPLY, PLEASE BE ADVISED THAT THIS FIRM MAY BE ACTING AS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

# Exhibit E

## MSP® Explorer: Reinstatements Quoted (REIN)

623 - LOANCARE ---FOR OFFICIAL USE ONLY---

**Loan Number:** 0003674132                                    **Borrower Name:** MCCLARN,ANTHONY C

```
REIN 0003674132    _____    QUOTE CREATION        CH13      02/01/22  13:29:18
AC MCCLARN  MAN Z INV 331/001/0705000014  TYPE CONV. RES                    FC 2
DUE 02-01-20  CURRENT: P&I    1,127.93    ESC.      318.49    INT.  6.50000
------------ NEW QUOTE - CALCULATION ------ BEFORE CHANGE -- MOST RECENT QUOTE
DATE OF QUOTE                  02-02-22              02-02-22
REINSTATE ON                   02-28-22              02-28-22
  NEXT DUE DATE WILL BE         03-01-22             03-01-22
PAYMENTS DUE                         25                    25
TOTAL PAYMENT AMOUNT           39,843.74             39,843.74
CLOSING INT                          .00                   .00
ACCRUED LT CHG      ( I )             .00  ( I )            .00  (   )
LT CHG FORECASTED   ( I )           56.40  ( I )          56.40  (   )
BAD CHECK           ( I )             .00  ( I )            .00  (   )
RESTRICTED ESCROW   ( I )       15,054.53  ( I )      15,054.53  (   )
NET OTHER FEES      ( I )             .00  ( I )            .00  (   )

SUSPENSE            ( I )        1,125.20  ( I )       1,125.20  (   )

MTGR REC CORP ADV   ( I )          255.00  ( I )         255.00  (   )
** TOTAL DUE                    23,975.41             23,975.41
INCLUDE OPTIONAL INSURANCE (Y/N): N
```

# Exhibit F

## MSP® Explorer: Payoff Calculation Totals (PAY4/PG1)

623 - LOANCARE ---FOR OFFICIAL USE ONLY---

**Loan Number:** 0003674132                                   **Borrower Name:** MCCLARN,ANTHONY C

```
PAY4 0003674132    AS-OF 07/31/22  PAYOFF CALCULATION TOTALS 07/13/22  10:43:48
NAME AC MCCLARN  CONTACT NAME ANTHONY C MCCLARN
--------------------------------------------------------------------------------
PRINCIPAL BALANCE        140,899.99    ---------- RATE CHANGES ----------
INTEREST 07/31/22         23,649.05  CALC  INT FROM     RATE        AMOUNT
PRO RATA MIP/PMI                .00        01/01/20  6.50000     23,649.05
ESCROW ADVANCE            10,974.86        07/31/22
ESCROW BALANCE                  .00
SUSPENSE BALANCE           1,125.20-
HUD BALANCE                     .00
REPLACEMENT RESERVE             .00
RESTRICTED ESCROW               .00  E
TOTAL-FEES                      .00  W 1
ACCUM LATE CHARGES              .00
ACCUM NSF CHARGES               .00
OTHER FEES DUE                  .00
PENALTY INTEREST                .00
FLAT/OTHER PENALTY FEE          .00        TOTAL INTEREST         23,649.05
CR LIFE/ORIG FEE RBATE          .00        TOTAL TO PAYOFF       174,653.70
RECOVERABLE BALANCE          255.00  NUMBER OF COPIES: 1   PRESS PF1 TO PRINT
                                           TOTAL PAGE 2               .00

--------------------------------------------------------------------------------
```

# Exhibit 2

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| IN RE:<br><br>**ANTHONY CARVER MCCLARN,**<br><br>  Debtor. | **CHAPTER 13**<br><br>**CASE NO. 14-75160-sms** |
| **ANTHONY CARVER MCCLARN,**<br><br>   **Plaintiff,**<br>**v.**<br><br>**CITIZENS TRUST BANK and**<br>**LOANCARE LLC,**<br><br>  **Defendants.** | **ADVERSARY PROCEEDING**<br><br>**NO. 20-06070-sms** |

<u>**PLAINTIFF'S STATEMENT OF MATERIAL FACTS IN SUPPORT OF**</u>
<u>**CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT**</u>

COMES NOW Anthony Carver McClarn ("Plaintiff" or "McClarn") and files this *Plaintiff's Statement of Material Facts in Support of Cross Motion for Partial Summary Judgment* pursuant to BLR 7056-1. Plaintiff contends that no genuine issue exists to be tried as to the following material facts. All cites are to the *Affidavit of Anthony Carver McClarn in Support of Adversary Proceeding* filed contemporaneously herewith (thereinafter the "Affidavit").

<u>**Background**</u>

1.  On or about February 19, 2009, McClarn was in a car accident which interfered with his ability to work for several years. Affidavit ¶ 3.

2.  As a result of his temporary disability, McClarn fell behind on several debts including his mortgage held by Citizens Trust Bank ("Citizens Trust") and serviced by LoanCare LLC ("Loancare") (together, the "Defendants") for the property located at 4038 Boulder Vista Dr, Conley, Georgia 30288 (the "Mortgage"). Affidavit ¶ 4.

3.  On or about December 30, 2014, McClarn filed Chapter 13 bankruptcy case number 14-75160-sms (the "Chapter 13 Case"). Affidavit ¶ 5.

4.      On March 3, 2015, McClarn filed his 1st Amended Chapter 13 Plan (Doc. No. 21). On March 24, 2015, the Court entered an Order Confirming the Plan (Doc. No. 28). Affidavit ¶ 6.

5.      On December 28, 2018, the Chapter 13 Trustee filed the Notice of Plan Completion (Doc. No. 65). Affidavit ¶ 7.

6.      On January 14, 2019, the Chapter 13 Trustee filed her Final Report and Accounting. (Doc. No. 67). On January 17, 2019, the case was closed. Affidavit ¶ 8.

7.      On February 28, 2019, the case was re-opened, and the Trustee filed a Notice of Final Cure Payment on March 1, 2019. (Doc. No. 73). Affidavit ¶ 9.

8.      On April 23, 2019, McClarn filed a Motion to Deem the Mortgage Current, (Doc. No. 76). Affidavit ¶ 10.

9.      In that same period, the re-opening of the Chapter 13 Case created an obstacle to paying McClarn's scheduled mortgage payments to Defendants because Defendants would not accept and process payments that McClarn tendered. In addition, Defendants claimed McClarn owed a post-petition arrearage. Affidavit ¶ 11.

10.     On or about January 30, 2020, the Court entered the *Consent Order on Debtor's Motion to Deem Mortgage Current* (Doc. No. 85) (the "Consent Order"). Affidavit ¶ 12.

11.     Among other things, the Consent Order: (1) established the outstanding sum of the post-petition arrearage as $15,794.24, to be paid to Defendants within 10 days of the entry of the Consent Order; (2) ordered Defendants to apply the held escrow funds to McClarn's total outstanding principal; (3) ordered Defendants to grant McClarn electronic access to his Mortgage account within 7 days of the entry of the Consent Order, (4) ordered that Defendants bring McClarn's loan current through February 1, 2020; (5) clarified that Defendants were not to assess McClarn's loan any additional interest due to the late tendering of mortgage payments in accordance with the Consent Order; and (6) closed the Chapter 13 case. Affidavit ¶ 13. (See Court Order at main case Doc. No. 85).

2

**Defendants Refused to Accept Plaintiff's Tendered Payments**

12.      In accordance with the Consent Order, McClarn tendered a Certified Check (the "Check") in the amount of $15,794.24 to his attorney at the time, Jeff Fields, on or around February 7, 2020. As is evident from the face of the Check, the Check was issued by the bank on February 6, 2020. McClarn timely obtained the Check on the 7th day following entry of the Consent Order and delivered the Check to my attorney the following day. Therefore, McClarn timely obtained and presented good funds to his attorney for the $15,794.24 due under the Consent Order (which required McClarn to fund within 10 days). Affidavit ¶ 14.

13.      At that time, Mr. Fields advised that he should not tender the check to Defendants to pay off the arrearage until McClarn received access to his online account. The Defendants had not and did not grant McClarn electronic access at this time, as required by the Consent Order. The Defendants were required to grant me such access the day before, on February 6th, according to the Consent Order. Mr. Fields advised McClarn that the withholding of the Check as payment may encourage the Defendants to come into compliance with the Consent Order more readily. Affidavit ¶ 15.

14.      On or about February 7, 2020, McClarn went to Citizens Trust Bank to try to gain access to his online account and resolve any issues with same. On that date Ladaria Smith ("Ms. Smith"), a Loan Manager for Citizens Trust, told McClarn that she could not help McClarn or accept his payments. Ms. Smith informed McClarn that all payments were to be made through Loancare directly. Specifically, Citizens Trust refused to grant McClarn online access to his account on that date. On that same day, McClarn sent Ms. Smith a copy of the Consent Order by email, which stated that Defendants were to grant McClarn electronic access to his loan account and bring him current through February 1, 2020. Affidavit ¶ 16.

15.      Eventually Mr. Fields advised that he should send the check, despite Defendants failure to grant electronic account access. Following Mr. Fields' advice, McClarn instructed him to tender the Check to Defendants on February 20, 2020. On February 21, 2020, Mr. Fields sent the

3

Check and a copy of the Consent Order directly to Defendants. As is evident from the face of the mailing receipt, the Check was mailed on February 21, 2020, and was expected to be delivered to Defendants on February 24, 2020. Affidavit ¶ 17.

16.     On or about February 27, 2020, McClarn attempted to make a payment in person on his loan at Citizens Trust Bank, but was told by Ms. Smith that she could not accept McClarn's payment because his account was in bankruptcy proceedings. Affidavit ¶ 18.

17.     On that same day, Ms. Smith sent McClarn an email directing McClarn to contact Loancare's bankruptcy department in order to sort out the issue of his rejected payments. Affidavit ¶ 19.

18.     Since February 20, 2020, when McClarn tendered the Check for the post-petition arrearage, McClarn has never been able to make a payment on his Mortgage with Defendants. McClarn has tried to make payments multiple times. Affidavit ¶ 20.

19.     When McClarn attempts to make a payment in person, employees tell him they cannot accept his payments and advise McClarn to speak with Loancare's Bankruptcy Counsel. Affidavit ¶ 21.

20.     When McClarn attempts to make a payment by phone, he is transferred to the bankruptcy department or collections and told that his loan is in foreclosure. Affidavit ¶ 22.

21.     One such instance occurred on March 30, 2020, when McClarn attempted to make a payment by phone through Loancare's servicing center. On that call, McClarn spoke to a loan care collection agent named T.J., who told McClarn that his account was in foreclosure, but also that McClarn's loan was in active bankruptcy. McClarn told that agent that McClarn was in fact current, and that the bankruptcy had already been resolved. Collection representative T.J. insisted that McClarn's payment still could not be accepted and that McClarn would need to speak to Loancare's foreclosure attorneys. Affidavit ¶ 23.

22.     McClarn has never been granted electronic access to his loan account, except for temporary and limited access given on February 13, 2020. At that time, McClarn could log into

the account but was unable to view the entirety of his account information, and even that limited electronic access was removed shortly thereafter. Affidavit ¶ 24.

23.     Moreover, while McClarn has been unable to make regular payments on his loan since the date of the Consent Order due to Defendants' rejection of those tendered payments, Defendants have continued to assess interest to the past due amounts on McClarn's loan. Affidavit ¶ 25.

24.     Mr. McClarn's Mortgage reflects $22,122.63 in assessed interest since entry of the Consent Order, through the date of the statement dated May 31, 2022. Affidavit ¶ 26.

25.     Defendants provided McClarn a pay-off statement dated May 31, 2022. The interest which Defendants have assessed to McClarn's Mortgage loan is shown on the pay-off statement which Defendants provided to McClarn on May 31, 2022. The pay-off statement dated May 31, 2022, reflects accrued interest in the amount of $22,122.63. Affidavit ¶ 27.

### Issue Regarding Reimbursements from Insurance Company

26.     On or around October 10, 2019, the real property that is subject to the Mortgage underwent flooding and had to be repaired. McClarn contracted for and paid for those repairs out of pocket so as to not delay the repair process. McClarn had all necessary inspections of the repairs done, and submitted all invoices of work for the repairs. The Defendants sent an agent to inspect the repair work. The work was certified to be 100% complete and satisfactory by Defendant's inspector. Affidavit ¶ 29.

27.     After the repair work was complete, the insurance company reimbursed McClarn for the repairs through several checks in varied amounts. Affidavit ¶ 30.

28.     Because Loancare is a loss payee on the insurance policy, the insurance company's checks were made jointly payable to Loancare and McClarn. Loancare's endorsement was therefore necessary to deposit the insurance checks. McClarn negotiated those checks by sending endorsed copies to Loancare and Loancare did endorse and deposit those checks, and

then would send a check in the same amount amount to McClarn. The final reimbursement check was issued to McClarn in the amount of $15,054.53. Affidavit ¶ 31.

29.     On or about April 22, 2021, McClarn sent that check to Loancare to endorse, but Loancare never returned that amount to him. Loancare retained the insurance proceeds and now holds that $15,054.53, which rightfully belongs to McClarn as reimbursement for repair costs. Loancare holds McClarn's $15,054.53 in what it calls "restricted escrow" (the "Escrow Funds") based upon Defendants statements to McClarn. Affidavit ¶ 31.

30.     The amount of the Escrow Funds is shown on the Reinstatement Quote provided to McClarn by Defendants. McClarn has requested on several occasions that Loancare return that amount to him. In addition, McClarn alternatively has requested that Loancare apply that amount to the principal balance of the Mortgage loan. Despite McClarn's requests, Defendants have neither: (a) paid McClarn the $15,054.53 of my Escrow Funds which is wrongfully held in escrow, or (b) applied the funds to the debt. Affidavit ¶ 32.

31.     On April 27, 2020, by and through prior counsel, McClarn filed the *Complaint* in this case, thereby initiating this adversary proceeding. It is McClarn's understanding of the Complaint that McClarn is demanding that Defendants come into compliance with the Consent Order by: (a) granting McClarn access to his account, (b) refunding or applying all Escrow Funds Defendants are withholding, and (c) bringing McClarn's account current. Affidavit ¶ 33.

**Refinancing Issues**

32.     In or around May 2020, McClarn submitted an application to refinance his Mortgage with Defendants.  Defendants failed to respond to McClarn's application to refinance his Mortgage. Affidavit ¶ 34.

33.     Because of the problems McClarn has had with Defendants regarding their failures in servicing his loan, McClarn determined to obtain a loan to refinance and pay-off the Mortgage. Without limitation, in early 2022, McClarn began speaking to Credit Union Financial Service ("CUFS") to refinance his loan through it. McClarn's prospective refinance lender needed a pay-

6

off statement from Defendants. CUFS, of its own accord, sent Defendants multiple written requests for a payoff statement. Defendants failed to respond to CUFS' requests or provide it with a pay-off statement. Therefore, in March of 2022, McClarn too requested a pay-off statement be sent to CUFS by Defendants, and subsequently Defendants still failed to provide a pay-off statement to CUFS as McClarn's new prospective lender. Affidavit ¶ 35.

34.    Instead of providing a pay-off statement to CUFS, Defendants provided it directly to McClarn. However, this was not helpful or adequate because CUFS needed to receive the pay-off statement <u>from Defendants</u> and not <u>from McClarn</u>. In addition, the Defendants provided McClarn with a pay-off statement which was inaccurate and incomplete. That pay-off statement made no note of the $15,054.53 insurance check (the Escrow Funds), which Defendants have held in restricted escrow. In other words, the pay-off statement did not credit the Escrow Funds in any way. Affidavit ¶ 36.

35.    In July 2022, still looking to refinance his mortgage through CUFS, McClarn once more requested a written pay-off statement through his attorney. On July 31, 2022, Defendants again provided the requested payoff statement directly to McClarn and not to CUFS. Additionally, that pay-off failed to mention the Escrow Funds which are being held by Defendants. Affidavit ¶ 37.

**Attorney's Fees**

36.      McClarn has incurred at least $18,500 in attorneys' fees bringing this action. Specifically, McClarn has been billed $18,500 by attorneys to prosecute this adversary proceeding in an effort to enforce the Consent Order. True and correct copy of the invoices from McClarn's counsel and prior counsels are available for use at trial. Affidavit ¶ 38.

Respectfully submitted September 29, 2022.

**JONES & WALDEN LLC**

*/s/ Leon S. Jones*
Leon S. Jones
Georgia Bar No. 003980
Attorney for Plaintiff
699 Piedmont Ave NE
Atlanta, Georgia 30308
(404) 564-9300
ljones@joneswalden.com

**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| IN RE:<br><br>**ANTHONY CARVER MCCLARN,**<br><br>　　Debtor. | **CHAPTER 13**<br><br>**CASE NO. 14-75160-sms** |
| **ANTHONY CARVER MCCLARN,**<br><br>　　**Plaintiff,**<br>v.<br><br>**CITIZENS TRUST BANK and<br>LOANCARE LLC,**<br><br>　　**Defendants.** | **ADVERSARY PROCEEDING**<br><br>**NO. 20-06070-sms** |

**<u>CERTIFICATE OF SERVICE</u>**

　　This is to certify that I have on this day electronically filed the foregoing *Plaintiff's Cross Motion for Summary Judgment* (the "Motion") using the Bankruptcy Court's Electronic Case Filing program, which sends a notice of and an accompanying link to the Motion to the following parties who have appeared in this case under the Bankruptcy Court's Electronic Case Filing Program:

- **Bret J. Chaness**　bchaness@rubinlublin.com, BJC-ECF-Notifications@rubinlublin.com
- **A. Christian Wilson**　cwilson@simplawatlanta.com, sscheu@simplawatlanta.com

　　This 29th day of September, 2022.

　　　　　　　　　　　　**JONES & WALDEN LLC**

　　　　　　　　　　　　*/s/ Leon S. Jones*
　　　　　　　　　　　　Leon S. Jones
　　　　　　　　　　　　Georgia Bar No. 003980
　　　　　　　　　　　　699 Piedmont Avenue, NE
　　　　　　　　　　　　Atlanta, Georgia 30308
　　　　　　　　　　　　(404) 564-9300
　　　　　　　　　　　　ljones@joneswalden.com
　　　　　　　　　　　　Attorney for Plaintiff