**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| IN RE:<br><br>**ANTHONY CARVER MCCLARN,**<br><br>    Debtor. | **CHAPTER 13**<br><br>**CASE NO. 14-75160-sms** |
| **ANTHONY CARVER MCCLARN,**<br><br>      **Plaintiff,**<br>**v.**<br><br>**CITIZENS TRUST BANK and
LOANCARE LLC,**<br><br>    **Defendant's.** | **ADVERSARY PROCEEDING**<br><br>**NO. 20-06070-sms** |

**PLAINTIFF'S BRIEF IN OPPOSITION TO SUMMARY JUDGMENT AND IN SUPPORT OF
PLAINTIFF'S CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT**

COMES NOW Anthony McClarn ("Plaintiff" or "McClarn") and files this *Plaintiff's Brief in
Opposition to Summary Judgement and in Support of Plaintiff's Cross Motion for Partial Summary
Judgment* (the "Brief").

**PROCEDURAL HISTORY**

Plaintiff filed this adversary proceeding on April 27, 2020 (Doc. No. 1). In the initial
Complaint, Plaintiff alleged 7 counts. On August 31, 2020, Defendants filed a motion for judgment
on the pleadings and a motion to dismiss. On December 3, 2020, the Court entered its order on
such motion (Doc. No. 17). Pursuant to such order, the Court dismissed six of Plaintiff's seven
counts. One count now remains in which Plaintiff alleges that Defendant is liable for damages for
its contempt based upon violations of this Court's Consent Order dated January 30, 2020 (Doc.
No. 85 in the main bankruptcy case) (the "Consent Order") On August 17, 2022, Defendants filed
a motion for summary judgment on Plaintiff's final count (count VII) (the "MSJ"). McClarn responds
to the MSJ. This Brief is filed in support of such response in opposition to Defendants' MSJ.
McClarn also makes his cross-motion for partial summary judgment. By such motion, McClarn

1

requests that the Court grant partial summary judgment as to the Defendants' liability under the remaining count of McClarn's Complaint (count VII). McClarn requests summary judgment as to liability for Defendants' contempt as no genuine issue of material fact exists regarding the issue of whether Defendants willfully violated the Order. The only remaining issue is the amount of any award, i.e., damages under count 7.

## STATEMENT OF FACTS

### Background

1.      On or about February 19, 2009, McClarn was in a car accident which interfered with his ability to work for several years. Affidavit ¶ 3.

2.      As a result of his temporary disability, McClarn fell behind on several debts including his mortgage held by Citizens Trust Bank ("Citizens Trust") and serviced by LoanCare LLC ("Loancare") (together, the "Defendants") for the property located at 4038 Boulder Vista Dr, Conley, Georgia 30288 (the "Mortgage"). Affidavit ¶ 4.

3.      On or about December 30, 2014, McClarn filed Chapter 13 bankruptcy case number 14-75160-sms (the "Chapter 13 Case"). Affidavit ¶ 5.

4.      On March 3, 2015, McClarn filed his 1st Amended Chapter 13 Plan (Doc. No. 21). On March 24, 2015, the Court entered an Order Confirming the Plan (Doc. No. 28). Affidavit ¶ 6.

5.      On December 28, 2018, the Chapter 13 Trustee filed the Notice of Plan Completion (Doc. No. 65). Affidavit ¶ 7.

6.      On January 14, 2019, the Chapter 13 Trustee filed her Final Report and Accounting. (Doc. No. 67). On January 17, 2019, the case was closed. Affidavit ¶ 8.

7.      On February 28, 2019, the case was re-opened, and the Trustee filed a Notice of Final Cure Payment on March 1, 2019. (Doc. No. 73). Affidavit ¶ 9.

8.      On April 23, 2019, McClarn filed a Motion to Deem the Mortgage Current, (Doc. No. 76). Affidavit ¶ 10.

2

9.      In that same period, the re-opening of the Chapter 13 Case created an obstacle to paying McClarn's scheduled mortgage payments to Defendants because Defendants would not accept and process payments that McClarn tendered. In addition, Defendants claimed McClarn owed a post-petition arrearage. Affidavit ¶ 11.

10.     On or about January 30, 2020, the Court entered the *Consent Order on Debtor's Motion to Deem Mortgage Current* (Doc. No. 85) (the "Consent Order"). Affidavit ¶ 12.

11.     Among other things, the Consent Order: (1) established the outstanding sum of the post-petition arrearage as $15,794.24, to be paid to Defendants within 10 days of the entry of the Consent Order; (2) ordered Defendants to apply the held escrow funds to McClarn's total outstanding principal; (3) ordered Defendants to grant McClarn electronic access to his Mortgage account within 7 days of the entry of the Consent Order, (4) ordered that Defendants bring McClarn's loan current through February 1, 2020; (5) clarified that Defendants were not to assess McClarn's loan any additional interest due to the late tendering of mortgage payments in accordance with the Consent Order; and (6) closed the Chapter 13 case. Affidavit ¶ 13. (See Court Order at main case Doc. No. 85).

**<u>Defendants Refused to Accept Plaintiff's Tendered Payments</u>**

12.     In accordance with the Consent Order, McClarn tendered a Certified Check (the "Check") in the amount of $15,794.24 to his attorney at the time, Jeff Fields, on or around February 7, 2020. As is evident from the face of the Check, the Check was issued by the bank on February 6, 2020. McClarn timely obtained the Check on the 7th day following entry of the Consent Order and delivered the Check to my attorney the following day. Therefore, McClarn timely obtained and presented good funds to his attorney for the $15,794.24 due under the Consent Order (which required McClarn to fund within 10 days). Affidavit ¶ 14.

13.     At that time, Mr. Fields advised that he should not tender the check to Defendants to pay off the arrearage until McClarn received access to his online account. The Defendants had not and did not grant McClarn electronic access at this time, as required by the Consent Order.

The Defendants were required to grant me such access the day before, on February 6th, according to the Consent Order. Mr. Fields advised McClarn that the withholding of the Check as payment may encourage the Defendants to come into compliance with the Consent Order more readily. Affidavit ¶ 15.

14.     On or about February 7, 2020, McClarn went to Citizens Trust Bank to try to gain access to his online account and resolve any issues with same. On that date Ladaria Smith ("Ms. Smith"), a Loan Manager for Citizens Trust, told McClarn that she could not help McClarn or accept his payments. Ms. Smith informed McClarn that all payments were to be made through Loancare directly. Specifically, Citizens Trust refused to grant McClarn online access to his account on that date. On that same day, McClarn sent Ms. Smith a copy of the Consent Order by email, which stated that Defendants were to grant McClarn electronic access to his loan account and bring him current through February 1, 2020. Affidavit ¶ 16.

15.     Eventually Mr. Fields advised that he should send the check, despite Defendants failure to grant electronic account access. Following Mr. Fields' advice, McClarn instructed him to tender the Check to Defendants on February 20, 2020. On February 21, 2020, Mr. Fields sent the Check and a copy of the Consent Order directly to Defendants. As is evident from the face of the mailing receipt, the Check was mailed on February 21, 2020, and was expected to be delivered to Defendants on February 24, 2020. Affidavit ¶ 17.

16.     On or about February 27, 2020, McClarn attempted to make a payment in person on his loan at Citizens Trust Bank, but was told by Ms. Smith that she could not accept McClarn's payment because his account was in bankruptcy proceedings. Affidavit ¶ 18.

17.     On that same day, Ms. Smith sent McClarn an email directing McClarn to contact Loancare's bankruptcy department in order to sort out the issue of his rejected payments. Affidavit ¶ 19.

18.     Since February 20, 2020, when McClarn tendered the Check for the post-petition arrearage, McClarn has never been able to make a payment on his Mortgage with Defendants. McClarn has tried to make payments multiple times. Affidavit ¶ 20.

19.     When McClarn attempts to make a payment in person, employees tell him they cannot accept his payments and advise McClarn to speak with Loancare's Bankruptcy Counsel. Affidavit ¶ 21.

20.     When McClarn attempts to make a payment by phone, he is transferred to the bankruptcy department or collections and told that his loan is in foreclosure. Affidavit ¶ 22.

21.     One such instance occurred on March 30, 2020, when McClarn attempted to make a payment by phone through Loancare's servicing center. On that call, McClarn spoke to a loan care collection agent named T.J., who told McClarn that his account was in foreclosure, but also that McClarn's loan was in active bankruptcy. McClarn told that agent that McClarn was in fact current, and that the bankruptcy had already been resolved. Collection representative T.J. insisted that McClarn's payment still could not be accepted and that McClarn would need to speak to Loancare's foreclosure attorneys. Affidavit ¶ 23.

22.     McClarn has never been granted electronic access to his loan account, except for temporary and limited access given on February 13, 2020. At that time, McClarn could log into the account but was unable to view the entirety of his account information, and even that limited electronic access was removed shortly thereafter. Affidavit ¶ 24.

23.     Moreover, while McClarn has been unable to make regular payments on his loan since the date of the Consent Order due to Defendants' rejection of those tendered payments, Defendants have continued to assess interest to the past due amounts on McClarn's loan. Affidavit ¶ 25.

24.     Mr. McClarn's Mortgage reflects $22,122.63 in assessed interest since entry of the Consent Order, through the date of the statement dated May 31, 2022. Affidavit ¶ 26.

25.     Defendants provided McClarn a pay-off statement dated May 31, 2022. The interest which Defendants have assessed to McClarn's Mortgage loan is shown on the pay-off statement which Defendants provided to McClarn on May 31, 2022. The pay-off statement dated May 31, 2022, reflects accrued interest in the amount of $22,122.63. Affidavit ¶ 27.

### Issue Regarding Reimbursements from Insurance Company

26.     On or around October 10, 2019, the real property that is subject to the Mortgage underwent flooding and had to be repaired. McClarn contracted for and paid for those repairs out of pocket so as to not delay the repair process. McClarn had all necessary inspections of the repairs done, and submitted all invoices of work for the repairs. The Defendants sent an agent to inspect the repair work. The work was certified to be 100% complete and satisfactory by Defendant's inspector. Affidavit ¶ 29.

27.     After the repair work was complete, the insurance company reimbursed McClarn for the repairs through several checks in varied amounts. Affidavit ¶ 30.

28.     Because Loancare is a loss payee on the insurance policy, the insurance company's checks were made jointly payable to Loancare and McClarn. Loancare's endorsement was therefore necessary to deposit the insurance checks. McClarn negotiated those checks by sending endorsed copies to Loancare and Loancare did endorse and deposit those checks, and then would send a check in the same amount amount to McClarn. The final reimbursement check was issued to McClarn in the amount of $15,054.53. Affidavit ¶ 31.

29.     On or about April 22, 2021, McClarn sent that check to Loancare to endorse, but Loancare never returned that amount to him. Loancare retained the insurance proceeds and now holds that $15,054.53, which rightfully belongs to McClarn as reimbursement for repair costs. Loancare holds McClarn's $15,054.53 in what it calls "restricted escrow" (the "Escrow Funds") based upon Defendants statements to McClarn. Affidavit ¶ 31.

30.     The amount of the Escrow Funds is shown on the Reinstatement Quote provided to McClarn by Defendants. McClarn has requested on several occasions that Loancare return

that amount to him. In addition, McClarn alternatively has requested that Loancare apply that amount to the principal balance of the Mortgage loan. Despite McClarn's requests, Defendants have neither: (a) paid McClarn the $15,054.53 of my Escrow Funds which is wrongfully held in escrow, or (b) applied the funds to the debt. Affidavit ¶ 32.

31.    On April 27, 2020, by and through prior counsel, McClarn filed the *Complaint* in this case, thereby initiating this adversary proceeding. It is McClarn's understanding of the Complaint that McClarn is demanding that Defendants come into compliance with the Consent Order by: (a) granting McClarn access to his account, (b) refunding or applying all Escrow Funds Defendants are withholding, and (c) bringing McClarn's account current. Affidavit ¶ 33.

**Refinancing Issues**

32.    In or around May 2020, McClarn submitted an application to refinance his Mortgage with Defendants.  Defendants failed to respond to McClarn's application to refinance his Mortgage. Affidavit ¶ 34.

33.    Because of the problems McClarn has had with Defendants regarding their failures in servicing his loan, McClarn determined to obtain a loan to refinance and pay-off the Mortgage. Without limitation, in early 2022, McClarn began speaking to Credit Union Financial Service ("CUFS") to refinance his loan through it. McClarn's prospective refinance lender needed a pay-off statement from Defendants. CUFS, of its own accord, sent Defendants multiple written requests for a payoff statement. Defendants failed to respond to CUFS' requests or provide it with a pay-off statement. Therefore, in March of 2022, McClarn too requested a pay-off statement be sent to CUFS by Defendants, and subsequently Defendants still failed to provide a pay-off statement to CUFS as McClarn's new prospective lender. Affidavit ¶ 35.

34.    Instead of providing a pay-off statement to CUFS, Defendants provided it directly to McClarn. However, this was not helpful or adequate because CUFS needed to receive the pay-off statement from Defendants and not from McClarn. In addition, the Defendants provided McClarn with a pay-off statement which was inaccurate and incomplete. That pay-off statement

made no note of the $15,054.53 insurance check (the Escrow Funds), which Defendants have held in restricted escrow. In other words, the pay-off statement did not credit the Escrow Funds in any way. Affidavit ¶ 36.

35.     In July 2022, still looking to refinance his mortgage through CUFS, McClarn once more requested a written pay-off statement through his attorney. On July 31, 2022, Defendants again provided the requested payoff statement directly to McClarn and not to CUFS. Additionally, that pay-off failed to mention the Escrow Funds which are being held by Defendants. Affidavit ¶ 37.

### Attorney's Fees

36.     McClarn has incurred at least $18,500 in attorneys' fees bringing this action. Specifically, McClarn has been billed $18,500 by attorneys to prosecute this adversary proceeding in an effort to enforce the Consent Order. True and correct copy of the invoices from McClarn's counsel and prior counsels are available for use at trial. Affidavit ¶ 38.

### ARGUMENT AND CITATION OF AUTHORITY

I.   Standard of Review

Summary judgment is not appropriate if there is any genuine issue of material fact in dispute still to be resolved at trial. Fed. R. Civ. P. 56. Movants (Defendants) have the burden of proving that no dispute of material fact remains even where the non-movant (McClarn) would have the burden at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Therefore, the burden is on Defendants to prove that no dispute exists as to any material fact in this case. In turn, Plaintiff only needs to show one genuine dispute as to any material fact in order to survive Defendant's Motion for Summary Judgment. On the other hand, McClarn shows that no dispute of material fact exists as to his cross-motion for summary judgment.

II.    The Court Should Award McClarn Amounts to Be Later Determined Based Upon
Defendant's Willful Violations of This Court's Consent Order.

Defendants should be held liable to Plaintiff in amounts to be determined for the damages that result from Defendants' willful violation of this Court's Consent Order. In the MSJ, Defendants assert that the undisputed facts prove that the Defendants are not in contempt because Defendants claim that they did eventually apply the funds contemplated in the Consent Order. However, the undisputed facts prove that Defendants have not complied with the Court's Order. Accordingly, the Court should award Plaintiff damages including the costs McClarn incurred based on the Defendants' non-compliance with the Order.

Defendants' account of McClarn's contempt claim is incomplete and fails to adequately address Defendants' continued non-compliance. That non-compliance includes but is not limited to: (1) Defendants' ongoing refusals to accept Plaintiff's payments, (2) Defendants' ongoing failure to provide Plaintiff with electronic access to his loan account; (3) the interest that Defendants have assessed to McClarn's loan during the period while he has been blocked from making payments on his loan; (4) Defendants have improperly seized and held Insurance Proceeds which rightfully belong to the Plaintiff, or alternatively, Defendants' failure to apply Plaintiff's Insurance Proceeds to his outstanding principal; (5) Defendants' failure to provide Plaintiff with an accurate payoff statement. Finally, Defendants' MSJ fails to address McClarn's continuing efforts to bring Defendant into compliance (and gain some access or control over his loan account with Defendants). Defendants' MSJ also fails to address the costs which McClarn has incurred as a result of Defendants' non-compliance with this Court's Order.

Defendants' willful violations of the Consent Order constitute compensable contempt. Defendants assert that no facts remain in dispute, and that McClarn has no right to recover. McClarn shows that Defendants' liability has been shown by the undisputed facts of this case. Therefore, McClarn requests that the Court deny Defendants' motion for summary judgment and enter partial summary judgment in McClarn's favor as to Defendants' contempt. The only issue

remaining for trial is the amounts of any award in favor of McClarn based on Defendants' contempt of the Consent Order. The total amount of damages and any penalty to be awarded for Defendants' contempt should be fully determined by subsequent motion or at trial.

**A.    Defendant's Willfully Violated the Consent Order.**

Defendants are liable for contempt due to their willful violation of this Court's Consent Order. In *Taggart v. Lorenzen*, the U.S. Supreme Court held that in order for an individual to be held liable for contempt, he must "receive explicit notice of what conduct is outlawed." *Taggart v. Lorenzen*, 139 S. Ct. 1795 (2019). More specifically, *Taggart* held that a bankruptcy court may hold a creditor in contempt for attempting to collect on a debt that has been discharged in bankruptcy "if there is no fair ground of doubt as to whether the Order barred the creditors conduct." *Id.* at 1801.

In 2021, the Second Circuit applied *Taggart* to determine whether a creditor was in contempt for violating a Bankruptcy Court's Order declaring that a home mortgage be made current. *In re Gravel*, 6 F.4th 503 (2d Cir. 2021). Here, McClarn shows that there is no fair ground of doubt whether the Consent Order barred Defendants' conduct that has been ongoing since February of 2020. Specifically, the Defendants' failure to make Plaintiff current on his home mortgage, their refusal to accept his payments, their mis-classification of Plaintiff's loan as in bankruptcy and/or foreclosure, and the continued accrual of additional interest during the same period are violations of the Consent Order.

The Consent Order ordered that Defendants apply the Plaintiff's escrow funds to his outstanding loan amount[1], that Plaintiff's loan be made current through February 1, 2020, and that Defendants grant Plaintiff access to his online account within 7 days. That Consent Order also established Plaintiff's post-petition arrearage in the amount of $19,899.80. The Consent

---

[1] The Consent Order makes specific reference to $4,105.56 being held in escrow by Defendants at the time of the Consent Order.

Order required that $4,105.56 of that sum was to be paid from Plaintiff's excess escrow balance; and the remaining $15,794.24 was to be paid by Plaintiff via certified check within ten days of the entry of that Order.

Plaintiff tendered funds after the Consent Order was issued, but Defendants never complied with the Order. Specifically, the Defendants violated the Consent Order when they failed to bring Plaintiff's account current. Defendants have classified the account as in "bankruptcy" or "foreclosure". Defendants' actions refused to accept Plaintiff's payments as due. This has resulted in the improper accumulation of interest and an improperly inflated balance on Plaintiff's account. Further, Plaintiff has never been granted full access to his online loan account. Details of each of Defendants' violations, and the effect of same are further described below.

       *i.*    *Defendants Classified Plaintiff's Loan as Being Subject to "Bankruptcy" or "Foreclosure" Proceedings, and as a Result Defendants Have Failed to Bring Plaintiff's Account Current.*

The Defendants violated the Consent Order when they failed to make Plaintiff's Loan current through February 1, 2020, in accordance with the Consent Order. The Consent Order explicitly called for Defendants to bring Plaintiff's account current. However, Defendants failed to comply.

In February 2020, Plaintiff attempted to make his scheduled February payment. Upon attempting to make a payment, he was told by Defendants' agents that his account was in "bankruptcy proceeding" and that they could not accept any payments. Affidavit at ¶ 18. Later, Plaintiff attempted to make payments by phone and was told, on different occasions, that the account was in "bankruptcy" and in "foreclosure proceedings". Affidavit at ¶ 23. Defendants' agents directed McClarn to Defendants' "foreclosure counsel". During this time, Defendants never brought Plaintiff's account current, and Defendants continued to classify the loan as either being in bankruptcy or in foreclosure proceedings in clear violation of the Consent Order. Affidavit at ¶ 23.

Defendants' actions in failing to comply with the Consent Order have prevented Plaintiff from making any payments on his loan since the date that he tendered the post-petition arrearage in February of 2020. As a result, interest continues to be assessed to Plaintiff's outstanding balance. Plaintiff has made repeated efforts, individually and through counsel, to remedy Defendants' error and bring his account current, but Defendants have failed to provide any relief and refuse to correct their mistake. Accordingly, Plaintiff has been forced to bring this Complaint in an attempt to require Defendants to comply with this Court's Consent Order.

ii.    *Defendants Have Refused to Grant Plaintiff Access to His Online Account.*

Defendants violated the Consent Order because they have failed to grant Plaintiff access to his online loan account. In the Motion for Summary Judgment, Defendants assert that Plaintiff could not have paid the certified sum provided by the Order via his online account anyways, and so such access is not mandated by the Order. But Defendant's obligation to grant Plaintiff access to his online account was explicitly stated in the Consent Order.

Defendants assert that Plaintiff knew that he could not pay the post-petition arrearage through his online account. Plaintiff's intent in obtaining access to his online account was not for the purpose of paying off his post-petition arrearage. Instead, Plaintiff needed to monitor the status of his account himself. Defendants have failed to provide Plaintiff with said access. Plaintiff contacted the Defendants, individually and through his counsel, to try to secure access to his online account. Defendants have still refused to provide Plaintiff with access to his online account. Affidavit at ¶ 24. Plaintiff was justified in his need to monitor the account given Defendants' actions since February of 2020. Specifically, Defendants have refused to accept payments but accrued interest anyway. Defendants have also held McClarn's Insurance Proceeds.

iii.    *Defendants Have Rejected All of Plaintiff's Tendered Payments Since February of 2020.*

Defendants' rejections of Plaintiff's payment attempts since February of 2020 are a violation of the Consent Order. The Consent Order required Defendants to make the Plaintiff's

12

account current. Had Defendants complied with the Order, there should have been no restrictions on McClarn's account and McClarn would have been able to pay all sums as they became due. But instead, Defendants failed to bring Plaintiff's account current and as a result they have rejected all of his attempts to make scheduled payments. Affidavit at ¶ 20**.**

Defendants' misclassification of the loan has continued over the two and a half years that have followed the entry of the Consent Order. Affidavit at ¶ 20, 23, 24**.** Defendants' misclassification of the loan and other violations of the Order have been ongoing despite Plaintiff's many attempts to remedy the error, both individually and through his counsel. In all, the rejection of Plaintiff's scheduled payments is a violation of the Consent Order which called for Defendants to make Plaintiff's account current. Defendants still fail to comply.

    *iv.*   *Defendants Have Accrued Interest to the Loan During the Same Period That They Have Rejected Plaintiff's Payments*.

The Defendants have assessed interest on the loan at the same time that they refused to accept payments from Plaintiff. Affidavit at ¶ 25, 26, 27. Such accumulated interest is a direct consequence of Defendants failure to comply with the Consent Order and make plaintiff's account current. Defendants' failure to make Plaintiff's account current has resulted in the misclassification of that account and the rejection of all payment attempts made by Plaintiff. Because Plaintiff's payments have been rejected since February 2020, Defendants have wrongfully accrued interest on McClarn's account through no fault of McClarn.

Additionally, the Consent Order explicitly dictates that "[Defendants] ha[ve] not and will not asses [Plaintiff]'s loan any additional interest due to [Plaintiff] tendering mortgage payments later than their respective due dates, or in other words, interest charged on the account shall be the same as if all payments had been tendered timely." This was a just and agreed upon remedy at the time of the entry of the Consent Order.

In accordance with this provision of the Consent Order, Defendants' assessment of interest on unpaid amounts during the period which it refused Plaintiff's payments constitutes

violation of the Consent Order. It must be emphasized that any existing unpaid payments are only due because of Defendants' failure to comply with this Order. The continued violation by Defendants should suspend the accrual of interest. All provisions of the Consent Order should apply to all payments that would have otherwise become due since entry of the Consent Order until such time that Defendants actually comply with the Order. Put another way, since Defendants have never complied with the Consent Order, they should still be subject to the other requirements of the Order. Further, Defendant's disregard for the interest provision of the Consent Order constitutes a related yet independent basis for Defendants' violation of the Order from its failure to bring Plaintiff's account current, as discussed above.

     v.   *Defendants Have Retained the Insurance Proceeds That Are Rightfully Owed to Plaintiff.*

In April of 2021, during the course of this Adversary Proceeding, Defendants improperly seized funds (the Insurance Proceeds) which rightfully belong to Plaintiff. Defendants continue to withhold the Insurance Proceeds.[2]

As a result of flooding to McClarn's property, McClarn had substantial repairs done on the real property which is subject to his loan with Defendants. To expedite the repair process, McClarn funded all repairs out of pocket, and then sought reimbursement from his insurance company. Affidavit at ¶ 29. In compliance with his insurance company's claims procedure, Plaintiff was required to send Defendants endorsed checks to be deposited, and Defendants would then send Plaintiff a check in the same amount shortly thereafter. In April of 2021, however, Plaintiff sent one such endorsed check in the amount of $15,054.53 to the Defendants and that amount was never returned to him. Affidavit at ¶ 31. Defendants have, at times, acknowledged this sum as an amount held in "restricted escrow" but they have never adequately justified withholding said funds. Affidavit at ¶ 32, Exhibit E, page 1. Similarly, on other occasions, Defendants fail to acknowledge

---

[2] On today's date at 1:58 p.m., counsel for Defendants sent an email to undersigned counsel for Plaintiff. Such email purports to address the "restricted escrow." Undersigned counsel has not had opportunity to understand the email and attached document.

that any funds are being withheld from Plaintiff at all. Affidavit at ¶ 36, 37, Exhibits D, F, page 1, 1.

Defendants' retention (i.e., restricted escrow) of the Insurance Proceeds constitutes a violation of the Consent Order's provision that McClarn's account be made current and the provision that escrow funds be applied to Plaintiff's loan.

Defendants' withholding of the Insurance Proceeds (which are rightfully owed to McClarn) is consistent with the rest of Defendants' actions that wrongfully classify Plaintiff's account as delinquent. Defendants seem to assert some right to seize the Insurance Proceeds and to withhold them. Given Defendants' other actions with regard to Plaintiff, it seems that the seizure is due to Defendants' ongoing misclassification of Plaintiff's account (as in "foreclosure" or "bankruptcy"). Put another way, had Defendants brought Mr. McClarn current in accordance with the Consent Order, then the Defendants would have no reason to seize his Insurance Proceeds. Such actions violate the Defendants' requirement to make Plaintiff's account current. As stated, Defendants should have returned the Insurance Proceeds to McClarn. Alternatively, Defendants should have applied the Insurance Proceeds to the principal balance on the loan.

The Consent Order instructs Defendants to apply all outstanding escrow funds to Plaintiff's loan balance. The Consent Order is specifically referring to a $4,105.56 sum that Defendants held in escrow at the time of the Consent order. Defendants seized subsequently the Insurance Proceeds (which properly belong to Plaintiff) in April of 2021. At that time Defendants classified that sum as "restricted escrow." Prior to today, Defendants have never applied the Escrow Funds in question to Plaintiff's loan, despite many requests by Plaintiff. Defendants' seizure of the Insurance Proceeds, along with their refusal to apply those funds to Plaintiff's loan, violates both the language and the spirit of this Court's Consent Order.

      *vi.    Defendants Failed to Respond to Plaintiff's Refinancing Application in a Timely
Manner.*

In May 2020, Plaintiff sought to refinance his loan with the Defendants. At such time,
Plaintiff submitted to Defendants an application to refinance the loan. Affidavit at ¶ **34**. To date,
Defendants have never responded to Plaintiff's refinancing application. Id. In summary,
Defendants have failed to bring Plaintiff current and to treat him like any other borrower who is
similarly positioned. Such action violates the Consent Order.

      *vii.    Defendants Have Failed to Provide Plaintiff with Accurate Pay-Off Statements as
Requested.*

Since the beginning of 2022, Plaintiff has sought to refinance his loan with a third-party
lender. Affidavit at ¶ 35. Defendants' failure to provide his prospective lender with accurate pay-
off statements in a timely manner prevented Mr. McClarn from paying off the loan because such
failure blocked Mr. McClarn's refinance application effort. Affidavit at ¶ 37. Both Plaintiff and his
prospective lender made written requests for pay-off statements, but Defendants never provided
any pay-off to McClarn's prospective lender. The only payoff statements that Defendants issued
to Plaintiff directly were inaccurate.

First, despite Plaintiff's many attempts and requests that a pay-off statement be sent to
his prospective lender, Defendants would only supply pay-off statements directly to Plaintiff. This
was unhelpful for Plaintiff's refinance attempts, as McClarn's prospective lender required the
payoff statement be supplied directly by McClarn's proposed lender. (McClarn Affidavit at ¶ 37).
In all, Defendant's refusal to provide McClarn's prospective lender with an accurate payoff
statement in a timely manner led to the rejection of Plaintiff's refinancing application. (Affidavit at
¶ 35, 36, 37.

Second, the payoff statements that Defendants supplied to Mr. McClarn himself fail to
make any mention of Plaintiff's withheld Insurance Proceeds (the Escrow Funds). Affidavit at ¶
36, 37, Exhibits D, F, page 1, 1. In fact, the May pay-off statement even includes instructions on
how to request that any "restricted escrow funds" be applied to a borrower's principal. However,

this procedure only was available if a line item was included denoting such "restricted escrow" funds. However, the May pay-off statement that Defendants provided to Plaintiff did not include a line item for any "restricted escrow" funds. In other words, the May pay-off statement made no mention of the Insurance Proceeds held by Defendants. Affidavit at ¶ 36, Exhibit D, page 1. The July Pay-off statement on the other hand, does address restricted escrow, but lists Plaintiff's restricted escrow funds as $0.00. Affidavit at ¶ 37, Exhibit F, page 1.

Defendants' actions in failing to provide an accurate payoff statement constitute a violation of the Consent Order's provision that Plaintiff be made current and that escrow funds be applied. Defendants are under the obligation bring McClarn's account current which means to treat McClarn as any other similarly situated borrower. Defendants' failure to provide a timely and accurate payoff statement falls short of that obligation.

### B.    Defendant's Various Failures to Comply with the Consent Order Constitute Intentional Violations.

Defendants' failure to comply with this Court's Order has been intentional and with full knowledge of their obligations under the Consent Order. *Taggart*, 139 S. Ct. at 1802 (applying no fair ground of doubt standard). Plaintiff has continued to notify Defendants of the issues he faces with his loan and Defendants' servicing. Defendants have always had the ability to comply with the Court's Consent Order by taking actions including but not limited to: (a) removing the status of McClarn's account from delinquent (i.e., "foreclosure", "bankruptcy", etc.), (b) granting McClarn online access to his account, (c) applying the Insurance Proceeds to the existing principal or paying them to Mr. McClarn, and (d) accepting all of Mr. McClarn's payments when tendered. Instead, Defendants intentionally chose not to do any of these things despite Plaintiff's continuous inquiries into the same. In the mean-time Defendants have continued to send invalid loan statements. Defendants have held Mr. McClarn in limbo for over two years.

**C.        The Defendant's' Violations of the Consent Order Warrant Sanctions.**

Defendants' knowing violation of the Consent Order caused Plaintiff to incur costs. Defendant's actions have caused Plaintiff to incur damages in the form of: (1) attorneys' fees amounting to at least $18,500 to date[3]; (2) at least $22,122.63 in interest which Defendants assessed during the period when Defendants have rejected Plaintiff's payments; and (3) Defendants wrongful retention of the $15,054.53 in Insurance Proceeds which are owed to Plaintiff and that have been "restricted" by Defendants.

In *re Windstream Holdings Inc.*, the Court found that where a movant has established that a respondent has failed to comply with an unambiguous order of a bankruptcy court, then the Court has the power to impose sanctions as necessary and appropriate to carry out its orders. *Windstream Holdings Inc. v Charter Communs. Inc.*, 627 B.R. 32 (S.D. N.Y. 2021). The court further held that such sanctions may include: "(1) coercive sanctions to encourage compliance, (2) damages for monetary harm, and (3) in appropriate generally egregious circumstances, relatively minor non-compensatory, or punitive sanctions." *Id.* (Internal citations omitted). In this case, this court should impose coercive, compensatory, and minor non-compensatory punitive sanctions on the Defendants for their failure to comply with this Court's Consent Order.

    *i.    The Court Should Award Coercive Sanctions.*

The Court should impose coercive sanctions. Coercive sanctions are meant to encourage compliance with an order of the court. *McComb v. Jacksonville Paper Co., 336 U.S. 187, 191 (1949).* Coercive sanctions must specifically account for "(1) the character and magnitude of the harm threatened by the continued contumacy; (2) the probable effectiveness of any suggested sanction in bringing about compliance; and (3) the contemnor's financial resources and the

---

[3] The amount of Mr. McClarn's attorney fees will increase if this litigation continues. Mr. McClarn reserves the right to establish these attorney fees and additional attorney fees at trial or by supplemental affidavit.

consequent seriousness of the burden of sanction upon him." *Weston Capital Advisors, Inc. v. PT Bank Mutiara, Tbk, 738 Fed. Appx. 19, 22 (2d Cir. 2018).*

In the current instance, the character and magnitude of the harm imposed on Mr. McClarn by Defendants' continued noncompliance is substantial. Defendants continue to assess interest to Mr. McClarn's account. Additionally, Defendants' noncompliance has blocked Mr. McClarn's efforts to refinance the loan through another lender. Finally, the continued refusal of Defendants to grant Mr. McClarn electronic access to his loan account causes continued harm to him because he is unable to monitor the account or the Defendant's activities with reference to the loan.

The second factor, the probable effectiveness of the suggested sanction in bringing Defendants into compliance, also weighs in favor of imposing substantial coercive sanctions on Defendants. Specifically, Mr. McClarn has tried for over 2 years to obtain Defendants' compliance with the Consent Order, but to no avail. Even throughout this action, Defendants have refused to provide plaintiff account electronic access, to return or credit funds which are rightfully owed to him, and to allow McClarn to make a payment. It seems unlikely that anything less than a substantial daily monetary sanction (until Defendants fully comply with the Consent Order) will result in Defendants' compliance.

Finally, the third factor, the assets available to the condemnor, also weighs in favor of the imposition of substantial daily coercive sanctions. The defendants here are a bank and a mortgage servicer. Not only do they have access to assets from which they may pay sanctions, but they oversee other loan accounts which may be suffer from the same malfeasance they imposed on Mr. McClarn.

ii. *The Court Should Award Compensatory Sanctions.*

Compensatory sanctions, unlike coercive sanctions, are meant to compensate for losses or damages sustained by reason of non-compliance. *See Macomb at 191.* This type of sanction is meant to compensate a compliant party for the actual damages incurred based on the subject parties' non-compliance. While the amount of compensatory sanctions does not need to be an

exact one to one ratio between the damage done to the movant and the assets subject to the resulting contempt sanction, the amount sanctioned should correspond to some degree to the magnitude of the damage caused. *Weston Capital* at 21. In this case, Mr. McClarn has incurred substantial costs as a result of Defendants' noncompliance. Those damages include but are not limited to: interest assessed, the escrow funds withheld, and attorney's fee costs.

   *iii.*  *The Court Should Award Non-Compensatory Punitive Sanctions.*

   Bankruptcy courts have a limited authority to impose non-compensatory damages for civil contempt under 11 U.S.C. §105 (a). *Adell v. John Richards Homes Bldg. Co. LLC., Fed Appx. 401, 415 (6th Cir. 2013)*. The Court in *re John Richards Homes Bldg. Co. LLC* found that there was no statutory basis for a bankruptcy court to impose "serious non-compensatory punitive damages". However, that court did recognize that 11 U.S.C. § 105 (a) granted bankruptcy courts the authority to award minor non-compensatory punitive sanctions on non-compliant parties.

   In *In re 1601 W. Sunnyside #106, LLC*, the court similarly found that non-compensatory damages were sometimes appropriate where a creditor persists in their determination to violate the court's order. *In re 1601 W. Sunnyside #106, LLC*, 54 Bankr. Ct. Dec. 43, 2010 Bankr. LEXIS 4903 at * 21-23 (Bankr. D. Idaho, 2010). Though the issue in *Sunnyside* regarded the violation of an automatic stay by a creditor, the court relied on its inherent authority under § 105(a) and held that bankruptcy courts may impose punitive sanctions. The Court relied on § 105 rather its power to protect the bankruptcy estate under 11 U.S.C. §362. The court in *Sunnyside* declined to define exactly where the line lies between "relatively mild" and "serious" non-compensable sanctions, but it did clarify that the relatively mild non-compensatory fines that do fall within the courts power under §105(a) are to be "narrowly limited to the amount necessary for rule enforcement."

   No doubt should exist as to a Bankruptcy Court's authority to issue such sanctions as noted by the court in *Rosellini v. United States*. In *Rosellini*, the bankruptcy court found unambiguously that "bankruptcy courts, like Article III courts, possess inherent sanctioning powers… includ[ing] the power to impose relatively minor non-compensatory sanctions, [in

appropriate circumstances].'"  *Rosellini v. United states* bankruptcy Ct., 941 F.3d 625, 627-28 (2d

Cir. 2019). Such sanctions are appropriate here.

   *iv. McClarn is Entitled to an Award of Punitive Damages.*

  A party is entitled to punitive damages on a claim for civil contempt when such party shows

that the Defendants actions display "some showing of reckless or callous disregard for the law or

rights of others." *Green Point Credit, LLC v. McLean,* 794 F.3d 1313, 1325-26 (11th Cir. 2015).

The instant case does in fact represent a willful, reckless, and callous disregard for the Consent

Order of this Court and for the rights of the Plaintiff. The Defendants have callously disregarded

the Court's Order that they make Plaintiff current on his loan payments through February 1, 2020.

  Plaintiff repeatedly contacted Defendant through his lawyer, to try to correct the issue and

make his scheduled payments. Even after being made aware of the issue, Defendants have

refused to make plaintiff current, to apply the funds to Plaintiff's account, or grant him account

access. Defendants have continued their refusal while sending erroneous statements and

demanding erroneous amounts owed until Plaintiff brought this action. Plaintiff now asks this

Court to award whatever punitive damages it deems appropriate.

  **D. McClarn's Claim Against Defendants for Contempt Is Not Barred by the Doctrine of Unclean Hands.**

  In their *Motion for Summary Judgment*, Defendants assert the doctrine of "unclean hands".

(Defendants Memorandum at p. 8). Mr. McClarn's claims should not be barred by the doctrine of

unclean hands. Plaintiff substantially complied with this Court's Consent Order when he delivered

a certified check in the amount specified in the Consent Order to his attorney on February 7, 2020.

His attorney sent those funds to Defendants on February 21, 2020. Additionally, the delay in

Plaintiffs tender of funds is understandable based upon McClarn's fear that those funds would be

misapplied if he was unable to access his online account and monitor the transaction. Plaintiff's

fear was eventually realized through Defendants' ongoing refusal to accept payments and grant

online access, and later, Defendants failure to return or apply the Insurance Proceeds. In all,

Defendants fail to show that Plaintiff's actions were tainted by inequity, bad faith, or any other improper behavior that should "close the door of a court of equity." *Accent Stripe*, 2007 WL 1540267, at *5. Even if McClarn had never complied, such failure would not excuse Defendants from abiding by the Consent Order. Accordingly, Plaintiff's claim for contempt should not be barred by "unclean hands".

## RELIEF REQUESTED

Plaintiff was forced to file this Adversary Proceeding based upon Defendants' willful non-compliance with this Court's Order. Mr. McClarn requests that the Court: (1) order Defendants to grant McClarn permanent electronic access to his loan account, (2) order Defendants to apply the Insurance Proceeds held in "restricted escrow" to Plaintiff's existing principal or alternatively return those funds to Plaintiff, (3) order that Defendant bring McClarn's account current and accept future payments from Mr. McClarn, (4) order Defendants to provide accurate payoff statements to Plaintiff's prospective lenders upon request, (5) order that Defendants forfeit all interest assessed to Plaintiff's loan from February 1, 2020, through 15 days following the entry of a final order on this matter, and (6) order Defendants to pay sanctions as set forth herein including Plaintiff's costs in bringing this action (including, but not limited to, $18,500.00 in attorney fees incurred). In addition, Plaintiff seeks any punitive damages which this court deems appropriate.

## CONCLUSION

In their *Motion for Summary Judgment*, Defendants downplay their obligations under the Consent Order and claim that they violated no part of the Order. The Defendant says that they did not violate the Consent Order because the funds expressly considered in the Order were eventually applied to the loan. But Defendants fails to account for all of their misfeasance that has occurred. The undisputed facts establish that Defendants have willfully violated the Consent Order. The determination of appropriate sanctions to be assessed for those violations remains the only issue to be determined.

Plaintiff has established his prima facie case for civil contempt. Accordingly, Summary judgment should not be entered against him. Rather, the Court should grant summary judgment to Mr. McClarn and against Defendants as to liability on the contempt Count of Mr. McClarn's complaint. Mr. McClarn is entitled to partial summary judgment as to liability. McClarn requests that a trial or further motions practice be granted in this matter to determine the total amount of sanctions (and as appropriate) Plaintiff's damages.

Respectfully submitted September 29, 2022.

**JONES & WALDEN LLC**

*/s/ Leon S. Jones*
Leon S. Jones
Georgia Bar No. 003980
Attorney for Anthony Carver McClarn
699 Piedmont Ave NE
Atlanta, Georgia 30308
(404) 564-9300
ljones@joneswalden.com

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| IN RE:<br><br>**ANTHONY CARVER MCCLARN,**<br><br>        Debtor. | **CHAPTER 13**<br><br>**CASE NO. 14-75160-sms** |
| **ANTHONY CARVER MCCLARN,**<br><br>        **Plaintiff,**<br>v.<br><br>**CITIZENS TRUST BANK and**<br>**LOANCARE LLC,**<br><br>        **Defendants.** | **ADVERSARY PROCEEDING**<br><br>**NO. 20-06070-sms** |

<u>**CERTIFICATE OF SERVICE**</u>

　　　　This is to certify that I have on this day electronically filed the foregoing *Plaintiff's Brief in Opposition to Summary Judgement and in Support of Plaintiff's Cross Motion for Partial Summary Judgment* (the "Brief") using the Bankruptcy Court's Electronic Case Filing program, which sends a notice of and an accompanying link to the Brief to the following parties who have appeared in this case under the Bankruptcy Court's Electronic Case Filing Program:

- **Bret J. Chaness**    bchaness@rubinlublin.com, BJC-ECF-Notifications@rubinlublin.com
- **A. Christian Wilson**    cwilson@simplawatlanta.com, sscheu@simplawatlanta.com

　　　　This 29th day of September, 2022.

　　　　　　　　　　　　**JONES & WALDEN LLC**

　　　　　　　　　　　　*/s/ Leon S. Jones*
　　　　　　　　　　　　Leon S. Jones
　　　　　　　　　　　　Georgia Bar No. 003980
　　　　　　　　　　　　699 Piedmont Avenue, NE
　　　　　　　　　　　　Atlanta, Georgia 30308
　　　　　　　　　　　　(404) 564-9300
　　　　　　　　　　　　ljones@joneswalden.com
　　　　　　　　　　　　Attorney for Plaintiff