**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| IN RE:<br><br>ANTHONY CARVER MCCLARN,<br><br>    Debtor. | Case No. 14-75160-sms<br>Chapter 13 |
| ANTHONY CARVER MCCLARN,<br><br>     Plaintiff,<br><br>v.<br><br>CITIZENS TRUST BANK and LOANCARE, LLC,<br><br>     Defendants. | Adversary No. 20-06070-sms |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR
SUMMARY JUDGMENT**

COME NOW, Citizens Trust Bank ("Citizens"), LoanCare, LLC ("LoanCare") (collectively, the "Defendants"), and file this (1) Reply to the Plaintiff's Response to their Motion for Summary Judgment [Docs. 77, 78]; and (2) Response to the Plaintiff's Cross-Motion for Summary Judgment [Doc. 76], respectfully showing this Honorable Court as follows:

**ARGUMENT AND CITATION OF AUTHORITY**

A.    **THE PLAINTIFF HAS NO BASIS TO DENY ANY OF THE DEFENDANT'S MATERIAL FACTS**

To begin with, the Defendants must address the Plaintiff's Response to their Statement of Material Facts. *See* [Doc. 78] at pp. 28-32. Facts 17-21, 23, and 26-39 were all responded with "Denied. Plaintiff was not competent to testify at the time of his deposition due to his medical condition." *Id.* This is a baseless objection that should be overruled and disregarded, and as a

1

result, all the facts be deemed admitted. Fed. R. Civ. P. 56(c)(2) provides that "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." "Once a party makes a Rule 56(c)(2) objection, 'the burden is on the proponent to show that the material is admissible as presented or explain the admissible form that is anticipated.'" *Campbell v. Shinseki*, 546 F. App'x 874, 879 (11th Cir. 2013) (quoting Fed. R. Civ. P. 56, advisory committee's note to 2010 amendments).

Federal Rule of Evidence 601 provides that "[e]very person is competent to be a witness unless these rules provide otherwise." And the rules do not provide otherwise with respect to mental capacity. The Advisory Committee Notes to Rule 601 make clear that mental capacity is not a basis to declare a witness incompetent, provided that federal law supplies the rule of decision (as it does here).[1] *See* Fed. R. Evid. 601 (1974 Advisory Committee Notes); *see also U.S. v. Meehan*, 741 F. App'x 864 (3d Cir. 2018); *U.S. v. Roach*, 590 F.2d 181, 185-86 (5th Cir. 1979). Rather, mental capacity simply goes towards credibility of the witness, *see* Fed. R. Evid. 601 (1974 Advisory Committee Notes), which is not at issue on a motion for summary judgment. *See Lewis v. New Prime Inc.*, No. 1:10-CV-1228-WSD, 2013 WL 12099654, at *4 n.7 (N.D. Ga. Jan. 29, 2013) (citation omitted) ("On summary judgment, the Court does not weigh the credibility of witness testimony."). Rather, a party objecting to materials used to support a motion for summary judgment can only "object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2);

---

[1] When state law supplies the rule of decision, state law competency rules apply. *See* Fed. R. Evid. 601. While federal law clearly applies here, Georgia law is identical with respect to competency. *See* O.C.G.A. § 24-6-601.

2

*see also* LR 56.1(B)(2)(a)(2) (N.D. Ga.).[2] Rule 601 makes clear that lack of competency cannot make witness testimony inadmissible.

Even if the Plaintiff's competency was relevant, there is nothing in the record that could even remotely support a finding that he was incompetent during his deposition. Mr. McClarn was specifically asked about the medication he is taking and whether "to the best of your belief, do you believe that you can give clear and correct answers today?" [Doc. 66-1] at p. 5, 8:19-22. In response, he responded "I think so." [Doc. 66-1] at p. 5, 8:23. The Plaintiff proceeded to testify for over two hours, never once giving any hint that his mental capacity was at issue. *See generally* [Doc. 66-1]. While the Plaintiff said he was tired, that certainly does not equate to incompetence (otherwise, countless witnesses every day could be declared incompetent). *See* [Doc. 66-1] at p. 8, 19:1-2; p. 21, 73:15; p. 23, 78:1-2. Notably, the Plaintiff has provided no support for his claim of incompetence other than the conclusory statement that he "was not competent to testify at his deposition due to his medical condition." As further proof that the Plaintiff's competency is not really at issue and the objections are a baseless effort to avoid summary judgment being granted, he admitted numerous facts in his response that are based solely on his deposition testimony. *See* [Doc. 78] at p. 29 (admitting facts 22, 24, and 25).

Since the objections are baseless, this Court should proceed to find that all of the facts objected to are deemed admitted. While the Plaintiff did say "Denied" before lodging each objection, this is insufficient to deny a material fact. *See* LBR 7056-1(a)(2) ("All material facts contained in the moving party's statement that are not specifically controverted in respondent's statement are deemed admitted."); LR 56.1(B)(2)(a)(2) (N.D. Ga.) (response must "directly refute[ ] the movant's fact with concise responses supported by specific citations to evidence

---

[2] The local rules of the district court apply in this Court. *See* LBR 1001-3; *see also United Cmty. Bank v. Harper (In re Harper)*, 489 B.R. 251, 244 n.7 (Bankr. N.D. Ga. 2013).

(including page or paragraph number.”). Absent a denial that is “supported by specific citations to evidence,” “[t]his Court will deem each of the movant’s facts as admitted . . . .” LR 56.1(B)(2)(a)(2) (N.D. Ga.). Since the Plaintiff failed to cite to any evidence to support his denials and his objections are baseless, this Court should find that all the Defendants’ material facts are deemed admitted.

**B.    THE PLAINTIFF CANNOT RECOVER BECAUSE HE HAS UNCLEAN HANDS**

The Defendants’ leading argument in their summary judgment brief was that the Plaintiff cannot recover for contempt because is has unclean hands due to his admitted failure to comply with the terms of the Consent Order. *See* [Doc. 67] at pp. 8-9. Specifically, the Consent Order required that the Plaintiff tender certified funds to the Defendants by February 10, 2022, but he did not tender the funds until February 24, 2020. *Id.*

Buried in the last section of his response, the Plaintiff makes the meritless argument that he “substantially complied with this Court’s Consent Order when he delivered a certified check in the amount specified in the Consent Order to his attorney on February 7, 2020” and that his attorney sent the funds to Defendants on February 21, 2020. [Doc. 77] at p. 21. Regardless of the reason that the Plaintiff’s former attorney sent the funds after the deadline set forth in the Consent Order, the Plaintiff certainly did not “substantially comply” with the Consent Order by giving the check to his attorney prior to the deadline. “In civil cases, attorneys act as agents of their clients, and a party cannot ‘avoid the consequences of the acts or omissions of this freely selected agent.’” *Patriot Fire Protection, Inc. v. Fuller (In re Fuller)*, 560 B.R. 876, 880 (Bankr. N.D. Ga. 2016) (quoting *Link v. Wabash R.R. Co.*, 370 U.S. 626, 634-35 (1962)) (citations omitted). Thus, the Plaintiff’s attorney’s decision to send the funds after the deadline is imputed to the Plaintiff.

4

The Plaintiff tried to argue that "[e]ven if [he] had never complied, such failure would not excuse Defendants from abiding by the Consent Order." [Doc. 77] at p. 22. However, while the Defendants contend that they did not violate the Consent Order, the law provides exactly the opposite of the Plaintiff's argument. "The 'unclean hands' doctrine 'closes the door of a court of equity[3] to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, **however improper may have been the behavior of the defendant**." *Trustees of the Buffalo Laborers' Pension Fund v. Accent Stripe*, No. 01-CV-76C, 2007 WL 1540267, at *5 (W.D.N.Y. May 24, 2007) (emphasis added) (quoting *Precision Instrument Mfg. Co. v. Automotive Maintenance Mach. Co.*, 342 U.S. 806, 814 (1945)). Since the Plaintiff failed to comply with the Consent Order and has unclean hands, this Court should foreclose his ability to obtain equitable relief.

## C.    THE DEFENDANTS DID NOT VIOLATE THE TERMS OF THE CONSENT ORDER

In the Defendants' Motion for Summary Judgment, they argued there can be no contempt because there has not been a violation of the Consent Order. *See* [Doc. 67] at pp. 9-10. Specifically, the Defendants argued

> The Plaintiff contends that the Defendants violated the Consent Order in the following ways:
>
> 1. Failure to provide accurate statements;
> 2. Failure to provide online access to tender the funds;
> 3. Failure to apply funds;
> 4. Seeking to collect erroneous amounts in excess of what was allowed by the Consent Order;
> 5. Failing to update Plaintiff's account to reflect the Consent Order.

---

[3] Civil contempt is purely equitable in nature. *See Taggart v. Lorenzen*, 139 S. Ct. 1795, 1801 (2019) ("[T]he bankruptcy statutes incorporate the traditional standards in equity practice for determining when a party may be held in civil contempt . . . .").

However, the Consent Order does not address account statements or the ability to tender the Certified Funds online. In fact, the Plaintiff testified that he knew he could not pay those funds online and "that was never my defense." With respect to issues 3, 4, and 5, the undisputed facts show that all funds were applied by May 4, 2020, and the loan was then current for February 1, 2020, as dictated by the Consent Order. Since the application of the funds in the amounts set forth in the Consent Order brought the loan current for the date set forth in the Consent Order, it follows that the Defendants did not seek to collect amounts in excess of what was allowed for by the Consent Order. Even though the funds were not fully applied until after this adversary was filed, the Consent Order did not set forth a deadline by which the funds had to have been applied.

As the Supreme Court stated, a party must "receive explicit notice of what conduct is outlawed" to be held in contempt and this Court cannot graft a deadline in the Consent Order where none existed. *See Taggart*, 139 S. Ct. at 1804. "Even if 'the defendants have violated the spirit of the . . . order, but unless the actual terms of the order are violated, an adjudication of contempt would be improper." *Ethicon, Inc. v. Randall*, No. 220CV13524BRMJBC, 2021 WL 4099752, at *3 (D.N.J. Sept. 9, 2021) (quoting *Nutrisystems.com, Inc. v. Easthaven, Ltd.*, Civ. A. No. 00-4835,2001 WL 484068, at *2 (ED. Pa. Mar. 30, 2001)) (also collecting cases). The order at issue is a *consent* order, and the Plaintiff could have easily insisted on a deadline being added to the order or simply refused to sign off on the consent order if the Defendants would not agree to such a deadline. Surely it cannot be said that there is "not a 'fair ground of doubt'" about when the funds were required to be applied so as not to be in violation of the Consent Order. *See id.* This Court should grant summary judgment in favor of the Defendants.

*Id.*

In his response and cross-motion, the Plaintiff essentially ignored this argument and seems to be trying to proceed on new/additional theories not found in his verified interrogatory responses. The Plaintiff claims that

there is no fair ground of doubt whether the Consent Order barred Defendants' conduct that has been ongoing since February of 2020. Specifically, the Defendants' failure to make Plaintiff current on his home mortgage, their refusal to accept his payments, their mis-classification of Plaintiff's loan as in bankruptcy and/or foreclosure, and the continued accrual of additional interest during the same period are violations of the Consent Order.

[Doc. 77] at p. 10.

6

The Plaintiff elaborated on each argument, and the Defendants will address them in turn, *infra*, but it should not even be necessary for this Court to address any theory other than those set forth in the Plaintiff's verified interrogatory responses, which is where the Plaintiff set forth the five reasons above for how he believes the Consent Order was violated. *See* [Doc. 37] at pp. 6-7. The interrogatory asked the Plaintiff to "[p]lease describe, in detail, how you contend that either Defendant violated the terms of the Consent Order." *Id.*

"A party's opinion and contentions *are* discoverable by interrogatory." *Banks v. Office of Senate Sergeant-at-Arms*, 222 F.R.D. 7, 13 (D.D.C. 2004) (citing Fed. R. Civ. P. 33(c) & advisory committee's note) (emphasis in original). "As to requests for opinions or contentions that call for the application of law to fact, they can be most useful in narrowing and sharpening the issues, which is a major purpose of discovery." *Id.* "More specifically, contention interrogatories may enable the propounding party to determine the proof required to rebut the responding party's position." *Johnson v. Kraft Foods N. Am., Inc.*, 236 F.R.D. 535, 544 (D. Kan. 2006) (citing *Steil v. Humana Kan. City, Inc.*, 197 F.R.D. 445, 447 (D. Kan. 2000).

The Defendants sought to narrow the issues from the Complaint by discovery, especially as all claims except one (for contempt) were dismissed before discovery started. The Plaintiff must be bound by his interrogatory responses, which he verified under oath and never supplemented to include the contentions set forth in his cross-motion for summary judgment. To allow him to expand the issues at this point in the case is unfair surprise and highly prejudicial to the Defendants. *See, e.g., Hochstein v. Microsoft Corp.*, No. 04-73071, 2009 WL 2498481, at *5-6 (E.D. Mich. Aug. 17, 2009) (granting motion in limine with respect to new theories never set forth in pleadings or interrogatory responses). In fact, Fed. R. Civ. P. 37(c)(1)[4] expressly

---

[4] **(c) Failure to Disclose, to Supplement an Earlier Response, or to Admit.**

precludes the Plaintiff from pursuing different theories from those set forth in response to the contention interrogatory "unless the failure was substantially justified or is harmless." There can be no argument here that the failure was substantially justified, especially as the Plaintiff had ample time to supplement his interrogatory responses between February 17, 2021 (when they were initially served) [Doc. 25] and the close of discovery on July 18, 2022. [Doc. 63]. It is also not harmless, as discovery has expired, and the Defendants can no longer ask the Plaintiff about his new theories. The Defendants intentionally sought written discovery before deposing the Plaintiff. This Court should not permit such gamesmanship by the Plaintiff and he should be held to his interrogatory response.

Additionally, many of the issues set out in the Plaintiff's brief concern actions that took place long after the Complaint was filed, such as insurance proceeds from April 2021 and a refinance loan application in 2022. *See* [Doc. 77] at pp. 14-17. These issues were obviously not raised in the Complaint and are not brought up at all in the interrogatory response detailed above. When a plaintiff attempts to raise issues that arose after the filing of the Complaint, "[Fed R. Civ. P.] 15(d) required Plaintiff to provide reasonable notice and move for leave to set out a new cause of action." *Iler Group, Inc. v. Discrete Wireless, Inc.*, 90 F. Supp. 3d 1329, 1344 (N.D. Ga. 2015).

---

**(1)** ***Failure to Disclose or Supplement.*** If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:

    **(A)** may order payment of the reasonable expenses, including attorney's fees, caused by the failure;

    **(B)** may inform the jury of the party's failure; and

    **(C)** may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).

> But "[a] district court shall freely give leave to amend 'when justice so requires.' " *Nance v. Ricoh Elecs., Inc.,* 381 Fed.Appx. 919, 923 (11th Cir.2010) (quoting *Laurie v. Ala. Court of Criminal Appeals,* 256 F.3d 1266, 1274 (11th Cir.2001)). " 'There must be a substantial reason to deny a motion to amend,' such as 'undue delay, bad faith, dilatory motive on the part of the movant, ... undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment.' " *Id.*

*Id.*

> Binding case law holds that "[p]rejudice and undue delay are inherent in an amendment asserted," as in this adversary proceeding, "after the close of discovery and after dispositive motions have been filed, briefed, and decided." *Campbell v. Emory Clinic,* 166 F.3d 1157, 1162 (11th Cir.1999) (citations omitted). Indeed, undue delay has been found when a motion to amend was filed on the last day of an extended discovery period, even before motions for summary judgment were filed. *Maynard v. Board of Regents,* 342 F.3d 1281, 1287 (11th Cir. 2003); *Keeler v. Florida Dept. of Health,* 324 fed. Appx. 850, 857–58 (11th Cir. 2009) (finding undue delay when discovery was closed and deadline to file motions to amend had passed). An amendment made after discovery has closed would have "produced more attempts at discovery, delayed disposition of the case, and likely prejudiced [the defendant]." *Id.*

*Cooper v. Bullock (In re Bullock)*, No. 08-43724-MGD, 2012 WL 4511266, at *3 (Bankr. N.D. Ga. Aug. 14, 2012).

Since the Plaintiff here has waited until after the close of discovery and after summary judgment was filed to assert new theories of contempt based on facts that arose after the Complaint was filed, it follows that there is undue delay and prejudice to the Defendants if this Court was to allow consideration of these issues. Since the Plaintiff has failed to comply with Rule 15(d), he should not be permitted to raise these issues now (among other reasons, such as his interrogatory response discussed above). Further, this Court should grant the Defendants' Motion for Summary Judgment on the basis that the Plaintiff has failed to show any violation of the Consent Order.

D.      **THE LOAN WAS PROPERLY BROUGHT CURRENT**

Although the Defendants contend that the Plaintiff is limited to seeking a finding of contempt based on the reasons set forth in his interrogatory responses and further contend there was no contempt based on those allegations, the Defendants will still respond to each individual argument in the Plaintiff's response/cross-motion. That first argument is that "[t]he Defendants violated the Consent Order when they failed to make Plaintiff's Loan current through February 1, 2020, in accordance with the Consent Order." [Doc. 77] at p. 11. The Plaintiff then goes on to assert that this a continuing issue that has not been resolved. *Id.* at p. 12. Neither is true.

This is a curious argument given that it is undisputed that the loan was brought current through February 1, 2020. *See* [Doc. 66] at p. 4, ¶ 14; [Doc. 78] at p. 29, ¶ 14. Although the funds were applied on May 5, 2020, *see id.*, the Consent Order did not provide a deadline by which the subject funds were to be applied. The Plaintiff then goes on to suggest that an alleged refusal to accept payments after February 1, 2020, somehow violated the Consent Order. *See* [Doc. 77] at pp. 11-12. However, the Consent Order clearly does not address any payments other than the amount required to bring the loan current for February 1, 2020.

E.      **ONLINE ACCESS HAS BEEN AVAILABLE SINCE MAY 2020**

The Plaintiff argues that the Consent Order was violated because he has never been given online account access since the Consent Order was entered. *See* [Doc. 77] at p. 12. This is an issue that should not even be before the Court because the Plaintiff did not assert it in his interrogatory responses (he only claimed he was not able to have online access to make payments and then recanted that in his deposition). In any event, the Defendants have shown through the Affidavit of LoanCare, filed with their Response to the Plaintiff's Statement of Material Facts, that he has had online access since May 2020. Thus, any issues that arose

10

between the entry of the Consent Order and May 2020 have been resolved, and as shown in the

Defendants' Motion for Summary Judgment, the Plaintiff has not shown that he is entitled to any

compensatory damages.

## F.    PAYMENTS AFTER FEBRUARY 2020 ARE NOT COVERED BY THE CONSENT ORDER

Next, the Plaintiff argues that "Defendants' rejections of Plaintiff's payment attempts

since February of 2020 are a violation of the Consent Order." [Doc. 77] at p. 12. However, the

Consent Order says no such thing about any payments after what was called for in the Consent

Order. Moreover, the Plaintiff admitted he has not been trying to make payments and instead,

"[d]ue to this matter pending with a disagreement over amount of funds due and proper

resolution of the complaint, Plaintiff has been putting aside funds to bring the loan current

pending resolution of the matter." [Doc. 24] at p. 2, ¶ 1; [Doc. 37] at p. 7, ¶ 15. Even if that was

not the case, the Plaintiff has presented no evidence to support his assertion that "[h]ad

Defendants complied with the Order, there should have been no restrictions on [his] account and

[he] would have been able to pay all sums as they became due." [Doc. 77] at p. 13. The

Plaintiff's argument to this effect should be rejected.

## G.    ACCRUED INTEREST IS NOT COVERED BY THE CONSENT ORDER

The Plaintiff's next argument involves an alleged issue that is again not covered by the

Consent Order. Here, he argues that the assessment of interest on his loan violates the term of the

Consent Order that provides

> That Respondent has not and will not assess Debtor's loan any additional interest
> due to Debtor tendering mortgage payments later than their respective due dates,
> or in other words, interest charged on the account will be the same as if all
> payments had been tendered timely.

[Bk. Doc. 85]; *see also* [Doc. 77] at p. 13. The Plaintiff says that "Defendants' assessment of interest on unpaid amounts during the period which it refused Plaintiff's payments constitutes violation of the Consent Order." [Doc. 77] at pp. 13-14. This argument suffers from numerous issues.

First, the language that the Plaintiff relies on from the Consent Order was not actually ordered by the Court, but was simply a recital of the parties' agreement. Second, even if it was part of the order, there is no indication that this restriction on interest applies to anything other than the late payments addressed by the Consent Order (and the Plaintiff never argues that the interest at issue was assessed based on that bundle of payments). In fact, the Plaintiff recognizes this fact, but argues that the provision "should apply to all payments that would have otherwise become due since entry of the Consent Order until such time that Defendants actually comply with the Order." [Doc. 77] at p. 14. The Plaintiff cannot make up terms to impart into the Consent Order or have a contempt citation issued based on what he thinks should be fair.

A party must "receive explicit notice of what conduct is outlawed" to be held in contempt. *See Taggart v. Lorenzen*, 139 S. Ct. 1795, 1804 (2019). "Even if 'the defendants have violated the spirit of the . . . order, but unless the actual terms of the order are violated, an adjudication of contempt would be improper." *Ethicon, Inc. v. Randall*, No. 220CV13524BRMJBC, 2021 WL 4099752, at *3 (D.N.J. Sept. 9, 2021) (quoting *Nutrisystems.com, Inc. v. Easthaven, Ltd.*, Civ. A. No. 00-4835,2001 WL 484068, at *2 (ED. Pa. Mar. 30, 2001)) (also collecting cases). Since interest that accrued after January 1, 2020 (the date of the last payment made) is not covered by the Consent Order, the Plaintiff cannot have summary judgment granted to him or the Defendants' motion denied on this basis.

## H.  THE INSURANCE PROCEEDS ARE NOT COVERED BY THE CONSENT ORDER

The Plaintiff continues his quest to argue that every single grievance with the Defendants is covered by the Consent Order by raising an argument about insurance proceeds from *April 2021* – one year after this adversary was filed. *See* [Doc. 77] at pp. 14-15. At that time, the Plaintiff allegedly had an insurance claim paid for damage to the subject property in the amount of $15,054.53 that he claims was "improperly seized" by the Defendants and that they "continue to withhold the Insurance Proceeds." *Id.* at p. 14. As to how this could possibly violate the terms of the Consent Order, the Plaintiff says that it violates the "provision that [his] account be made current and the provision that escrow funds be applied to Plaintiff's loan." *Id.* at p. 15. The Plaintiff goes on to say that

> [g]iven Defendants' other actions with regard to Plaintiff, it seems the seizure is due to Defendants' ongoing misclassification of Plaintiff's account (as in 'foreclosure' or 'bankruptcy'). Put another way, had Defendants brought Mr. McClarn's current in accordance with the Consent Order, the Defendants would have no reason to seize his Insurance Proceeds.

*Id.*

This is a baseless argument. The Plaintiff has introduced absolutely no evidence to support his conclusory assertion that the insurance proceeds are being held because the loan was not brought current, and even if he had, the Consent Order does not – and could not, given the timing – contemplate handing of the insurance proceeds.[5] The Supreme Court has made clear that a party must "receive explicit notice of what conduct is outlawed" to be held in contempt. *See Taggart*, 139 S. Ct. at 1804. The Plaintiff does not even attempt to argue that the Consent

---

[5] The Plaintiff even says "it *seems* the seizure is due to Defendants' ongoing misclassification of Plaintiff's account . . . ." *Id.* (emphasis added). The use of the word *seems* shows that the Plaintiff has no evidence to support his argument, otherwise he would *know* the answer and would not be guessing.

gave explicit notice about the insurance proceeds, especially as they did not exist when the Consent Order was entered. Moreover, the Plaintiff's argument does not even make sense because the loan was brought due for February 1, 2020 – pursuant to the terms of the Consent Order – on May 5, 2020 – eleven months before the insurance proceeds even existed. This Court should reject the Plaintiff's attempts to have every grievance with the Defendants shoehorned into a violation of the Consent Order.

I.     **THE PLAINTIFF'S REFINANCING APPLICATION IS NOT COVERED BY THE CONSENT ORDER**

At this point in the Plaintiff's brief, his arguments are becoming desperate and nearing the point of being asserted in bad faith. The Plaintiff claims that he applied for a refinance loan with the Defendants in May 2020 and never got a response, and therefore this is a violation of the Consent Order because "Defendants have failed to bring [him] current and treat him like any other borrower who is similarly positioned." [Doc. 77] at p. 16.

To begin with, the Plaintiff testified at his deposition that the refinance application was submitted in November 2019, not May 2020, as he now claims in his affidavit. *See* [Doc. 66-1] at p. 13, 41:7-11, 42:1-5. The Eleventh Circuit refers to some affidavits that contradict prior deposition testimony as a "sham" and this Court can "disregard an affidavit that 'contradicts, without explanation, previously given *clear* testimony.' [cit.]. The earlier deposition testimony must consist of 'clear answers to unambiguous questions which negate the existence of any genuine issue of material fact.'" *Lane v. Celotex Corp.*, 782 F.2d 1526, 1532 (11th Cir. 1986) (quoting *Van T. Junkins & Assocs., Inc. v. U.S. Indus., Inc.*, 736 F.2d 656, 657 (11th Cir. 1984)).

Here, the Plaintiff was asked "when was the last time you applied for any sort of loan modification?" [Doc. 66-1] at p. 13, 41:7-8. He answered, "I applied in November" and when asked the year, responded with "2019." *Id.* at 41:9-11. He was then asked, in regard to the

14

November 2019 application, "are you referring to a refinance loan or to a loan modification?" *Id.*
at p. 14, 42:1-3. He then answered, "No, it's a refinance. It wasn't a modification, it's a
refinance." *Id.* at 42:4-5. Thus, he provided "clear answers to unambiguous questions" and
cannot try to create a question of fact by changing the date in his affidavit without any
explanation. *See Lane*, 782 F.2d at 1532. There is no explanation found anywhere in the
affidavit. *See* [Doc. 76] at p. 9, ¶ 34. This is perhaps because the affidavit is an outright sham and
is false, given that Citizens has provided its own affidavit showing that it responded to the 2019
refinance application with a letter sent to the Plaintiff on January 6, 2020, nearly one month
before the Consent Order was entered. *See* Ex. A to Defendants' Response to Plaintiff's
Statement of Material Facts, filed herewith.

But even if an explanation was in the affidavit and Citizens did not provide its own
affidavit on the subject, it would still be insufficient to create a question of fact or to establish a
violation of the Consent Order, and the Plaintiff does not even make a serious effort to show that
it does (his argument section is three sentences long). The Consent Order says nothing about
refinancing applications, and it would not make sense if it did. A refinance loan is a *new* loan on
completely different terms that pays off a prior loan with its proceeds. The Consent Order surely
does not cover a hypothetical new loan. Additionally, the Plaintiff is again making an assertion
without any evidence, claiming that the Defendants are not "treat[ing] him like any other
borrower who is similarly positioned." [Doc. 77] at p. 16. This Court should find that there is no
violation of the Consent Order based on any alleged failure to respond to a refinance application.

## J.      PAYOFF STATEMENTS ARE NOT COVERED BY THE CONSENT ORDER

Next, the Plaintiff says that the Defendants violated the terms of the Consent Order by
failing to provide him with payoff statements (or, at least, accurate ones) in 2022 – over two

years after the Consent Order was entered. – so that he could apply for a refinance loan with a different lender. *See* [Doc. 77] at pp. 16-17. It appears that the Plaintiff's specific issue is that he claims the insurance proceeds are not accurately reflected. *Id.* The Plaintiff says the refinance application was rejected but provided no evidence of that. *See* [Doc. 76] at pp. 9-10, ¶¶ 35-37. He further says that "Defendants' actions in failing to provide an accurate payoff statement constitute a violation of the Consent Order's provision that the Plaintiff be made current and that the escrow funds be applied. Defendants are under an obligation [to] bring [his] account current which means to treat [him] as any other similarly situated borrower." [Doc. 77] at p. 17. This argument is nonsensical and unsupported by any evidence.

The Plaintiff simply appears to be trying to throw every grievance at the wall to see if anything sticks. The Consent Order says nothing about payoff statements. *Taggart* makes clear that there can be finding of contempt without such explicit warning. *See* 139 S. Ct. at 1804. Moreover, by 2022, the loan was due and owing for February 1, 2020, just as called for in the Consent Order. This includes application of the escrow funds at issue in the Consent Order, since the Consent Order stated that "the post-petition arrearage through January 1, 2020 is $19,899.80. Once Debtor tenders certified funds to Respondent in the amount of $15,794.24 and Respondent applies the excess escrow balance of $4,105.56, Debtor will be current through January 1, 2020 and due for the February 1, 2020 payment." [Bk. Doc. 85]. Therefore, the excess escrow balance had to be applied for the loan to be current through January 1, 2020. Thus, the Plaintiff cannot claim that "Defendants' actions in failing to provide an accurate payoff statement constitute a violation of the Consent Order's provision that the Plaintiff be made current and that the escrow funds be applied." Notably, the Plaintiff never disputes that the facts showing that the loan was is due for February 1, 2020, and instead focuses on the insurance proceeds from April 2021, which

should be completely outside this Court's jurisdiction. *See, e.g.,* [Doc. 17] at p. 2 (dismissing post-discharge claims not arising under or in title 11 for lack of subject matter jurisdiction). This Court should see the Plaintiff's argument about the payoff statements for what it is – a meritless attempt to muddy the waters to stave off summary judgment in favor of the Defendants.

## K.    THE PLAINTIFF HAS NO EVIDENCE THAT ANY ACTIONS WERE INTENTIONAL

In his next argument section, the Plaintiff tries to argue that "Defendants' failure to comply with this Court's Order has been intentional and with full knowledge of their obligations under the Consent Order." [Doc. 77] at p. 17. This argument is not only unsupported by any evidence (the Plaintiff cites to nothing in support of his bare contentions) but is completely irrelevant. In a civil contempt proceeding, "the question for decision is not one of intent, but simply whether respondents have complied with the court's order." *Nat'l Labor Relations Bd. v. Lawley*, 182 F.2d 798, 800 (5th Cir. 1950); *see also In re Alamo*, 239 B.R. 623, 624-25 (Bankr. M.D. Fla. 1999) (citations omitted) ("Imposition of civil contempt does not depend on the intent of the defendant . . . ."). Thus, the Plaintiff's entire argument section on intent should be disregarded.

## L.    THE PLAINTIFF IS ESTOPPED FROM PURSUING ANY SANCTIONS OR DAMAGES APART FROM WHAT HE HAS ALREADY ASKED FOR

The final argument section to be addressed is the Plaintiff's contentions regarding damages/sanctions. This section argues that the Plaintiff should be awarded coercive sanctions, non-coercive sanctions in the form of attorneys' fees, interest charges, and the amount of the insurance proceeds, and punitive damages. Initially, the purpose of this section is unclear. It does not respond to the damages arguments found in the Defendants' Motion for Summary Judgment, and the opening section of the brief explicitly states that the Plaintiff is moving for summary

judgment only as to liability and wants to address damages at a later stage. *See* [Doc. 77] at pp. 1-2; *see also* [Doc. 76] at p. 1. Perhaps the Plaintiff is again trying to muddy the waters just to try to stave off summary judgment in favor of the Defendants rather than offering any legitimate arguments.

In any event, this Court should find that the Plaintiff is estopped from seeking any damages outside of what he claimed in his interrogatory responses. As set forth in the Defendants' Statement of Material Facts, [Doc. 66], the Plaintiff is seeking the following damages here:

- Interest incurred from 2019 to present due to not being able to modify or refinance the loan due to having dispute inaccurate accounting and other issues that prevented the bankruptcy from closing: $14,161.96 (30 months of 6.50% vs. 2.7%)
- Lost promotion opportunity ($20,000 annual): $21,667
- Medical costs: $63,832.26
- Pain and suffering, anxiety, sleep and memory problems: $50,000.00
- Punitive damages
- Attorney fees/costs: $4,850 ($200/hourly)

[Doc. 66] at pp. 4-5, ¶ 17 (citing [Doc. 38] at pp. 3-4).

The Defendants deposed the Plaintiff and asked extensive questions about these claimed damages and moved for summary judgment largely on the basis that the Plaintiff has not provided any evidence that would allow him to recover these claimed damages. Fed. R. Civ. P. 37(c)(1) precludes the Plaintiff from seeking any damages outside of those claimed in his interrogatory response, as the failure to assert the damages he is now seeking is certainly not "substantially justified or is harmless." This includes theories and calculations of damages sought in interrogatories. *See Mee Indus. v. Dow Chem. Co.*, 508 F.3d 1202, 1221 (11th Cir. 2010). Thus, this Court should find that the Plaintiff is limited to seeking the damages sought in his interrogatory responses.

18

*1.    Coercive Sanctions are not available*

The Plaintiff first argues in his damages section that the Court should award coercive sanctions. This argument is inappropriate because the Plaintiff is not moving for summary judgment on damages and is precluded from seeking coercive sanctions, as he did not set them out in his interrogatory responses. Even if he could seek them, they would be improper here. Coercive sanctions for civil contempt can only be awarded if the court order at issue has not yet been complied with, as coercive sanctions can be "avoid[ed] by compliance with the court's adjudication." *Fowler v. Huber*, 437 F.2d 1117, 1118 (5th Cir. 1971). As shown herein and in the Defendants' Motion for Summary Judgment, there are no remaining violations of the Consent Order that the Plaintiff has appropriately complained about. The funds were applied, the loan brought current through January 1, 2020 (due for February 1, 2020), the Plaintiff was never to be given access to his internet account for the purpose of making the payment called for in the Consent Order, and has had access to his online account portal since May 2020. The Plaintiff's request for coercive sanctions should be denied.

*2.    The Plaintiff is not entitled to any compensatory damages*

The Plaintiff contends he is entitled to compensatory damages that "include but are not limited to: interest assessed, the escrow funds withheld, and attorney's fee costs." [Doc. 77] at p. 20. Only attorney's fees and interest were set out in the Plaintiff's interrogatory responses as damages he is seeking. Notably, the Plaintiff did not respond to any of the Defendants' arguments concerning damages from their Motion for Summary Judgment. For that reason alone, this Court should find that the Defendant is not entitled to any compensatory damages.

With respect to attorney's fees, the Defendants showed that the Plaintiff "never produced any evidence to substantiate that he actually incurred these fees and costs or what he actually

paid. When asked for evidence, the Plaintiff produced nothing." [Doc. 67] at p. 15. The Plaintiff

even admitted in his Response to the Defendants' Statement of Material Facts that he has not

produced any evidence regarding fees. *See* [Doc. 78] at p. 31, ¶ 40. However, he did say that

"Plaintiff's Affidavit . . . substantiates attorney fees incurred." *Id.*   That affidavit says the

following:

> I have incurred at least $18,500 in attorneys' fees bringing this action.
> Specifically, I have been billed $18,500 by attorneys to prosecute this adversary
> proceeding in an effort to enforce the Consent Order. True and correct copies of
> the invoices from my counsel and prior counsels are available for use at trial.

[Doc. 78] at p. 11, ¶ 38.

This argument makes a mockery of the discovery and summary judgment process. First,

the Plaintiff did not provide any evidence of his attorney's fees when asked to produce

documents during discovery. *See* [Doc. 37] at p. 8, No. 2; [Doc. 78] at p. 31, ¶ 40. Then, when

this was pointed out on summary judgment, the Plaintiff says the Defendants are right, and that

he will just produce the evidence later. "When [a] defendant point[s] to a lack of evidence of [an

issue], it [is] up to the plaintiff to 'put up or shut up.'" *Steifel Lab'ys, Inc. v. Brookstone Pharms.,*

*L.L.C.*, No. 1:08-CV-3773-CAP, 2012 WL 12888436, at *11 (N.D. Ga. July 24, 2012), *aff'd*, 535

F. App'x 774 (11th Cir. 2013) (citing *Arnett v. Webster*, 658 F.3d 742, 760 (7th Cir. 2011)).

Since the Plaintiff has not put up any evidence of his attorney's fees, he must now shut up about

them. He does not get any further opportunity to put up the evidence and the Court should find

that the Defendants are entitled to summary judgment on the Plaintiff's claim of attorney's fees.

With respect to interest assessed, the Plaintiff only claimed to be seeking interest "due to

not being able to modify or refinance the loan due to having dispute inaccurate accounting and

other issues that prevented the bankruptcy from closing." [Doc. 66] at pp. 4-5, ¶ 17 (citing [Doc.

38] at pp. 3-4). The Defendants moved for summary judgment on this claim of damages because

"[t]he issues in the instant case arose between February and May 2020. Thus, the alleged issues in this case clearly did not have an impact on the Plaintiff's ability to qualify for a refinance loan or loan modification, and these are not recoverable damages." [Doc. 67] at p. 12. The Plaintiff did not respond to this argument, and instead now seeks "at least $22,122.63 in interest which Defendants assessed during the period when Defendants have rejected Plaintiff's payments." [Doc. 77] at p. 18. As detailed above, this interest, which all accrued after January 1, 2020, is not at all related to the Consent Order and therefore cannot form the basis for an award of damages. Moreover, the Plaintiff has admitted that he is not even trying to make payments during the pendency of this adversary, so any accrued interest is entirely due to his own actions.

Lastly, the insurance proceeds were not set out in the Plaintiff's interrogatory responses and are not at all covered by the Consent Order. *See* Section G, *supra*. Therefore, they absolutely cannot form the basis for recoverable damages and the Plaintiff has failed to show any evidence that could support any award of compensatory damages. This Court should grant summary judgment to the Defendants on the issue of compensatory damages.

3.     *The Plaintiff is not entitled to an award of punitive damages*

Lastly, the Plaintiff claims that he is entitled to punitive damages. Since the Plaintiff has failed to make a case for compensatory damages, he cannot obtain any punitive damages. *See SE Prop. Holdings, LLC v. Judkins*, 822 F. App'x 929, 936-37 (11th Cir. 2020); *see also Anderson v. Brezeale*, 507 F.2d 929, 931 (5th Cir. 1975) (noting "the general rule that punitive damages are not recoverable absent proof of actual damages."). In any event, punitive damages can only be awarded in a civil contempt action where there is "some showing of reckless or callous disregard for the law or rights of others." *In re McLean*, 794 F.3d 1313, 1325–26 (citations omitted). A court must have evidence of the defendant's *mens rea* to make this determination.

21

*See id*. The Defendants argued in their Motion for Summary Judgment that the Plaintiff has failed to produce any evidence to show that this standard is satisfied, *see* [Doc. 67] at p. 15, and the Plaintiff did not respond to this argument. Moreover, he did not produce any evidence in his motion or response as to this standard. The Plaintiff's argument consists of only conclusory statements about his alleged efforts to fix the claimed issues, but nowhere speaks to the state of mind of the Defendants. This is fatal to his request for punitive damages and this Court should award summary judgment to the Defendants on this issue.

## CONCLUSION

Based on the foregoing, the Defendants respectfully request that this Court grant their Motion for Summary Judgment and deny the Plaintiff's Cross-Motion for Summary Judgment.

Respectfully submitted, this 28th day of October, 2022.

*/s/ Bret J. Chaness*
BRET J. CHANESS (GA Bar No. 720572)
**RUBIN LUBLIN, LLC**
3140 Avalon Ridge Place, Suite 100
Peachtree Corners, GA 30071
(678) 281-2730 (Telephone)
(404) 921-9016 (Facsimile)
bchaness@rlselaw.com

*Attorney for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on the 28th day of October, 2022, I filed the within and foregoing via CM/ECF, which will serve electronic notice on all parties.

*/s/ Bret J. Chaness*
BRET J. CHANESS (GA Bar No. 720572)