UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE:<br><br>ANTHONY CARVER MCCLARN,<br><br>    Debtor. | CHAPTER 13<br><br>CASE NO. 14-75160-sms |
| ANTHONY CARVER MCCLARN,<br><br>    Plaintiff,<br>v.<br><br>CITIZENS TRUST BANK and LOANCARE LLC,<br><br>    Defendants. | ADVERSARY PROCEEDING<br><br>NO. 20-06070-sms |

**PLAINTIFF'S REPLY BRIEF IN SUPPORT OF ITS CROSS MOTION FOR
PARTIAL SUMMARY JUDGMENT**

COMES NOW, Anthony Carver McClarn ("Mr. McClarn") and files this *Plaintiff's Reply Brief in Support of its Cross Motion for Partial Summary Judgment*, and respectfully shows the Court as follows:

Procedural Posture

Mr. McClarn filed this adversary proceeding on April 27, 2020 (Doc. No. 1). In the initial Complaint, Mr. McClarn alleged 7 counts. On August 31, 2020, Defendants filed a motion for judgment on the pleadings and a motion to dismiss (Doc. No 13). On December 3, 2020, the Court entered its order on such motion (Doc. No. 17). Pursuant to such order, the Court dismissed six of Mr. McClarn's seven counts. One count now remains in which Mr. McClarn alleges that Defendant is liable for damages for its contempt based upon violations of this Court's Consent Order dated January 30, 2020 (Doc. No. 85 in the main bankruptcy case, Case No. 14-75160) (the "Consent Order").

On August 17, 2022, Defendants filed a motion for summary judgment on Mr. McClarn's final count (count VII) (Doc. No. 65) (the "MSJ"). 4. On September 29, 2022, Mr. McClarn filed his

1

cross-motion for partial summary judgment (Doc. No. 76) (the "Cross MSJ"), his *Brief in Opposition to Summary Judgment and in Support of Plaintiff's Cross Motion for Partial Summary Judgment* (Doc. No. 77) ("Plaintiff's Brief"), and his response in opposition to Defendants' MSJ (Doc. No. 78) ("Plaintiff's Response"). On October 28, 2022, Defendants filed their reply to Plaintiff's Response and response to the Cross MSJ (Doc. No. 84) ("Defendants' Response"). Mr. McClarn submits this reply brief to Defendants' Response and in support of the Cross MSJ.

ARGUMENT AND CITATION OF AUTHORITY

**A. The Defendants Wrongfully Assert that Mr. McClarn Has No Basis to Deny the Material Facts Set Forth by the Defendants.**

Largely, Mr. McClarn accepts the admission of Defendants' Statement of Material Facts. Specifically, Mr. McClarn only objects to and denies the substance of Defendants' Statement of Material Facts as stated in Paragraph 17 and Paragraph 18, both of which Mr. McClarn has specifically refuted throughout this litigation.

Mr. McClarn now restates his denial of Paragraph 17 of Defendants' Statement of Material Facts. That portion of Defendant's submission was a summary of the theories of Damages disclosed by Mr. McClarn in his initial complaint and in his discovery responses. First, that statement by the Defendants does not constitute a material fact that goes to the resolution of this dispute. Rather, that portion of Defendants' submission represents a summary of the theories of damages initially put forward by Mr. McClarn. (Defendants' Statement of Material Facts, Doc. No. 66, "Defendants' SOMF" at P. 4, ¶17).

Additionally, Mr. McClarn does in fact contest the statements made in Paragraph 17 of Defendants' SOMF through his responsive pleadings. Specifically, Mr. McClarn has amended his theories for damages, as pled in Mr. McClarn's latest Brief. (*See Brief in Opposition to Summary Judgment and in Support of Plaintiff's Cross Motion for Summary Judgment*, Doc. No. 77) ("Plaintiff's Brief"). Defendants have been made aware of Mr. McClarn's amended theories for

2

damages through his pleadings. For the reasons stated above, Paragraph 17 of the Defendants' Statement of Material Facts should not be deemed to be admitted by Plaintiff.

With reference to the facts alleged in Paragraph 18 of Defendants' SOMF, Mr. McClarn was under the influence of medication at the time of his deposition. (*Deposition of Anthony C. McClarn,* Doc. No.66-1 at p. 8) ("McClarn Dep."). Specifically, Mr. McClarn testified at his deposition that he was under medication. (*McClarn Dep*. at 8:5-10). The interchange at the deposition was as follows: Defendants' counsel asked Mr. McClarn: "Are you taking any medication today that could impair your ability to give clear and correct answers?" to which Mr. McClarn replied, "Well, I am on pain medication and I am taking chemo follow up medicine, so I cannot answer that and say yes." (McClarn Dep. at 8: 5-10). After a brief interruption of the connection that supported the Zoom deposition, Defendants' counsel clarified: "you were just talking about the medications you were on, to the best of your belief do you believe that you can give clear and correct answers today?" and Mr. McClarn replied: "I think so." (McClarn Dep. at 8:19-23). Counsel for the Defendants did not inquire into the medication that Mr. McClarn had taken (McClarn Dep. at 8). In fact, Mr. McClarn was under the influence of opioids at the time of his deposition.

Mr. McClarn asks the Court to accept Mr. McClarn's denial of Paragraph 18 of the Defendants' SOMF, which is based on statements by Mr. McClarn in his deposition. Under medication, tired, ill, and unrepresented during his deposition in this matter, Mr. McClarn mistakenly represented to Defendants that he last applied to refinance his loan in 2019 (McClarn Depo. at 41:7-11, 42:20-22).  Mr. McClarn's most recent refinancing application was actually submitted in May of 2020. Mr. McClarn now wishes to explicitly clarify the record, and points to his pleadings. Mr. McClarn's Affidavit expressly contradicts the Defendants' contention as stated in Defendants' SOMF, ¶ 18. (McClarn Affidavit at p. 7, ¶ 34; Plaintiff's Statement of Material Facts at p. 6, ¶ 32). Mr. McClarn now asks that the Court forgive the lapse in his memory during his deposition; that the Court accept Mr. McClarn's denial of Paragraph 18 of Defendants' SOMF.

The record should reflect Mr. McClarn's clarification as to the date of his last refinancing application. Mr. McClarn admits the rest of the facts included in Defendants' SOMF.

### B. Mr. McClarn's Recovery is Not Barred by the Doctrine of Unclean Hands.

Under the equitable doctrine of unclean hands, a court may bar a party from succeeding based on that party's own volitional conduct. *Trustee of Buffalo Laborers Pension Fund v. Accent Stripe*, No. 01-CV-76C, 2007 LEXIS 38035, at *16, quoting *Precision Instrument Mfg. Co. v. Auto Maint. Mach. Co.*, 324 U.S. 806 (1945). The Supreme Court in *Precision Instrument* went further to clarify that "equity does not demand that its suitors shall have led blameless lives," but that "it does require that they shall have acted fairly and without fraud or deceit as to the controversy in issue." 324 U.S. 806, 814-815 (citing *Keystone Driller Co. v. General Excavator Co.*, 290 U.S. 240, 245 (1933); *Johnson v. Yellow Cab Co.*, 321 U.S. 383, 387 (1944); 2 Pomeroy Equity Jurisprudence (5th Ed.) §§ 379-399)). The doctrine of unclean hands "closes the doors of equity to one tainted with inequitableness or bad faith relative to the matter which he seeks relief, however improper may have been the behavior of the Defendant." *Id*. at 814-815. In the current instance, there are no facts that suggest Mr. McClarn has acted in bad faith or that his actions were tainted by inequity or unfairness.

Further, even if the doctrine of unclean hands does apply to Mr. McClarn's delay of tender in this matter, it is within the discretion of the court to apply equitable defenses as it deems appropriate and just. *Id*. at 815. Specifically, the doctrine "necessarily gives wide range to the equity court's use of discretion in refusing to aid the unclean litigant," and courts exercising that discretion are "not bound by formula or restrained by any limitation." *Id*.

Defendants' only allegation on this issue is that Mr. McClarn, through his counsel at the time, temporarily delayed the tender of funds, as required by the Consent Order (Defendants' Brief at Doc. No. 84, p. 4). All the evidence on this issue shows that Mr. McClarn delayed the tender not to divest the Defendants of funds properly owed to them, but to ensure that he could oversee that said funds were properly applied to his account. (McClarn Affidavit at ¶ 15). These

4

facts do not support a finding that Mr. McClarn acted in bad faith. In fact, the evidence shows that Mr. McClarn obtained the certified funds from his bank prior to the due date. (McClarn Affidavit at ¶ 14). Moreover, the evidence merely demonstrates Mr. McClarn's vigilance and caution over the application of funds. Mr. McClarn's concerns over tendering funds were justified based on Defendants' continued refusal to accept payments from Mr. McClarn, apply those funds it held to Mr. McClarn's account, or grant Mr. McClarn access to his online account. (McClarn Affidavit at ¶¶ 20, 24, 33).

### C. The Defendants Have Continued to Violate this Court's Consent Order Which Has Caused Mr. McClarn to Allege Additional Facts and Theories Which Were Not Included in His Initial Complaint.

Defendants assert that they are not obligated to contest any theory not set forth in Mr. McClarn's interrogatories. Defendants concede that Mr. McClarn may rely upon facts and/or theories where the failure to include them in discovery responses was substantially justified, or if the assertion of the new theory would be harmless to the respondent. *See Defendants' Brief* (Doc. No. 84 at p. 5); *see also* Fed. R. Civ. P. 37 (c)(1) as made applicable by F.R.B.P. 7037. Mr. McClarn's theories are not even barred under the standard asserted by the Defendants. To the extent Mr. McClarn includes "new" facts and theories in Plaintiff's Brief, it is both substantially justified and harmless to the Defendants.

First, any failure to include those facts and theories is substantially justified. Defendants' misconduct and the ramifications of it have continued not only since the entry of the Consent Order, but also after the filing of Mr. McClarn's initial Complaint. (McClarn Affidavit at ¶¶ 20, 24, 27, 32) Therefore, Mr. McClarn was not able to allege all of Defendants' future violations in his initial pleadings or in his initial responses to the Defendants' discovery requests.[1] Accordingly, any such failure was "substantially justified." *Id*.

---

[1] Mr. McClarn has a right to amend his discovery responses, and reserves the right to do so. Fed. R. Civ. P. 26 (e)(1)(B) as made applicable by F.R.B.P. 7026. Mr. McClarn has a duty to amend his discovery responses "if the additional or corrective information has not otherwise been made known or known to the other parties during the discovery process or in writing." (emphasis added)

5

Second, any inclusion of additional facts and theories in Plaintiff's Brief does not create harm to the Defendants. Mr. McClarn bases each of the new theories alleged in his brief on the Defendants' own conduct. Therefore, the only parties that have knowledge of those facts and theories are the parties to this suit. Consequently, there is no need for the Defendants to pursue additional third-party discovery.

Defendants will not be unduly harmed by investigating facts already within their possession. Furthermore, Mr. McClarn hereby consents to submit to any further discovery which the Defendants seek from him so that they may investigate any additional facts presented.

Finally, all facts alleged in Plaintiff's Brief are consistent with the cause of action for contempt set forth in the initial complaint. The Consent Order governed the parties' future behavior. Though Defendants' immediate violations of the order were the only ones asserted in the initial Complaint, the violations that have occurred since similarly fit into Mr. McClarn's claim for Contempt. Therefore, because Defendants' conduct falls under the cause of action set forth initially in the Complaint, those actions are relevant to the claim set forth in this adversary proceeding.[2]

In summary, to the extent that Plaintiff's Brief included additional facts and theories beyond those pled in his initial Complaint and discovery responses, the use of such facts is both substantially justified and harmless because those events had not yet occurred at the time. Finally, Mr. McClarn's willingness to submit to further discovery, along with the nature of the "new"

---

*Id*. Here, Mr. McClarn has made the disclosures in his pleadings and intends to submit supplemental discovery responses shortly following the filing of this brief.

[2] Shortly following the filing of this brief, Mr. McClarn plans to file a "Motion for Leave to Amend Complaint." Pursuant to said motion, Mr. McClarn seeks to clarify the record as to the Defendants' actions that have violated this Court's Consent Order. Justice dictates that that amendment should be allowed, where that amendment would aid in presenting the merits and when any objecting party fails to shows that prejudice would result from that amendment. See Fed. R. Civ. P. 15 (b) (1) which dictates that courts should freely permit amendments even during trial, when doing so would aid the parties in reaching the merits of the case and would not result in prejudice to the other party.

information being included, cures any potential harm to Defendants in having to conduct additional investigation.

### D. Defendants Erroneously Assert that They Brought the Loan Current, and a Genuine Issue of Disputed Fact Exists on this Issue.

Defendants assert that the Consent Order did not expressly set a date requiring Defendants to apply the funds. Therefore, the Defendants assert that the Defendants could not have violated the order because they eventually applied the funds due. However, Defendants admit to the delay in the application of funds. (Defendants' Brief at Doc No. 84, p. 8, ¶ 2). This caused the Defendants to classify Mr. McClarn's loan account as delinquent in their system. That delinquency led the Defendants to reject Mr. McClarn's scheduled payments since February 2020. (McClarn Affidavit at ¶. 20-23). Therefore, even though the Defendants may have eventually applied the funds that were due to Mr. McClarn's account in February 2020, Defendants did not make Mr. McClarn current so that he could access his account and start paying down the loan.

Defendants are correct that the Consent Order does not contemplate payments due after the lump sum payment of the arrearage amount. However, the Consent Order does require that Mr. McClarn's account be made current. (Consent Order at Case 14-75160-sms, Doc. No. 78, p. 2, ¶2). Further, though Defendants did eventually apply those funds which made Mr. McClarn current through February 2020, the rejection of Mr. McClarn's payments for the years since then evidences the fact that Defendants' actions constitute a violation of the Consent Order's directive to bring Mr. McClarn current. The delay in making Mr. McClarn's account current was a violation of the Consent Order and ultimately led to Mr. McClarn being barred from accessing his account or making payments for over two years. (McClarn Affidavit at ¶¶ 20, 22, 23).

7

**E. Mr. McClarn Has Not Been Granted Proper Access to His Online Account.**

Defendants contend that Mr. McClarn has had account access since May 2020.[3] (Defendants' Brief at p. 10-11: Doc. No. 84; Affidavit of Darcie Lyle at ¶ 6: Doc. No. 84-3). Defendants' contentions directly conflict with Mr. McClarn's testimony that he has not been granted access to his online account. (McClarn Affidavit at ¶ 24). The testimony in the affidavits is irreconcilable. This is a genuine dispute as to a material fact that may preclude a finding for either party on summary judgment.

Mr. McClarn has testified that he has not been granted account access and that he still cannot access his online account.[4] Mr. McClarn has reached out to the Defendants (through Defendants' representatives and through counsel), but the issue of Mr. McClarn's online access has never been resolved. This is a violation of the Consent Order. The Defendants should be able to grant Mr. McClarn access. Their failure to do so only evidences their non-compliance with this Court's Order.

**F. The Consent Order Governs Defendants' Rejection of Mr. McClarn's Payment Attempts.**

The Consent Order is applicable to all conduct which violates its provisions and not just the conduct that occurred before that Order. Defendants' continued rejection of Mr. McClarn's payment attempts is a result of Defendants' failure to bring the account current. Therefore, those

---

[3] Defendant Citizens Trust Bank asserts that it is not responsible for Mr. McClarn's servicing problems. (See Defendants' Affidavit at Doc. No. 84-2 p. 4-2., p 2 of 5). In that Affidavit, Citizens Trust Bank states that it does not accept payments or maintain online access for customers. Citizens Trust states that Defendant Loancare LLC does so. However, Citizens Trust also states that Loancare LLC is its "loan servicer." Through that relationship, Citizens Trust requires that its borrowers, including Mr. McClarn, make payments to Loancare LLC. Loancare will then accept payments on Citizens Trust's behalf and apply those amounts to the borrowers' Citizens Trust loan account. Loancare accepts payments under the express authority of Citizens Trust and does so for the benefit of Citizens Trust. Therefore, Citizens Trust is liable for all actions of Loancare that were taken within its capacity as an agent of Citizens Trust.
[4] Mr. McClarn was granted partial access to his account on February 13, 2020. On that occasion Mr. McClarn could log into the online account, but he could not access his account information. Mr. McClarn's access was revoked later that same day, and he has been unable to access his account since that date. (Mr. McClarn Affidavit at ¶ 22).

8

rejected payments are still subject to the terms of the Consent Order. Phrased differently, Defendants' rejection of Mr. McClarn's payments are fruits of Defendants' original sin and support this action for contempt. The Defendants have yet to come into compliance with the Order by properly bringing Mr. McClarn current on his account. Consequently, the Consent Order's applicability to Defendants' conduct will persist until such time that Defendants comply.

### G. The Consent Order Is Applicable to Accrued Interest on Mr. McClarn's Account.

The Consent Order dictates that the Defendant "has not and will not assess debtor's loan any additional interest due to Debtor tendering mortgage payments later than their respective due dates." (Consent Order at Case 14-75160-sms, Doc. No. 78, p. 2, ¶4;) (emphasis added). The Defendants assert that the Consent Order's prohibition on the assessment of interest only applies to those sums due before January 1, 2020. The Consent Order states that the Defendants have not and "will not" assess any additional interest to sums paid after their due date. That language suggests direct applicability to future payments. Moreover, the Defendants' reading of the Order is weakened by the fact that the Order expressly contemplates at least one future payment by Mr. McClarn.[5]

The interest that Defendants have continued to accrue on Mr. McClarn's account constitutes a violation of the Consent Order because the Defendants have never complied with this Court's Order. Through their delay in applying funds and failure to bring Mr. McClarn current, Defendants have "classified" Mr. McClarn's account as being in foreclosure or bankruptcy proceedings. The actions by Defendants have prevented Mr. McClarn from paying on his account.[6] The interest on Mr. McClarn's account only continues to accrue because he was barred

---

[5] The Consent Order directed Mr. McClarn to tender $15,794.24, which he did through his counsel on February 20, 2020. (Consent Order at ¶¶ 2, 6), (McClarn Affidavit at ¶15).

[6] Defendants have blocked Mr. McClarn's online access to his account. (McClarn Affidavit at ¶ 22). Defendants have blocked Mr. McClarn from paying on his account. (McClarn Affidavit at ¶¶ 20, 23) During the period that Defendants have blocked Mr. McClarn from paying the principal balance on his account, Defendants have continued assessing interest on Mr. McClarn's outstanding balance. (McClarn Affidavit at ¶¶ 23, 24).

9

from making payments beginning over two years ago. Defendants continued accrual of interest on Mr. McClarn's account during the period which they have rejected all of his payment attempts constitutes contempt.

### H. The Consent Order Governs the Application of the Insurance Proceeds Defendants Are Now Withholding from Mr. McClarn.

Though the Consent Order did not contemplate the future existence of this exact sum from insurance proceeds, it required the Defendants to apply the excess escrow funds that they were withholding from Mr. McClarn (Consent Order at ¶¶ 2, 7). The insurance proceeds which are being withheld by the Defendants are escrow funds and are subject to governance by the Consent Order. Defendants' initial delay applying the funds as required by the Order caused Mr. McClarn's account to become delinquent from the entry of the Consent Order until the application of the funds. During said time, Mr. McClarn was barred from his account until he paid all sums due, including those assessed for the delinquency. Therefore, when Mr. McClarn's excess escrow funds were eventually applied by Defendants in May of 2020, the sums applied were not enough to balance those fees assessed during Defendants' delay. As a result: (a) Mr. McClarn's account remained delinquent, (b) Mr. McClarn's account has never been made current, and (c) Mr. McClarn has been barred from accessing his account and paying his loan.

These actions by Defendants, whether intended or not, ensured that Mr. McClarn's account was never made current. This noncompliance by Defendants resulted in the continued applicability of the Consent Order to both the actions and resulting consequences of Defendants' non-compliance, specifically Defendants' withholding escrow funds which originated from Mr. McClarn's insurance proceeds. The insurance proceeds rightfully belong to Mr. McClarn. Until the Defendants' remit those funds and otherwise come into compliance with the Order, Defendants remain in contempt.

**I. Defendants' Violation of the Order Caused Defendants to Reject Mr. McClarn's Refinancing Application.**

Defendants' refusal to consider Mr. McClarn's application is a part of the same body of misconduct and harm caused by Defendants' failure to bring Mr. McClarn's account current. Mr. McClarn does not proffer the Defendants' disregard of his refinancing application as an independent cause of action. Rather it is evidence that Mr. McClarn has never been brought current in accordance with the express language of the Consent Order. Accordingly, Mr. McClarn should be awarded for any losses based on Defendants refusal to consider Mr. McClarn's refinance application. It results from Defendants' non-compliance with the Order. Therefore, Mr. McClarn is entitled to an award for that conduct.

**J. Defendants Issuance of Mis-stated Account Statements Violated the Order.**

Defendants' refusal to provide accurate payoff statement closely mirrors Defendants' actions with regard to Mr. McClarn's refinancing application. Defendants' ongoing refusal to provide accurate pay-off statements is evidence of their failure to treat Mr. McClarn as any other similarly situated borrower. This flows all the way back to their initial failure to bring Mr. McClarn's account current. Again, Mr. McClarn does not present the evidence of the erroneous and missing pay-off statements as a separate cause of action. Rather, Mr. McClarn introduces these facts as evidence of Defendants' continued non-compliance with the Consent Order and refusal to bring Mr. McClarn current. Stated another way, the refusal to provide accurate payoff statements upon request, along with the other actions of the Defendants since early 2020, represent a body of misconduct which violate the provisions expressly set out in the Consent Order.

**K. The Defendants Actions Constitute Willful Violations of the Consent Order.**

Defendants' mens rea is relevant to the assessment of punitive damages. *Green Point Credit, LLC v. McLean*, 794 F.3d 1313, 1325-26 (11th Cir. 2015). Specifically, the totality of the Defendants' conduct, all the while Mr. McClarn attempted to bring them into compliance,

demonstrates a willful, intentional, and callous disregard for this Court's authority and for the rights of Mr. McClarn.

### L. Mr. McClarn is Entitled to Damages as a Result of the Defendants' Contempt.

Defendants conduct is ongoing, and Mr. McClarn continues to suffer harm as a result of the Defendants' Contempt. Moreover, Defendants' conduct demonstrates an egregious disregard for Mr. McClarn's rights in light of his ongoing and continued efforts to bring the Defendants into compliance. Accordingly, Mr. McClarn is entitled to the award of damages in the forms of: (1) coercive sanctions to encourage compliance, (2) compensatory damages for monetary harm, and (3) punitive sanctions.

1. <u>Coercive Sanctions Are Appropriate Because the Defendants Have Not Come into Compliance with the Order.</u>

Mr. McClarn should be granted damages in the form of coercive sanctions until such time as the Defendants come into compliance with the Consent Order. Where a party to a court order has failed to comply with that order over a period of time, the Court has the power to impose sanctions as necessary and appropriate to ensure compliance. *In re McLean*, 794 F.3d 1313, 1323.

In the current instance, Defendants have failed to comply with the Consent Order. In violation of the Order, the Defendants have failed to make Mr. McClarn's account current, and they have denied Mr. McClarn access to his online account (McClarn Affidavit at ¶24). Those actions by the Defendants have led the Defendants to classify Mr. McClarn's account as delinquent in their server, and have led the Defendants reject all payment attempts made by Mr. McClarn since February 2020 (McClarn Affidavit at ¶20). During that period that Mr. McClarn has been barred from his account, the Defendants have 1) continued to accrue interest on Mr. McClarn's account; 2) withheld sums which are rightfully owed to Mr. McClarn; and 3) sent Mr. McClarn erroneous payoff statements which reflected an inflated account balance. The actions of the Defendants violate the language and spirit of the Consent Order's directives to bring Mr.

12

McClarn's account current, and to apply escrow funds to Mr. McClarn's outstanding balance. Additionally, Defendants' conduct has interfered with Mr. McClarn's ability to gain control of his account or pay down his principal balance. Defendants have had more nearly three years to comply with the Consent Order, but still they have not. Accordingly, the court should impose coercive sanctions on Defendants until they comply with the Order.

In determining appropriate coercive sanctions, the Court should consider (1) the character and magnitude of the harm threatened by continued contumacy, (2) the probable effectiveness of any suggested sanction in bringing about compliance with the court order, and (3) the contemnor's financial resources and the consequent seriousness of the burden of sanction. *See Granfinanciera, S.A. v. Nordberg (In re Chase & Sanborn Corp.),* 872 F.2d 397, 401 (11th Cir.1989) citing *United Mine Workers v. Gibbs* 330 U.S. 304 (1966). The Court has broad discretion to fashion a coercive remedy based on the nature of the harm and the probable effect of alternative sanctions. *EEOC v. Local 28, Sheet Metal Workers*, 247 F.3d 333, 336 (2d Cir. 2001). And finally, "[t]he ultimate consideration is whether the coercive sanction is reasonable in relation to the facts."  See *Nat'l Org. for Women v. Terry*, 159 F.3d 86, 93 (2d Cir. 1998)

Mr. McClarn seeks coercive sanctions as deemed appropriate by this Court. In considering the appropriate sanction to be applied, the Court should note the duration of Defendants' failure to comply with the Consent Order and the magnitude of the harm suffered by Mr. McClarn as a consequence of Defendants' continued volitional conduct. Here, the Defendants' violations have caused interest and past due principal amounts to accrue on Mr. McClarn's account. Moreover, Defendants' actions continue to interfere with Mr. McClarn's ability to bring his account current, or to transfer his loan to a third-party financer. In summary, Mr. McClarn continues to suffer harm based on Defendants' ongoing violation of the Consent Order. Additionally, Defendants' failure to comply over the last two years, along with Defendants' significant financial resources, support the imposition of substantial sanctions to bring Defendants into compliance with the Consent Order.

Mr. McClarn now asks the Court to exercise its discretion in imposing coercive sanctions onto the Defendants. Moreover, Mr. McClarn asks that those sanctions be consequent and large enough in magnitude to impress upon the Defendants the seriousness of their violations, and to effectively bring the Defendants into compliance. The facts of the case support the imposition of coercive sanction until such time that the Defendants comply with the Consent Order. Mr. McClarn asks that the Court fashion a coercive sanction of appropriate magnitude given the facts of Defendants' conduct.

2. <u>An Award for Compensatory Damages is Appropriate.</u>

Mr. McClarn is entitled to compensatory damages based on Defendants' violations of the Consent Order. In addition to coercive sanctions which may encourage Defendants' compliance, Mr. McClarn is entitled to damages that are meant to compensate his losses which he has suffered due to Defendants' non-compliance. *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1949) (citing *United Mine Workers* at 303-304). The amount awarded for compensatory sanctions should correspond to the magnitude of the damages caused by the volitional conduct. *Weston Capital Advisors, Inc. v. PT Bank Mutiara, Tbk*, 738 Fed. Appx. 19, 22 (2d Cir. 2018); Terry, 886 F.2d at 93.

In the current instance, Mr. McClarn has incurred costs including but not limited to: 1) attorneys' fees and other costs in bringing this litigation; 2) the accrual of interest on Mr. McClarn's account during the period which Defendants were refusing his payments; and 3) the loss of insurance proceeds which were properly owed to Mr. McClarn and which the Defendants are currently withholding in escrow.

a. *Mr. McClarn is Entitled to Compensatory Damages for Attorney's Fees.*

Mr. McClarn did not specify the amount of attorney's fees sought in his cross-motion for summary judgment. (Plaintiff's Brief at p. 18). Mr. McClarn sought summary judgment as to liability but wished to present the evidence of those attorney's fees at trial. (Plaintiff's Brief at Fn. 3). The Defendants point to a lack of evidence on the issue. Yet, they do not state that Mr. McClarn has

14

not incurred attorneys' fees. Defendants assert that the Court should deny Mr. McClarn's claim for attorneys' fees because Mr. McClarn has not yet provided statements reflecting the exact fees incurred. However, Mr. McClarn has carried his burden in presenting a prima facie case for attorney's fees.

Mr. McClarn has set forth his claim for attorney's fees in his original affidavit. (McClarn Affidavit at ¶ 38). The McClarn Affidavit does not set forth the specific amount of attorney's fees incurred because his claim for attorney's fees continues to accrue. Mr. McClarn has carried this litigation through more than two years of effort. There is no question that Mr. McClarn has incurred attorney's fees in his effort to force the Defendants to comply with the Order. A full accounting of Mr. McClarn's attorneys' fees, along with all relevant fee agreements, will be available for use at trial.

      b. *Mr. McClarn is Entitled to Compensatory Damages for Erroneously Assessed Interest.*

The interest which the Defendants have erroneously applied to Mr. McClarn's account since the entry of the Consent Order should be forfeited. Defendants continue to accrue interest on Mr. McClarn's account despite: (a) the Defendants' ongoing refusal to accept each payment attempt made by Mr. McClarn, and (b) Defendants' refusal to grant Mr. McClarn online account access during the same period. The sum of the interest applied to Mr. McClarn's account is a direct result of the Defendants' contempt and therefore is recoverable as compensatory damages. Accordingly, the court should impose compensatory sanctions in favor of Mr. McClarn, and in an amount which corresponds to his losses suffered as a consequence of Defendants' contempt.

      c. *Mr. McClarn is Entitled to Compensatory Damages for Withheld Escrow.*

Mr. McClarn requests the return of all funds which Defendants hold in escrow. As stated above, the Consent Order is applicable to the insurance proceeds which Defendants now hold in escrow. Because the Defendants have never come into compliance with the Consent Order, the Consent Order still governs the effects of Defendants' non-compliance. Although the Consent

Order did not address the handling of these specific insurance proceeds, it did expressly set forth that the Defendants were to apply to the principal on the loan the excess escrow that was being withheld at that time (Consent order at ¶¶ 2, 7). The Consent Order obligates the Defendants to bring Mr. McClarn current. This would necessitate remittance of the excess escrow funds currently being withheld from Mr. McClarn.

       3.   <u>Punitive Damages Are Appropriate Under the Circumstances of This Dispute.</u>

Defendants argue that the imposition of punitive damages is not appropriate based on their overall contention that Defendants have not violated the Consent Order. Put simply, it is the Defendants' assertion that they did bring Mr. McClarn's account current and that Mr. McClarn has been granted online access to account.[7] Therefore, it is Defendants' belief that because no action for contempt can be supported, no action for punitive damages against Defendants could be asserted based on the same set of facts.[8] While Defendants correctly state the law with relation to appropriate actions for punitive damages, the Defendants rest their ultimate conclusion on the assertion that the Defendants are not liable for contempt.

It is evident based on the facts of Defendants' violations, and the duration of that conduct, that the court should impose punitive damages on the Defendants. The imposition of punitive damages in appropriate where the facts of a defendant's volitional conduct demonstrate "reckless or callous disregard for the law or he rights of others." *In re McLean*, at 1325-26.

Mr. McClarn has proffered evidence that the Defendants did in fact violate the Consent Order, and consequently that they are liable for civil contempt. The Defendants contend that Mr. McClarn has failed to introduce evidence that would support a finding that Defendants' conduct meets the standard required to impose punitive damages. (*Defendant's Memorandum of Law in*

---

[7] Defendants' assertions that they have complied with the Court order by making Mr. McClarn's account current and that they have granted Mr. McClarn electronic account access directly contradict Mr. McClarn's testimony. (Affidavit of Darcie Lyle, Doc No. 84-3 at ¶ 6) (McClarn Affidavit at ¶ 24).

[8] *SE Prop. Holdings, LLC v. Judkins*, 822 F. App'x 929, 936-37 (11th Cir. 2020); *see also Anderson v. Brezeale*, 507 F.2d 929, 931 (5th Cir. 1975).

*Support of Their Motion for Summary Judgment*, Doc. No. 84, pp. 21-22). But it is the whole of the Defendants' actions that represents a pattern of behavior by Defendants which evidences a callous disregard for this Court's directives and for the rights of Mr. McClarn and that supports the imposition of punitive sanctions. *Id.* The Defendants have continued to hold funds in escrow that rightfully belong to Mr. McClarn. Defendants never brought Mr. McClarn's account current and have continued to deny Mr. McClarn any semblance of control over his account by refusing him online access.

The actions of the Defendants have resulted in significant hardship to Mr. McClarn. Mr. McClarn has not been able to make a payment on his account since February of 2020. This is based on the Defendants' refusal to make his account current. Moreover, barring Mr. McClarn from his account and preventing Mr. McClarn from making payments has resulted in the accrual of more than twenty-thousand dollars in interest. Defendants wrongfully charged this interest during a period that Mr. McClarn was barred from his account. All the while Mr. McClarn made continued attempts to gain access to his account and to bring Defendants into compliance. The entirety of the Defendants' behavior represents a pattern of misconduct by those Defendants which evidences a callous disregard for the rights of Mr. McClarn. *Id*.

## CONCLUSION

Summary judgment is not appropriate. Genuine issues of material fact exist as to whether Defendants violated and continue to violate the order. Without limitation, conflicting testimony exists as to whether Mr. McClarn has ever been granted account access.

This 16th day of November, 2022.

        **JONES & WALDEN LLC**
        */s/ Leon S. Jones*
        Leon S. Jones
        Georgia Bar No. 003980
        Attorney for Anthony Carver McClarn
        699 Piedmont Ave NE
        Atlanta, Georgia 30308
        (404) 564-9300
        ljones@joneswalden.com

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| IN RE:<br><br>ANTHONY CARVER MCCLARN,<br><br>  Debtor. | CHAPTER 13<br><br>CASE NO. 14-75160-sms |
| ANTHONY CARVER MCCLARN,<br><br>  Plaintiff,<br>v.<br><br>CITIZENS TRUST BANK and LOANCARE LLC,<br><br>  Defendants. | ADVERSARY PROCEEDING<br><br>NO. 20-06070-sms |

**CERTIFICATE OF SERVICE**

I hereby certify that on the date indicated below, the foregoing *Plaintiff's Reply Brief in Support of Cross Motion for Partial Summary Judgment* (the "Brief") was electronically filed using the Bankruptcy Court's Electronic Case Filing program which sends a notice of and an accompanying link to the Brief to the following parties who have appeared in these cases under the Bankruptcy Court's Electronic Case Filing Program:

- **Bret J. Chaness**   bchaness@rubinlublin.com, BJC-ECF-Notifications@rubinlublin.com
- **A. Christian Wilson**   cwilson@simplawatlanta.com, sscheu@simplawatlanta.com

This 16th day of November, 2022.

                                                                    JONES & WALDEN LLC

                                                                    */s/ Leon S. Jones*
                                                                    Leon S. Jones
                                                                    Georgia Bar No. 003980
                                                                    699 Piedmont Avenue, N.E.
                                                                    Atlanta, Georgia 30308
                                                                    (404) 564-9300
                                                                    ljones@joneswalden.com
                                                                    *Attorney for Plaintiff*