**IT IS ORDERED as set forth below:**

**Date: March 31, 2023**

_____

**Sage M. Sigler**
**U.S. Bankruptcy Court Judge**

_____

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| In re: | Case No. 14-75160-sms |
| Anthony Carver McClarn, | Chapter 13 |
| Debtor, | |
| Anthony Carver McClarn, | Adversary Proceeding |
| Plaintiff, | No. 20-06070-sms |
| v. | |
| Citizens Trust Bank and LoanCare LLC, | |
| Defendants. | |

**ORDER DENYING DEFENDANTS' MOTION FOR**
**SUMMARY JUDGMENT, GRANTING PLAINTIFF'S MOTION**
**FOR PARTIAL SUMMARY JUDGMENT, AND NOTICE OF HEARING**

Defendants are liable for any damages resulting from violations of the Consent Order with

Anthony Carver McClarn, which include failing to provide Mr. McClarn with online access to his

account and failing to timely and correctly apply payments received from McClarn. The Consent Order embodied an agreement between the parties and imposed obligations and deadlines on them both, and each contend that the other violated the Consent Order. While neither party timely met their obligations, Defendants' initial and ongoing breach precipitated the flurry of failures that led to this Adversary Proceeding. The undisputed evidence shows that Defendants were in contempt of the Consent Order prior to any breach by Plaintiff, and Defendants are thus liable for any resulting damages.

I.     **Procedural History**

Anthony Carver McClarn ("McClarn") filed a Chapter 13 petition on December 30, 2014. His Chapter 13 plan proposed to cure a prepetition mortgage arrearage owed to Citizens Trust Bank and its loan servicer LoanCare, LLC (collectively, "Defendants"). The Court confirmed McClarn's plan on March 24, 2015, and McClarn completed his plan in December 2018. Case No. 14-75160, Docs. 28, 65, 69, 73.

In early 2019, Defendants alleged that McClarn owed an arrearage for postpetition defaults. Doc. 66 at 2; *see* Case No. 14-75160, Claim No. 1 filings. McClarn disputed the alleged postpetition arrearage and filed a Motion to Deem Mortgage Current, which Citizens Trust Bank opposed. Case No. 14-75160, Docs. 76, 78.

On January 30, 2020, the Court entered a Consent Order on McClarn's Motion to Deem Mortgage Current (the "Consent Order").[1] Case No. 14-75160, Doc. 85. The Consent Order acknowledged the parties' agreement that McClarn owed $19,899.80 in postpetition arrears and

---

[1] Citizens Trust Bank and Mr. McClarn are the only parties to the Consent Order. The servicer, LoanCare, was not a party to the Consent Order, but was named as a defendant in the Adversary Proceeding. LoanCare has actively participated in the Adversary Proceeding along with Citizens Trust Bank, is represented by the same counsel as Citizens Trust Bank, and has not raised any defenses to its liability on Plaintiff's claims based on its relationship to Citizens Trust Bank or the Consent Order. Should there be any dispute as to liability as between Citizens Trust Bank and LoanCare, such issues may be resolved at trial.

imposed three obligations. First, it required Citizens Trust Bank to allow McClarn online access to his account within seven days of the entry of the Order. Second, it required McClarn to tender $15,794.24 in certified funds to Citizens Trust Bank within ten days of the entry of the Order. Third, it required Citizens Trust Bank to apply an escrow balance of $4,105.56 to McClarn's principal and interest payments.

The Consent Order did not specify the date by which Citizens Trust Bank had to apply the escrow balance, but provided that the application of the escrow balance and McClarn's $15,794.24 payment would bring the loan current through January 1, 2020, with the next payment on the loan being due February 1, 2020. The Consent Order, dated January 30, 2020, deemed the matter resolved and instructed the Clerk of Court to close the bankruptcy case.

The parties' compromise quickly deteriorated. On April 1, 2020, the Court granted McClarn's Motion to Reopen the Bankruptcy Case to allow him to file an adversary proceeding against Defendants. Case No. 14-75160, Doc. 89. McClarn initiated the above-referenced Adversary Proceeding on April 27, 2020, by filing a seven-count complaint. (Doc. 1, the "Complaint").

On December 3, 2020, the Court dismissed all McClarn's claims except for Count Six, which requests that the Court hold Defendants in contempt for their alleged failure to comply with the Confirmation Order and the Consent Order. Doc. 17; Complaint at ¶¶ 50-54. Defendants objected to the contempt claim being adjudicated in an adversary proceeding instead of a contested matter, but the Court overruled that objection. Doc. 17.

On August 17, 2022, Defendants filed their *Motion for Summary Judgment*, *Defendants' Statement of Material Facts in Support of Their Motion for Summary Judgment*, and *Defendants' Memorandum of Law in Support of Their Motion for Summary Judgment*. Docs. 65, 66, 67.

On September 29, 2022, McClarn filed his *Response in Opposition to Defendants' Motion for Summary Judgment*. Doc. 78. Additionally, McClarn filed *Plaintiff's Cross Motion for Partial Summary Judgment* and *Plaintiff's Brief in Opposition to Summary Judgment and in Support of Plaintiff's Cross Motion for Partial Summary Judgment*. Docs. 76, 77.[2]

II. **Relevant Facts**

Defendants admit that McClarn did not have online access to his account by February 6, 2020, as required by the Consent Order. Doc. 84, p. 3. Defendants allege that McClarn gained online access in July of 2020, but McClarn insists that he has never had consistent online access to his account. Doc. 66, Ex. C, p. 5, 6; Doc. 76, Ex. 1, p. 5. Regardless, the undisputed fact remains that Defendants failed to provide McClarn with online access to his account within the time required by the Consent Order.

On February 7, 2020—three days prior to his deadline under the Consent Order and the day after he should have received online access to his account—McClarn delivered to his attorney a certified check payable to Citizens Trust Bank in the amount of $15,794.24. Doc. 76, Ex. 1, p. 3. To compel Citizens Trust Bank to provide McClarn with online access as required by the Consent Order, McClarn's attorney at that time advised that they not yet turn over the check. *Id*. McClarn undertook further efforts to gain online access on February 7, 2020, by visiting a branch office of Citizens Trust Bank, speaking to a representative of the bank, and following up with the representative via email the same day. *Id*. Citizens Trust Bank's response was simply to tell McClarn to talk to LoanCare, noting that "you may have to go back to court." *Id*. at p. 3-4. Despite

---

[2] On October 7, 2022, McClarn filed a *Motion to Deem Motion for Partial Summary Judgment as Timely Filed*. Doc. 79 (the "Motion to Deem Timely"). On March 28, 2023, the Court granted McClarn's Motion to Deem Timely on grounds of judicial economy. Doc. 90. Accordingly, the Court will consider the merits of McClarn's Motion for Partial Summary Judgment.

Defendants' noncompliance, McClarn's attorney ultimately mailed the certified check to Defendants on February 21, 2020, and Defendants received it on February 24, 2020. *Id*. at p. 4.

Notwithstanding their possession of the escrow balance funds prior to entry of the Consent Order and their receipt of McClarn's certified funds on February 24, 2020, Defendants did not properly apply the $15,794.24 payment or the $4,105.56 escrow balance to McClarn's loan until May 5, 2020—almost three months after McClarn initially tendered payment and eight days after McClarn initiated this Adversary Proceeding. Doc. 66, p. 4.

### III.   Discussion

McClarn alleges that Defendants violated the Consent Order by failing to provide him with online access to his account, failing to provide accurate statements, failing to apply funds, seeking to collect erroneous amounts, failing to update McClarn's account to reflect the Consent Order, and rejecting McClarn's payments. The undisputed, clear and convincing evidence demonstrates that Defendants violated the Consent Order by failing to timely provide McClarn with online access to his account and failing to timely apply the escrow balance and payments received under the Consent Order. Plaintiff's other grievances are better characterized as alleged damages or requests for injunctive relief relating to Defendants' breaches of the Consent Order, and will be addressed at trial.

### A. Summary Judgment Standard

Summary judgment is appropriate where the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R Civ. P. 56(c); Fed. R. Bankr. P. 7056(c). The movant must establish by a preponderance of the evidence that the record—pleadings, depositions, admissions, and affidavits, if any—demonstrates

the absence of a genuine dispute of material fact.[3]  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  An issue is "genuine" if a rational trier of fact could find for the nonmoving party.  *Hickson Corp. v. Northern Crossarm Co., Inc.*, 357 F.3d 1256 (11th Cir. 2004).  Materiality is present where the issue(s) could affect the outcome of the case.  *Id*.

"If the movant successfully discharges its burden, the burden then shifts to the non-movant to establish, by going beyond the pleadings, that genuine issues of material facts exist." *Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913, 918 (11th Cir. 1994).  On motions for summary judgment, the Court cannot weigh the evidence to determine witness credibility and the like; such issues are reserved for trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  In addition, the Court must review the evidence in the light most favorable to the non-moving party and draw all inferences therefrom.  *Welch v. Celotex Corp.*, 951 F.2d 1235, 1237 (11th Cir. 1992); *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1528 (11th Cir. 1987).

## B. Civil Contempt Standard

Federal courts "have inherent power to enforce compliance with their lawful orders through civil contempt." *Shillitani v. United States,* 384 U.S. 364, 370 (1966); *see also Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009).  "[C]onsent decrees, like all injunctions, are to be enforced through the trial court's civil contempt power." *Reynolds v. McInnes*, 338 F.3d 1201, 1208 (11th Cir. 2003).  In *Reynolds v. McInnes*, the Eleventh Circuit spelled out the procedure for enforcing consent decrees.  A plaintiff must move the court to issue an order for the defendant to show cause why it should not be adjudged in civil contempt and sanctioned.   Then the plaintiff must show by clear and convincing evidence that the court's order has been violated.  *Id.*; *see also Woody v.*

---

[3] Although a "preponderance of the evidence" standard applies to whether there are genuine disputes of material fact, the Court applies a "clear and convincing evidence" standard to whether Defendants are liable for contempt.

*Cooper*, 2020 WL 5551993 (Bankr. N.D. Ga. Sept. 16, 2020) (citing cases) (a clear and convincing evidence standard is applicable to contempt claims).

"Because a consent decree is a contract, we follow the rules for interpretation of contracts and apply principles of state contract law." *Peery v. City of Miami*, 977 F.3d 1061, 1069 (11th Cir. 2020). The court's inquiry involves both the interpretation of what the consent decree requires and the application of that interpretation to the facts. *Reynolds v. McInnes*, 338 F.3d 1201, 1211 (11th Cir. 2003); *See also Reynolds v. Roberts,* 202 F.3d 1303, 1312 (11th Cir. 2000); *Jacksonville Branch, N.A.A.C.P. v. Duval Cnty. Sch. Bd.*, 978 F.2d 1574, 1578 (11th Cir. 1992) (citing *United States v. Armour & Co.,* 402 U.S. 673, 682, (1971)); and *Paradise v. Prescott,* 767 F.2d 1514, 1525 (11th Cir.1985), *aff'd,* 480 U.S. 149 (1987)). "Although a consent agreement may be enforced by judicial sanctions, … obligations required of each party to a consent decree must be found 'within its four corners, and not by reference to what might satisfy the purposes of one of the parties to it.'" *Jacksonville Branch*, 978 F.2d at 1578 (citing *United States v. Armour,* 402 U.S. at 682 and *Paradise v. Prescott,* 767 F.2d at 1525).

### C. Defendants Violated the Consent Order by Failing to Provide McClarn with Online Access to His Account

Under the Consent Order, Defendants' deadline to provide McClarn with online access to his account was February 6, 2020. It is undisputed that Defendants failed to meet that deadline. Instead, they provided access five months after the deadline, if they provided access at all. Doc. 66, Ex. C p. 5, 6.; Doc. 76, Ex. 1, p. 5. The undisputed evidence therefore supports finding Defendants in contempt of the Consent Order.

### D. Defendants Violated the Consent Order by Failing to Timely Apply the Escrow Balance and Payments Received

The Consent Order required Defendants to apply the escrow balance of $4,105.56 to McClarn's principal and interest balance. It did not specify a deadline for Defendants to do so, but provided that McClarn would be current through January 1, 2020, and due for the February 1, 2020 payment, once the necessary funds had been tendered and applied. The Court entered the Consent Order on January 30, 2020, two days before McClarn's next regular payment became due. Defendants could not make McClarn's account current as required unless they applied the escrow balance and the certified funds immediately. Yet, Defendants waited until May 5, 2020—almost three months after it received McClarn's payment and eight days after McClarn initiated the Adversary Proceeding—to apply the funds as required by the Consent Order.

The lack of an enumerated deadline by which Defendants had to apply the payments is no excuse. The Consent Order required the account to be brought current through January 2020 upon receipt of McClarn's payment, which was received on February 24, 2020. But throughout February, March, and April, McClarn's account remained delinquent because Defendants failed to apply the escrow balance and payment as required. Adding to McClarn's frustration, he was unable to verify whether Defendants had applied the funds as required or how Defendants were applying his ongoing payments because Defendants continued to deny him online access to his account in violation of the Consent Order. Defendants' lengthy delay, cured only after the commencement of litigation, is a material breach of the Consent Order and supports finding Defendants in contempt.

### E. The Unclean Hands Doctrine is Not Applicable

Defendants contend that doctrine of unclean hands bars McClarn's civil contempt claim because McClarn tendered certified funds to Defendants two weeks late. Doc. 67, p. 9; Doc. 84, p. 4. The Court disagrees.

The unclean hands doctrine "closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant." *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814 (1945). The doctrine "is rooted in the historical concept of court of equity as a vehicle for affirmatively enforcing the requirements of conscience and good faith." *Id*. at 814. As such, it "require[s] that [plaintiffs] shall have acted fairly and without fraud or deceit as to the controversy in issue." *Id*. The doctrine's underlying reasoning "necessarily gives wide range to the equity court's use of discretion in refusing to aid the unclean litigant. It is 'not bound by formula or restrained by any limitation that tends to trammel the free and just exercise of discretion.'" *Id*. at 815 (quoting *Keystone Driller Co. v. Gen. Excavator Co.*, 290 U.S. 240, 245-46 (1933)).

Here, McClarn timely provided certified funds to his attorney, who tendered such funds to Defendants two weeks late in response to Defendants' refusal to comply with the Consent Order. The unclean hands doctrine does not bar McClarn's claim because his tardiness does not demonstrate bad faith. First, McClarn delivered the certified funds to his attorney three days before his deadline to pay Defendants. Second, Defendants were the first to violate the Consent Order by failing to provide McClarn with online access to his account. Defendants' breach occurred before McClarn's payment became due and continued even after McClarn properly tendered payment. Third, McClarn's delay was minor. McClarn tendered certified funds to his attorney and communicated with Citizens Trust Bank the reasons for the delay. All Defendants had to do to timely receive the funds was comply with their own obligations under the Consent Order. Instead, Defendants continued to deny McClarn online access to his account for over four months. Further,

Defendants refused to apply the certified funds or the escrow balance as required by the Consent Order until after McClarn initiated this Adversary Proceeding months later.

The circumstances demonstrate that McClarn lacked bad faith in tendering payment to Defendants two weeks late. McClarn's decision to briefly withhold payment was a reasonable, strategic delay in response to Defendants' initial breach. Therefore, the unclean hands doctrine does not estop McClarn's claim as a matter of law.

### IV.     Conclusion

McClarn's allegations are many, but his surviving claim concerns the discrete obligations imposed by the Consent Order. Both parties failed to meet those obligations. Some failures were minor, and others were not. It took months of delay and the filing of this Adversary Proceeding to compel Defendants to comply with the Consent Order—if it ever did.

The undisputed evidence establishes that Defendants breached the Consent Order by failing to provide McClarn with online access to his account and by failing to timely apply the escrow balance and McClarn's payment to the loan balance. The extent of the injuries resulting from Defendants' breaches, and any injunctive relief necessary to remedy ongoing contempt, will be assessed at trial. Accordingly, it is

**ORDERED** that Defendants' *Motion for Summary Judgment* is **DENIED**;

**IT IS FURTHER ORDERED** that McClarn's *Cross Motion for Partial Summary Judgment* is **GRANTED** as to Defendants' contempt of the Consent Order and Defendants' resulting liability; and

**IT IS FURTHER ORDERED** and **NOTICE IS HEREBY GIVEN** that a status conference in this matter will be held on **May 3, 2023** at **11:30 AM**, via Judge Sigler's Virtual Hearing Room located at https://www.ganb.uscourts.gov/content/honorable-sage-m-sigler. Any

party may also choose to appear in person at Courtroom 1201, United States Courthouse, 75 Ted Turner Drive, SW, Atlanta, Georgia 30303.

The Clerk shall serve a copy of this Order upon counsel for Plaintiff and counsel for Defendants.

### ### END OF ORDER ###