IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE:<br><br>ANTHONY CARVER MCCLARN,<br><br>    Debtor. | Case No. 14-75160-sms<br>Chapter 13 |
| ANTHONY CARVER MCCLARN,<br><br>    Plaintiff,<br><br>v.<br><br>CITIZENS TRUST BANK and LOANCARE, LLC,<br><br>    Defendants. | Adversary No. 20-06070-sms |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR
MOTION FOR RECONSIDERATION**

COME NOW, Citizens Trust Bank ("Citizens"), LoanCare, LLC ("LoanCare") (collectively, the "Defendants"), and file this Motion for Reconsideration of the Court's Order on Cross-Motions for Summary Judgment [Doc. 92], respectfully showing this Honorable Court as follows:

**RELEVANT FACTS AND PROCEDURAL HISTORY**

This case concerns a claim of civil contempt against the Defendants for allegedly failing to comply with the terms of a consent order that was issued on January 30, 2020. The Consent Order – between the Plaintiff and Citizens – said the following:

> THE PARTIES AGREE:
> That the post-petition arrearage through January 1, 2020 is $19,899.80. Once Debtor tenders certified funds to Respondent in the amount of $15,794.24 and Respondent applies the excess escrow balance of $4,105.56, Debtor will be

1

current through January 1, 2020 and due for the February 1, 2020 payment. The parties further agree:

> That Debtor has paid in full the amount required to satisfy Respondent's pre-petition arrearage claim. The parties further agree
>
> That Respondent has not and will not assess Debtor's loan any additional interest due to Debtor tendering mortgage payments later than their respective due dates, or in other words, interest charged on the account will be the same as if all payments had been tendered timely. The partiers further agree;
>
> Debtor will be allowed online access to his mortgage account once the case has closed. Accordingly, it is hereby
>
> **ORDERED** that Debtor shall tender certified funds in the amount of $15,794.24 to Respondent within ten (10) days of entry of this Order; it is
>
> **FURTHER ORDERED** that Respondent shall apply the excess escrow balance of $4,105.56 to Debtor's principal and interest payments; it is
>
> **FURTHER ORDERED** that Respondent shall allow Debtor online access to his account within seven calendar days following the closing of this case and through and until the loan is satisfied or transferred.
>
> This matter resolves all outstanding issues in the case. The Clerk may close this bankruptcy case.

[Bk. Doc. 85].

On August 17, 2022, the Defendants moved for summary judgment. *See* [Doc. 65]. The Statement of Material Facts that supported the motion showed that the Plaintiff contended that the Defendants violated the terms of the Consent Order as follows:

1. Failure to provide accurate statements;
2. Failure to provide online access to tender the funds;
3. Failure to apply funds;
4. Seeking to collect erroneous amounts in excess of what was allowed by the Consent Order;
5. Failing to update Plaintiff's account to reflect the Consent Order.

[Doc. 66] at p. 4, ¶ 15 (citing [Doc. 25] at pp. 6-7).

Additionally, the Statement of Material Facts showed that the Plaintiff stated he is seeking the following damages:

- Interest incurred from 2019 to present due to not being able to modify or refinance the loan due to having dispute inaccurate accounting and other issues that prevented the bankruptcy from closing: $14,161.96 (30 months of 6.50% vs. 2.7%)
- Lost promotion opportunity ($20,000 annual): $21,667

- Medical costs: $63,832.26
- Pain and suffering, anxiety, sleep and memory problems: $50,000.00
- Punitive damages
- Attorney fees/costs: $4,850 ($200/hourly)

*Id.* at pp. 4-5, ¶ 17 (citing [Doc. 38] at pp. 3-4).

The Defendants then set forth a number of facts that showed that the Plaintiff could not connect any of his claimed damages to the alleged actions of the Defendants and/or he has failed to present any evidence to support the claim(s) of damages. *Id.* at ¶¶ 18-40.

The memorandum of law in support of the Motion for Summary Judgment began with the argument that the Plaintiff could not recover for contempt because he had unclean hands because he tendered the funds late and therefore also violated the terms of the Consent Order. *See* [Doc. 67] at pp. 8-9. Next, the Defendants argued that they did not violate the Consent Order in any of the ways set forth by the Plaintiff. *See id.* at pp. 9-10. With respect to the application of funds, the Statement of Material Facts showed that the funds were fully applied by May 4, 2020, which brought the loan current through January 2020, and that the Consent Order did not set forth a deadline by which the funds had to be applied. *Id.*

The remainder of the brief – and by far the longest argument section – focused on the Plaintiff's claimed damages and how his written discovery responses and deposition testimony showed that none of his claimed were connected to any of the alleged actions of the Defendants and/or he has failed to present any evidence to support the claim(s) of damages. *Id.* at pp. 11-15.

On September 29, 2022, the Plaintiff filed a response to the Motion for Summary Judgment, as well as a Cross-Motion for Partial Summary Judgment. *See* [Docs. 76-78]. The Plaintiff attempted to support his cross-motion with a 36-paragraph Statement of Material Facts. *See* [Doc. 76] at pp. 27-34. In his brief (which combined his responsive arguments and arguments in support of his cross-motion), the Plaintiff tried to raise a number of new theories

3

regarding how the Consent Order was allegedly violated and how he was damaged by those violations. *See generally* [Doc. 77]. In response to the Defendants' Statement of Material Facts, the Plaintiff tried to dispute several the Defendants' facts solely on the unsupported and legally irrelevant statement that "Plaintiff was not competent to testify at the time of his deposition due to his medical condition." *See* [Doc. 78] at pp. 29-30.

On October 28, 2022, the Defendants filed a combined response to the Cross-Motion and reply to the Plaintiff's response to their Motion for Summary Judgment. *See* [Doc. 84]. As relevant to this instant motion, the brief argued that (1) the Plaintiff had no basis to deny any of the Defendants' material facts because alleged incompetency cannot make evidence inadmissible; (2) the Defendants did not violate any terms of the consent order in the ways alleged in the Plaintiff's interrogatory responses; (3) the Plaintiff cannot utilize new theories of contempt for the first time during summary judgment and after the close of discovery; and (4) the Plaintiff is estopped from pursuing new categories or theories of damages different from those stated under oath during discovery. *See id.* In addition to filing the brief, the Defendants filed a separate response to the Plaintiff's Statement of Material Facts. *See* [Doc. 84-1]. The Defendants objected to several the Plaintiff's alleged facts as inadmissible hearsay or because they were based on previously undisclosed documents. *Id.*

This Court issued an Order on the Cross-Motions for Summary Judgment on March 31, 2023. *See* [Doc. 92]. In the Order, this Court granted the Plaintiff's Motion for Partial Summary Judgment and denied the Defendants' Motion. *Id.* Specifically, this Court found that the Defendants are in contempt of the Consent Order for failing to provide the Plaintiff with online account access within seven days of the case closing and also found them in contempt for not applying the funds at issue until May 4, 2020, despite stating that the Consent Order "did not

4

specify a deadline for Defendants to do so." *Id.* at pp. 7-8. Next, this Court found that the unclean hands doctrine does not apply. *Id.* at pp. 8-10. Notably, and perhaps most significantly with respect to this motion, this Court did not undertake any analysis for the Defendants' damages arguments. For primarily this reason, the Defendants are hereby moving for reconsideration so that it can obtain a ruling on whether summary judgment is appropriate in the Defendants' favor on their damages arguments. Additionally, the Defendants will show that this Court overlooked binding Supreme Court precedent in finding them in contempt with respect to the application of funds and that this Court misconstrued the facts of this case by crediting several properly disputed or objected to facts as true in favor of the Plaintiff and overlooking several facts raised by the Defendants.

## ARGUMENT AND CITATION OF AUTHORITY

A.    STANDARD OF REVIEW

"A motion for reconsideration should not be used to reiterate arguments that have been made previously, but 'should be reserved for certain limited situations, namely the discovery of new evidence, an intervening development or change in the law, or the need to correct a clear error or prevent a manifest injustice.'" *Stephens v. Trust for Public Land*, No 1:05-CV-1366-RWS, 2007 WL 3046510, at *1 (N.D. Ga. Oct. 17, 2007) (quoting *Deerskin Trading Post, Inc. v. United Parcel Serv. of Am., Inc.*, 972 F. Supp. 665, 674 (N.D. Ga. 1997)). "Manifest injustice pertains to situations where a court overlooks some dispositive factual or legal matter that was presented to it." *Rubinsky v. Zayat*, No. CV 2:14-01540 (WJM), 2015 WL 6737020, at *1 (D.N.J. Nov. 2, 2015), *aff'd*, 674 F. App'x 172 (3d Cir. 2017) (citing *In re Rose*, No. 06-1818, 2007 WL 2533894, at *3 (D.N.J. Aug. 30, 2007)). Additionally, overlooking binding precedent constitutes a clear error. *See Bentivegna v. People's United Bank*, No. 2:14-CV-599

(ADS)(GRB), 2017 WL 4277149, at *2 (E.D.N.Y. Sept. 25, 2017). This Court "has the discretion to revise or reconsider interlocutory orders at any time before final judgment has been entered."[1] *Bryant v. Jones*, 696 F. Supp. 2d 1313 (N.D. Ga. 2010); *see also Fortran Group Int'l, Inc. v. Tenet Hospitals, Ltd.*, 543 F. App'x 934 (11th Cir. 2013) (citing *Harper v. Lawrence Cnty., Ala.*, 592 F.3d 1227, 1231 (11th Cir. 2010)); *Hardin v. Hayes*, 52 F.3d 934, 938 (11th Cir. 1995)); *see also* Fed. R. Civ. P. 54(b).

B.  **THIS COURT COMMITTED CLEAR ERROR BY UTILIZING THE INCORRECT SUMMARY JUDGMENT STANDARD AND MISCONSTRUED THE UNDISPUTED MATERIAL FACTS**

The beginning of Section III of the Order sets forth what is described as the "Summary Judgment Standard." *See* [Doc. 92] at p. 5. This Court said that "[t]he movant must establish by a preponderance of the evidence that the record – pleadings, depositions, admissions, and affidavits, if any – demonstrates the absence of a genuine dispute of material fact." *Id* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). In a footnote following that sentence, this Court said that "[a]lthough a 'preponderance of the evidence' standard applies to whether there are genuine disputes of material fact, the Court applies a 'clear and convincing evidence' standard to whether Defendants are liable for contempt." [Doc. 92] at p. 6 n.3. However, *Celotex* says nothing about the "preponderance of the evidence" standard, and that standard has no place in consideration of *facts* on summary judgment motions. *See U.S. v. $19,054.00 in U.S. Funds*, No. 5:10-CV-319 (MTT), 2012 WL 4094361, at *4 (M.D. Ga. Sept. 17, 2012).

In *$19,054.00 in U.S. Funds*, the federal government instituted a civil forfeiture action related to seized money from a traffic stop that later turned into a drug arrest and moved for

---

[1] LBR 9023-1 (Bankr. N.D Ga.) requires that motions for reconsideration be filed "within fourteen days after entry of the order or judgment." The Defendants believe this rule applies only to *final* orders and judgments, but nevertheless, this motion is being timely filed if this rule applies here.

6

summary judgment. *Id.* at *3. The civil forfeiture statute requires that the government "establish, by a preponderance of the evidence, that the property is subject to forfeiture . . . ." *Id.* (quoting 18 U.S.C. § 983(c)). For the property to be subject to forfeiture, the government must show a nexus between the money and the criminal activity. *See id.* at *4. In its summary judgment motion, [t]he Government repeatedly content[ed] that it 'has established by a preponderance of the evidence that there is a nexus between the Defendant Property and drug activity,' and thus summary judgment is appropriate." *Id.* The district court made clear that this is irrelevant on summary judgment, because

> [t]he preponderance of the evidence burden requires the *trier of fact* to weigh the evidence and determine whether some fact is more probable than not before it may find in favor of the Government . . . .Thus, because the Court cannot act as a trier of fact, make credibility determinations, and resolve factual disputes at the summary judgment stage, it would be inappropriate for the Court to determine if the Government has shown by a preponderance of the evidence that there is a nexus between the Defendant Property and drug activity. Instead, at the summary judgment stage, the Court must determine whether a genuine issue of material fact exists with regard to the Government's burden of proving by a preponderance of the evidence that the Defendant Property is subject to civil forfeiture.

*Id.*; *see also Griffin v. GTE Florida, Inc.*, 182 F.3d 1279, 1282 (11th Cir. 1999) (collecting cases); *see also In re Affiliated Foods Southwest, Inc.*, 750 F.3d 714, 718 (8th Cir. 2014) ("a 'preponderance of the evidence' standard [ ] is appropriate after trial but not for the grant of summary judgment."); *Ransburg Electro-Coating Corp. v. Lansdale Finishers, Inc.*, 484 F.2d 1037, 1039 (3d Cir. 1973) ("[P]reponderance of the evidence is not the test in a summary judgment proceeding; rather the test is whether a genuine issue of material fact remains after examination of pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits.").

Because the preponderance of the evidence standard does not apply to the consideration of facts on summary judgment, this Court committed clear error by applying such a standard to determine whether there were any genuine disputes of material facts. "A dispute is genuine if a reasonable trier of fact could return judgment for the non-moving party." *Flournoy v. CML-GA WB, LLC*, 851 F.3d 1335, 1337 (11th Cir. 2017) (citations omitted) (internal quotation marks

7

omitted). It does not appear that this Court properly analyzed all the facts to determine whether there were genuine disputes.

Perhaps because of this error, the Defendants contend that this Court misconstrued the undisputed material facts and recited certain facts as true even though they were properly objected to or disputed.

In the "Relevant Facts" section of the Order, this Court said the following:

> To compel Citizens Trust Bank to provide McClarn with online access as required by the Consent Order, McClarn's attorney at that time advised that they not yet turn over the check. *Id*. McClarn undertook further efforts to gain online access on February 7, 2020, by visiting a branch office of Citizens Trust Bank, speaking to a representative of the bank, and following up with the representative via email the same day. *Id*. Citizens Trust Bank's response was simply to tell McClarn to talk to LoanCare, noting that "you may have to go back to court." *Id*. at p. 3-4.

[Doc. 92] at p. 4.

The citation for these facts was the Plaintiff's Affidavit, [Doc. 76, Ex. 1], and not the Plaintiff's Statement of Material Facts, [Doc. 76] at pp. 27-34. As such, this Court may have viewed the affidavit without reference to how the affidavit was laid out in the Statement of Material Facts and the Defendants' response thereto.[2] When looking at the Plaintiff's Statement of Material Facts and the Defendants' responses, this Court will see the following:

**Plaintiff's asserted fact:** "At that time, Mr. Fields advised that he should not tender the check to Defendants to pay off the arrearage until McClarn received access to his online account. The Defendants had not and did not grant McClarn electronic access at this time, as required by the Consent Order. The Defendants were required to grant me such access the day before, on February 6th, according to the Consent Order. Mr. Fields advised McClarn that the withholding

---

[2] This may be because the Plaintiff's counsel filed the response and cross-motion in a very confusing manner, with the affidavit and statement of material facts both attached as separate exhibits to the motion itself in one filing, without making them separate attachments on CM/ECF. *See* [Doc. 76].

8

of the Check as payment may encourage the Defendants to come into compliance with the Consent Order more readily. Affidavit ¶ 15." [Doc. 76] at p. 29, ¶ 13.

**Defendants' response:** "The Defendants object to the statements in Paragraph 13 regarding what Jeff Fields told the Plaintiff as inadmissible hearsay. See Fed. R. Evid. 801, 802. The Defendants further object to paragraph 13 as violating LBR 7056-1(a)(1), which requires that all facts be numbered separately. Paragraph 13 attempts to combine at least three separate "facts" into one numbered paragraph. The Defendants admit that the Plaintiff did not have online account access in February 2020." [Doc. 84-1] at p. 3, ¶ 13.

**Plaintiff's asserted fact:** "On or about February 7, 2020, McClarn went to Citizens Trust Bank to try to gain access to his online account and resolve any issues with same. On that date Ladaria Smith ("Ms. Smith"), a Loan Manager for Citizens Trust, told McClarn that she could not help McClarn or accept his payments. Ms. Smith informed McClarn that all payments were to be made through Loancare directly. Specifically, Citizens Trust refused to grant McClarn online access to his account on that date. On that same day, McClarn sent Ms. Smith a copy of the Consent Order by email, which stated that Defendants were to grant McClarn electronic access to his loan account and bring him current through February 1, 2020. Affidavit ¶ 16." [Doc. 76] at p. 29, ¶ 14.

**Defendants' response:** "The facts set forth in paragraph 14 are denied. Citizens does not accept payments for any loans in its branches nor does it have a website where any borrower can see loan information. *See* Affidavit of Citizens Trust Bank, attached hereto as Exhibit 'A.'" [Doc. 84-1] at p. 3, ¶ 14.

Thus, as can be seen, this Court credited facts that were either denied or objected to without addressing the disputes or objections. Later in the Order, in the section regarding unclean

9

hands, stated that "McClarn tendered certified funds to his attorney and communicated with Citizens Trust Bank the reasons for the delay." [Doc. 92] at p. 9. There are no facts whatsoever showing that the Plaintiff ever "communicated with Citizens Trust Bank the reasons for the delay" and this Court did not cite anywhere in the record for this assertion. Within the same section, this Court also stated that "Defendants' breach occurred before McClarn's payment became due and continued even after McClarn properly tendered payment." Again, there is nothing in the record showing that the Plaintiff ever "properly tendered payment," and the evidence instead shows that he is *voluntarily* failing to make payments. *See* fn.2, *infra*. The Defendants assert that this Court committed clear error in its recitation and analysis of the facts and in utilizing the incorrect legal standard to review the facts. As such, it should reconsider its Order and analyze the case based on the undisputed material facts as set forth by the parties.

C. **THIS COURT FAILED TO ANALYZE THE DEFENDANTS' ARGUMENTS CONCERNING DAMAGES**

Along with crediting certain facts as true that are disputed, the Defendants contend that this Court failed to address several material facts (and arguments) regarding the Plaintiff's claims of damages. Of the 40 paragraphs in the Defendants' Statement of Material Facts, numbers 17-40 related solely to damages. *See* [Doc. 66] at pp. 4-8. These facts were then utilized to support arguments concerning the Plaintiff's alleged damages and how, even if the Defendants were in contempt, the Plaintiff has failed to show that he has any recoverable damages. Arguments were made on each specific category of damages the Plaintiff claimed. In his Cross-Motion, the Plaintiff tried to introduce entire new categories of damages (although he was not moving for summary judgment on damages), and the Defendants responded with extensive arguments about how the Plaintiff should be estopped from claiming any damages other than those set forth in his verified interrogatory responses.

This Court did not address these arguments at all in its Order except to say that, with respect to the Plaintiff's newly claimed damages, they "will be addressed at trial." [Doc. 92] at p. 5. It was entirely proper to move for summary judgment on categories of damages. *See, e.g., Flip Face U.S.A., LLC v. Alexandria Moulding, Inc,*, No. 1:15-CV-883-MHC, 2017 WL 10928327, at *9 (N.D. Ga. March 9, 2017); *Quorum Health Res., LLC v. Hosp. Auth. of Wayne Cnty., Ga.*, No. CV 208-042, 2011 WL 13202017, at *5 (S.D. Ga. Sept. 2, 2011); *Sot Corp. v. Cambron*, No. 1:01-CV-2417-WBH, 2006 WL 8432778, at *1 (N.D. Ga. March 9, 2006).

This failure to consider the facts and arguments is manifest injustice that is grounds for reconsideration. *See Bentivegna v. People's United Bank*, No. 2:14-CV-599 (ADS)(GRB), 2017 WL 4277149, at *2 (E.D.N.Y. Sept. 25, 2017). This Court should proceed to analyze those arguments in the first instance and provide a decision to the parties. Failing to do so leaves all parties in a great state of confusion for possible trial preparation, as it is unknown what is at stake.

**D.    THIS COURT COMMITTED CLEAR ERROR IN FAILING TO APPLY THE CIVIL CONTEMPT STANDARD FROM *TAGGART***

Lastly, the Defendants are seeking reconsideration of this Court's finding that they are in contempt for failing to timely apply the excess escrow balance and February 24, 2020, payment to the Plaintiff's account. While the Defendants agree that it would have been better practice to apply the subject funds prior to May 4, 2020, the standard that guides this Court in civil contempt proceedings dictates that this action simply does not rise to the level of contempt. The correct standard, however, was not mentioned in the Order.

Following the Court's recitation of the summary judgment standard, it set forth what it said is the "Civil Contempt Standard." *See* [Doc. 92] at pp. 6-7. However, the Order does not reflect that this Court utilized the standard set forth in the seminal case that established the

11

standard for civil contempt in bankruptcy cases – *Taggart v. Lorenzen*, 139 S. Ct. 1795 (2019).

In its Order, this Court said the following about the civil contempt standard:

> Federal courts "have inherent power to enforce compliance with their lawful orders through civil contempt." *Shillitani v. United States,* 384 U.S. 364, 370 (1966); *see also Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009). "[C]onsent decrees, like all injunctions, are to be enforced through the trial court's civil contempt power." *Reynolds v. McInnes*, 338 F.3d 1201, 1208 (11th Cir. 2003). In *Reynolds v. McInnes*, the Eleventh Circuit spelled out the procedure for enforcing consent decrees. A plaintiff must move the court to issue an order for the defendant to show cause why it should not be adjudged in civil contempt and sanctioned. Then the plaintiff must show by clear and convincing evidence that the court's order has been violated. *Id.*; *see also Woody v. Cooper*, 2020 WL 5551993 (Bankr. N.D. Ga. Sept. 16, 2020) (citing cases) (a clear and convincing evidence standard is applicable to contempt claims).
> "Because a consent decree is a contract, we follow the rules for interpretation of contracts and apply principles of state contract law." *Peery v. City of Miami*, 977 F.3d 1061, 1069 (11th Cir. 2020). The court's inquiry involves both the interpretation of what the consent decree requires and the application of that interpretation to the facts. *Reynolds v. McInnes*, 338 F.3d 1201, 1211 (11th Cir. 2003); *See also Reynolds v. Roberts,* 202 F.3d 1303, 1312 (11th Cir. 2000); *Jacksonville Branch, N.A.A.C.P. v. Duval Cnty. Sch. Bd.*, 978 F.2d 1574, 1578 (11th Cir. 1992) (citing *United States v. Armour & Co., * 402 U.S. 673, 682, (1971)); and *Paradise v. Prescott,* 767 F.2d 1514, 1525 (11th Cir.1985), *aff'd,* 480 U.S. 149 (1987)). "Although a consent agreement may be enforced by judicial sanctions, … obligations required of each party to a consent decree must be found 'within its four corners, and not by reference to what might satisfy the purposes of one of the parties to it.'" *Jacksonville Branch*, 978 F.2d at 1578 (citing *United States v. Armour,* 402 U.S. at 682 and *Paradise v. Prescott,* 767 F.2d at 1525).

[Doc. 92] at pp. 6-7.

The Defendants do not dispute that contract principles should guide the interpretation of the Consent Order, but that is not the entire analysis. In *Taggart*, the Supreme Court was clear that civil contempt "should not be resorted to where there is a *fair ground of doubt* as to the wrongfulness of the defendant's conduct . . . and that principles of 'basic fairness require that those enjoined receive explicit notice' of 'what conduct is outlawed' before being held in civil contempt." 139 S. Ct. at 1801 (citations omitted). There is nothing in *Taggart* that would

12

preclude its application to consent orders, and the Seventh Circuit recently applied *Taggart* to one. *See Nat'l Labor Relations Bd. v. Neises Constr. Corp.*, 62 F.4th 1040, 1052-53 (7th Cir. 2023). This Court did not utilize or even refer to the *Taggart* standard in its Order, which the Defendants contend constitutes clear error. The Defendants briefed the *Taggart* standard in their summary judgment motion. *See* [Doc. 67] at pp. 9-10.

If *Taggart* were properly applied here, this Court should find that it cannot utilize its contempt powers with respect to the application of funds. In its Order, this Court acknowledged that the Consent Order "did not specify a deadline for Defendants" to apply the funds but that "[t]he lack of an enumerated deadline by which Defendants had to apply the payments is no excuse. The Consent Order required the account to be brought current though January 2020 upon receipt of McClarn's payment, which was received on February 24, 2020." [Doc. 92] at p. 8. This Court also said that it "entered the Consent Order on January 30, 2020, two days before McClarn's next regular payment became due. Defendants could not make McClarn's account current as required unless they applied the escrow balance and the certified funds immediately." *Id.* However, the Consent Order did not "require the account to be brought current though January 2020 ***upon*** receipt of McClarn's payment" nor is it impossible to bring the account current through January 2020 at a later date. *Id.* (emphasis added). Rather, the Consent Order says that:

> THE PARTIES AGREE:
> That the post-petition arrearage through January 1, 2020 is $19,899.80. Once Debtor tenders certified funds to Respondent in the amount of $15,794.24 and Respondent applies the excess escrow balance of $4,105.56, Debtor will be current through January 1, 2020 and due for the February 1, 2020 payment. The parties further agree:
> That Debtor has paid in full the amount required to satisfy Respondent's pre-petition arrearage claim. The parties further agree

13

    That Respondent has not and will not assess Debtor's loan any additional interest due to Debtor tendering mortgage payments later than their respective due dates, or in other words, interest charged on the account will be the same as if all payments had been tendered timely. The partiers further agree;
    Debtor will be allowed online access to his mortgage account once the case has closed. Accordingly, it is hereby
    **ORDERED** that Debtor shall tender certified funds in the amount of $15,794.24 to Respondent within ten (10) days of entry of this Order; it is
    **FURTHER ORDERED** that Respondent shall apply the excess escrow balance of $4,105.56 to Debtor's principal and interest payments; it is
    **FURTHER ORDERED** that Respondent shall allow Debtor online access to his account within seven calendar days following the closing of this case and through and until the loan is satisfied or transferred.
    This matter resolves all outstanding issues in the case. The Clerk may close this bankruptcy case.

[Bk. Doc. 85].

Nothing in the language of the Consent Order required the account be brought current "upon receipt of McClarn's payment." It simply said that "[o]nce Debtor tenders certified funds to Respondent in the amount of $15,794.24 and Respondent applies the excess escrow balance of $4,105.56, Debtor will be current through January 1, 2020 and due for the February 1, 2020 payment." The fact that the next regular payment was due two days after the Consent Order was entered is of no consequence, and the Defendants contend that this Court may have misconstrued the language "current through" with respect to a loan due date.[3] "Current through" simply denotes the month through which payments have been made and does not mean that the loan is actually paid up to date and has no past due payments. *See, e.g., In re Residential Cap., LLC*, No. 12-12020 (MG), 2015 WL 4747860, at *2 (Bankr. S.D.N.Y. Aug. 4, 2015); *Sanchez v. Bank of*

---

[3] Although not relevant to the *Taggart* analysis, this Court also said that "[a]dding to McClarn's frustration, he was unable to verify whether Defendants had applied the funds as required or how Defendants were applying his ongoing payments because Defendants continued to deny him online access to his account in violation of the Consent Order." [Doc. 92] at p. 8. It is an incorrect statement, not supported by the record, that the Plaintiff was making "ongoing payments . . . ." As set forth in the summary judgment briefing, the Plaintiff stated in his interrogatory responses that he is *voluntarily* choosing not to make ongoing payments while this litigation is pending. *See* [Doc. 84] at p. 11.

14

*Am., N.A.*, No. 4:13cv158, 2014 WL 316516, at *1 (E.D. Tex. Jan. 27, 2014); *Rourk v. Bank of Am. Nat'l Ass'n*, No. 4:12-CV-42 (CDL), 2013 WL 5595964, at *1 (M.D. Ga. Oct. 11, 2013); *In re Borowski*, No. 08-32750, 2013 WL 3759794, at *1 (Bankr. E.D. Tenn. July 15, 2013). Thus, Defendants did not need to apply the payment and escrow balance *immediately* in order to bring the loan "current through January 1, 2020 and due for the February 1, 2020 payment."

*Taggart* requires that a party receive "explicit notice of what conduct is outlawed' before being held in civil contempt." 139 S. Ct. at 1801. Since the Consent Order contained no deadline for application of the funds, it is impossible to know at what point the Defendants would have been considered in contempt for failing to apply the payments. Was it after two days, one week, three weeks, one month, two months, or so on? The Consent Order does not say, and *Taggart* makes clear that it cannot be an arbitrary decision by this Court. *See also Halmos v. Ins. Co. of N. Am.*, No. 08-10084-CIV-BROWN, 2010 WL 11447256, at *1 (S.D. Fla. March 2, 2010) (denying motion for contempt because "[t]he lack of a specific deadline, for compliance alone, would probably result in a reversal of an order of contempt."); *see also In re Trigee Foundation, Inc.*, No. 12-00624, 2017 WL 2126875, at *2 (Bankr. D.D.C. May 16, 2017) (citation omitted) (declining to issue contempt citation when order had "lack of a specific deadline for compliance" and noting in footnote that court could not find any other case "in which a court issued a judgment of civil contempt as a method of coercing compliance with an order directing the payment of fees when the order directing payment lacked a date certain for compliance.").

Again, the Defendants do not suggest that it would have been proper for them to never have applied the funds, but there is a clear distinction between something being improper and something being grounds for contempt. *See, e.g., Armstrong v. Exec. Off. of the President, Off. of Admin.*, 1 F.3d 1274, 1289 (D.C. Cir. 1993) (citations omitted) ("Though [declaratory judgment]

15

may be persuasive, it is not ultimately coercive; noncompliance with it may be inappropriate, but it is not contempt.").

The lack of an explicit directive/deadline in the Consent Order renders the adjudication of contempt to be clear error under the *Taggart* standard. At the very least, there is a "fair ground of doubt" about when the payments must have been applied to avoid a contempt finding. This Court should reconsider its prior Order and conclude that the Defendants are not in contempt for applying the payment and escrow funds on May 4, 2020, rather than at some earlier date. It was clear error not to consider *Taggart* in the Order.

## CONCLUSION

Based on the foregoing, the Defendants respectfully request that this Court reconsider its Summary Judgment Order.

Respectfully submitted, this 14th day of April, 2023.

          */s/ Bret J. Chaness*
          BRET J. CHANESS (GA Bar No. 720572)
          **RUBIN LUBLIN, LLC**
          3140 Avalon Ridge Place, Suite 100
          Peachtree Corners, GA 30071
          (678) 281-2730 (Telephone)
          (404) 921-9016 (Facsimile)
          bchaness@rlselaw.com

          *Attorney for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on the 14th day of April, 2023, I filed the within and foregoing via CM/ECF, which will serve electronic notice on all parties.

*/s/ Bret J. Chaness*
BRET J. CHANESS (GA Bar No. 720572)
