**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| IN RE:<br><br>**ANTHONY CARVER MCCLARN,**<br><br>     Debtor. | **CHAPTER 13**<br><br>**CASE NO. 14-75160-sms** |
| **ANTHONY CARVER MCCLARN,**<br><br>     **Plaintiff,**<br>v.<br><br>**CITIZENS TRUST BANK and**<br>**LOANCARE LLC,**<br><br>     **Defendants.** | **ADVERSARY PROCEEDING**<br><br>**NO. 20-06070-sms** |

## RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR RECONSIDERATION

COMES NOW, Anthony Carver McClarn ("Mr. McClarn"), and files this Response in Opposition to Defendants' Motion for Reconsideration (Doc. No. 96) filed by Defendants Citizens Trust Bank and Loancare, LLC ("Citizens Trust" and "Loancare") (collectively, the "Defendants"). In support of this Response, Mr. McClarn shows the following.

### Procedural History

On or about December 30, 2014, Mr. McClarn filed Chapter 13 bankruptcy case number 14-75160-sms (the "Chapter 13 Case"). On March 3, 2015, Mr. McClarn filed his 1st Amended Chapter 13 Plan (Doc. No. 21). On March 24, 2015, the Court entered an Order Confirming the Plan (Doc. No. 28). On December 28, 2018, the Chapter 13 Trustee filed the Notice of Plan Completion (Doc. No. 65). On January 14, 2019, the Chapter 13 Trustee filed her Final Report and Accounting. (Doc. No. 67). On January 17, 2019, the case was closed.

In early 2019, Defendants alleged that McClarn owed an arrearage for postpetition defaults. Doc. No. 66 at 2. On February 28, 2019, Mr. McClarn's case was re-opened, and the Trustee filed a Notice of Final Cure Payment on March 1, 2019. (Doc. No. 73). On April 23, 2019, Mr. McClarn filed a Motion to Deem the Mortgage Current (Doc. No. 76).

In that same period, the re-opening of the Chapter 13 Case created an obstacle to paying Mr. McClarn's scheduled mortgage payments to Defendants because Defendants would not accept and process payments that Mr. McClarn tendered. In addition, Defendants claimed Mr. McClarn owed a post-petition arrearage.

On or about January 30, 2020, the Court entered the *Consent Order on Debtor's Motion to Deem Mortgage Current* (Doc. No. 85) (the "Consent Order"). Among other things, the Consent Order: (1) established the outstanding sum of the post-petition arrearage as $15,794.24, to be paid to Defendants within 10 days of the entry of the Consent Order; (2) ordered Defendants to apply the held escrow funds to Mr. McClarn's total outstanding principal; (3) ordered Defendants to grant Mr. McClarn electronic access to his Mortgage account within 7 days of the entry of the Consent Order, (4) ordered that Defendants bring Mr. McClarn's loan current through February 1, 2020; (5) clarified that Defendants were not to assess Mr. McClarn's loan any additional interest due to the late tendering of mortgage payments in accordance with the Consent Order; and (6) closed the Chapter 13 case. (See Court Order at main case Doc. No. 85).

On April 1, 2020, the Court granted McClarn's Motion to Reopen the Bankruptcy Case to allow him to file an adversary proceeding against Defendants. (Case No. 14-75160, Doc. No. 89.) McClarn initiated the above-referenced Adversary Proceeding on April 27, 2020, by filing a seven-count complaint. (Doc. No. 1, the "Complaint").

On December 3, 2020, the Court dismissed all McClarn's claims except for Count Six. Count Six requests that the Court hold Defendants in contempt for their alleged failure to comply with the Confirmation Order and the Consent Order. Doc. No. 17; Complaint at ¶¶ 50-54. Defendants objected to the contempt claim being adjudicated in an adversary proceeding instead of a contested matter, but the Court overruled that objection. (Doc. No. 17.)

On August 17, 2022, Defendants filed their Motion for Summary Judgment, Defendants' Statement of Material Facts in Support of Their Motion for Summary Judgment, and Defendants' Memorandum of Law in Support of Their Motion for Summary Judgment. (Doc. Nos. 65, 66, 67).

On September 29, 2022, Mr. McClarn filed his Response in Opposition to Defendants' Motion for Summary Judgment. (Doc. No. 78). Additionally, Mr. McClarn filed Plaintiff's Cross Motion for Partial Summary Judgment and Plaintiff's Brief in Opposition to Summary Judgment and in Support of Plaintiff's Cross Motion for Partial Summary Judgment. (Doc. Nos. 76, 77).

On March 31, 2023, the Court issued an *Order Denying Defendants' Motion for Summary Judgment, Granting Plaintiff's Motion for Partial Summary Judgment, and Notice of Hearing* (the "Summary Judgment Order") (Doc. No. 92). In the Summary Judgment Order, the Court ruled that the evidence demonstrates that Defendants violated the Consent Order by failing to timely provide Mr. McClarn with online access to his account and failing to timely apply the escrow balance and payments received under the Consent Order. The Court found that the remainder of Mr. McClarn's arguments were better characterized as arguments for damages, and left those issues to be addressed at a trial for damages.

Defendants filed *Defendants' Motion for Reconsideration*, along with the supporting Memorandum of Law (collectively, the "Reconsideration Motion") on April 14, 2023. (Doc. Nos. 95 & 96). In the Reconsideration Motion, the Defendants argued that the Court erred in finding that certain material facts of the case were not subject to a genuine dispute. Defendants also asserted that the Court overlooked binding precedent (Doc. No. 95).

### Relevant Facts

Mr. McClarn timely obtained and presented good funds to his attorney for the $15,794.24 due under the Consent Order (which required McClarn to fund within 10 days). *See* Court Order at main case Doc. No. 85.; see *Affidavit of Anthony McClarn in Support of Adversary Proceeding* (Doc. No. 76, Ex. A) (hereinafter the "McClarn Affidavit") at ¶ 13. In accordance with the Consent Order, Mr. McClarn delivered to Jeff Fields, his attorney at the time, a Certified Check payable to CT Bank (the "Check") in the amount of $15,794.24 on or around February 7, 2020. *See* McClarn Affidavit at ¶ 14; see Summary Judgment Order at p. 4. At that time, Mr. Fields advised Mr. McClarn that he should not tender the check to Defendants to pay off the arrearage until he received access to his online account. *See* McClarn Affidavit at ¶ 15; see Consent Order at p.2.

The Defendants were required to grant Mr. McClarn such access the day before, on February 6th, according to the Consent Order. (*See* Consent Order at p. 2; see Summary Judgment Order at p. 4). The Defendants had not and did not grant Mr. McClarn electronic access at the time. *See* McClarn Affidavit ¶ 16. Mr. Fields advised Mr. McClarn that the withholding of the Check as payment may encourage the Defendants to come into compliance with the Consent Order more readily.[1] *See* McClarn Affidavit ¶ 15; see Summary Judgment Order at p. 4.

Also on February 7, 2020, Mr. McClarn went to Citizens Trust Bank in an attempt to gain access to his online account and to resolve any outstanding issues with his account. *See* McClarn Affidavit ¶ 16; see Summary Judgment Order at p. 4. Citizens Trust refused to grant Mr. McClarn online access to his account on that date. *See* McClarn Affidavit ¶ 16; see Summary Judgment Order at p. 4. On his visit, a loan manager for Citizens Trust told McClarn that she could not help McClarn or accept his payments, and that that all payments were to be made through Loancare directly. *See* McClarn Affidavit ¶ 16; see Summary Judgment Order at p. 4. Shortly following his visit, Mr. McClarn sent the loan officer a copy of the Consent Order dictating that Defendants were to bring Mr. McClarn's account current and grant him online account access. *See* McClarn Affidavit ¶ 16; see Summary Judgment Order at p. 2.

Mr. Fields then advised that Mr. McClarn should send the check in spite of Defendants' ongoing breach of the Consent Order. *See* McClarn Affidavit ¶ 17. Following Mr. Fields' advice, Mr. McClarn instructed Mr. Fields to tender the Check to Defendants on February 20, 2020. On February 21, 2020, Mr. Fields sent the Check and a copy of the Consent Order directly to Defendants. *See* McClarn Affidavit ¶ 17; see Summary Judgment Order at p. 5. According to the

---

[1] In their Reconsideration Motion, Defendants assert that Mr. Fields' conversation with Mr. McClarn constitutes hearsay. See Reconsideration Motion Memorandum at p.9. Defendants specifically state as follows: "The Defendants object to the statements … regarding what Jeff Fields told Plaintiff [McClarn] as inadmissible hearsay." (Reconsideration Motion, Doc. No. 95 at p. 9 citing Doc. No. 84-1 at p.3 ¶ 13.) However, Defendants miss the point of this testimony, McClarn does not offer this statement for the truth of the matter asserted. Rather McClarn makes this testimony to establish his motive and intent regarding the timing of the tender of the payment. Therefore, this evidence is not inadmissible hearsay. The Court did not err by considering this undisputed admissible statement.

Consent Order, tender of the Check satisfied Mr. McClarn's outstanding obligations to the Defendants. Therefore, Defendants were required by the Consent Order to bring Mr. McClarn's account current, apply all remaining escrow funds, and to grant him online account access. *See* Summary Judgment Order at p. 2.

On or about February 27, 2020, McClarn attempted to make a payment in person on his loan at Citizens Trust Bank, but Mr. McClarn was told by the same loan officer that she could not accept McClarn's payment because his account was in bankruptcy proceedings. *See* McClarn Affidavit ¶ 18. Following that visit, the Loan Officer sent Mr. McClarn an email directing him to contact Loancare's bankruptcy department in order to sort out the issue of his rejected payments. *See* McClarn Affidavit ¶ 19.

Mr. McClarn attempted to make a payment by phone through Loancare's servicing center. *See* McClarn Affidavit ¶ 23. On that call, Mr. McClarn spoke to a Loancare collection agent who told him that his mortgage was in foreclosure. *See* McClarn Affidavit ¶ 23. That agent also told Mr. McClarn that he was in active bankruptcy. *See* McClarn Affidavit ¶ 23. Mr. McClarn told that agent that he was in fact current, and that the bankruptcy had already been resolved. *See* McClarn Affidavit ¶ 23. Defendant's collection agent insisted that Mr. McClarn's payment still could not be accepted and that he would need to speak to Loancare's foreclosure attorneys. *See* McClarn Affidavit ¶ 23.

Mr. McClarn has never been granted electronic access to his loan account, except for temporary and limited access given on February 13, 2020. *See* McClarn Affidavit ¶ 24. At that time, Mr. McClarn could log into the account but was unable to view the entirety of his account information, and even that limited electronic access was removed shortly thereafter. *See* McClarn Affidavit ¶ 24. Moreover, while Mr. McClarn has been unable to make regular payments on his loan since the date of the Consent Order due to Defendants' rejection of those tendered payments, Defendants have continued to assess interest to the past due amounts on Mr. McClarn's loan. *See* McClarn Affidavit ¶ 25.

As a result of Defendants' continuing breach, Mr. McClarn has incurred significant damages. In addition to Mr. McClarn's rejected payments, lack of online account access, and accrued interest, he has incurred additional damages in the form of: (i) unapplied escrow amounts to his account (*see* McClarn Affidavit ¶ 30-31); (ii) Defendants' failure to provide Mr. McClarn with accurate payoff statements (*see* McClarn Affidavit ¶ 36); (iii) Defendants' failure to respond to Mr. McClarn's refinancing application in a timely manner (*see* McClarn Affidavit ¶ 34-35); and (iv) attorneys' fees and litigation costs arising from Mr. McClarn's attempts to bring Defendants into compliance (*see* McClarn Affidavit ¶ 38).[2] Defendants ongoing failure to comply with the Consent Order have entitled Mr. McClarn to collect damages in the form of coercive sanctions, compensatory sanctions, and punitive sanctions.

## **Argument and Citation of Authority**

## I.    **Introduction.**

The Court correctly found that Defendants violated the Consent Order given the relevant legal standard. When read in its entirety, the Consent Order makes clear that Mr. McClarn was to make a payment of the outstanding post-judgment arrearage owed on his mortgage loan, and the Defendants were to: (i) apply all withheld escrow funds to Mr. McClarn's account balance; (ii) grant Mr. McClarn online account access within 7 days of the entry of the Consent Order; and (iii) bring Mr. McClarn's account current through February 1, 2020. All of these provisions represented an effort to allow Mr. McClarn to gain control of his mortgage account so that Mr. McClarn could begin making regularly scheduled payments once more.

Mr. McClarn fulfilled his obligation. But still the Defendants have refused to comply with the Consent Order, preventing any semblance of control Mr. McClarn hoped to gain over his account. Moreover, Defendants continued to shirk their obligations to comply with the Consent Order until Mr. McClarn brought this action. Even now, Defendants attempt to escape any duty

---

[2] Because the Court did not make a ruling on Plaintiff's Damages in its *Order Denying Defendants' Motion for Summary Judgment, Granting Plaintiff's Motion for Partial Summary Judgment and Notice of Hearing*, Mr. McClarn will not address the arguments for each category of damages in this Response.

they have under the Consent Order. Defendants parse through the Order sentence by sentence, taking each provision separately in order to avoid a finding of contempt for their intentional and continued violation of the directives and purposes set out in the Consent Order.

Despite Defendants' attempted methodology in interpreting the Consent Order, the Order's provisions are clear when read together. When Defendants' obligation to apply escrow funds is read in connection with Defendants' separate obligation to make the account current and Mr. McClarn's obligation to tender the outstanding past due payment amount, it is evident that the Order intends to bring the account back to "normal" so as to allow Mr. McClarn to start making regularly scheduled payments once more.

Only by reading the provisions of the Order together can the Court ascertain the obligations of the parties. This is exactly what the Court did in making its ruling in the summary judgment Order. The Court reviewed each provision of the Order and analyzed how they related to each other. In other words, the Court relied on the Consent Order in its totality and determined its meaning and the manifest intention of the parties. The Court correctly found that the Defendants are in contempt.

In their Reconsideration Motion, Defendants state that the Court failed to consider the standard set forth in *Taggart*. Defendants argue that *Taggart* requires that parties to an order have clear notice as to their obligations under an order before they may be found in contempt. But in advancing this argument, Defendants take each sentence of the Consent Order and try to read it independently as if it is an independent obligation requiring no additional context. Such a piecemeal review strips the Consent Order of its intended meaning and value to the parties. Such a myopic review is inappropriate. Defendants do this in an effort to avoid clarity with respect to the parties' duties under Consent Order and to extinguish any claim for contempt arising therefrom.

Despite the Defendants' desired interpretation of the order, the four corners of the document provide Defendants clear notice of their obligations when the Order is read as an entire document. *Taggart v. Lorenzen*, 139 S. Ct. 1795 (2019); *Jacksonville Branch, N.A.A.C.P. v. Duval*

*Cnty. Sch. Bd.*, 978 F.2d 1574, 1578 (11th Cir. 1992). Put differently, when the provisions of the Consent Order are read together, it is evident that the parties received explicit notice of "what conduct was outlawed," and Defendants' continued refusal to comply until Mr. McClarn initiated suit leaves no "fair ground of doubt as to the wrongfulness of the defendant's conduct." *Taggart*, 139 S. Ct. at 1801.

## II.    Defendants Have Not Met the Standard for Reconsideration.

Defendants' Motion for Reconsideration is not well-founded. Federal Rule of Civil Procedure 59 applies in bankruptcy cases with respect to motions to amend a judgment. Fed. R. Bankr. P. 9023. Motions for reconsideration should not be filed as a matter of routine practice, but only when a party believes it is absolutely necessary to do so. BLR 9023-1. Defendants have not met the extremely high standard required to grant reconsideration.

Under Rule 59, a Court may grant a new trial or alter or amend a judgment based upon newly discovered evidence or a manifest error of law or fact. A manifest error is the "wholesale disregard, misapplication, or failure to recognize controlling precedent." *Oto v. Metro Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) (citations omitted). A manifest error is not demonstrated merely because the losing party is disappointed. See *In re Murff*, No. 59055, 2016 Bankr. LEXIS 3437, at *4-5 (Bankr. N.D. Ga. Sept. 16, 2016).

Each argument made in Defendants' Reconsideration Motion has already been raised. Defendants' arguments in the Reconsideration Motion were vetted initially in *Defendant's Motion for Summary Judgment* and *Defendant's Response to Plaintiff's Cross-Motion for Summary Judgment*.  A motion brought in accordance with Rule 59(e) "is not to serve as a vehicle to relitigate old matters or present the case under a new legal theory or to give the moving party another bite at the apple by permitting the arguing of issues and procedures that could and should have been raised" earlier. *Mincey v. Head*, 206 F.3d 1106, 1137 n.69 (11th Cir. 2000) (internal punctuation and citations omitted).

Motions for Reconsideration are strongly disfavored, with relief given only where there is newly discovered evidence, to correct manifest errors of law or fact upon which the ruling was

based, or for a "reason that justifies relief." This requires a showing of exceptional circumstances. *In re 1278 Vill. Run Tr.*, No. 17-59905-PMB, 2017 Bankr. LEXIS 2475, at *2 (Bankr. N.D. Ga. Aug. 23, 2017). Such exceptional circumstances, however, must be based on an argument that could not have been made prior to the entry of the order.[3] *Id.*

Defendants' arguments were raised previously. The Court held that it is undisputed that Defendants failed to grant Mr. McClarn online account access as required by the Consent Order. Order at p. 2. Moreover, the Court found that "Defendants' lengthy delay [in applying escrow funds], cured only after the commencement of litigation, is a material breach of the Consent Order and supports finding Defendants in contempt." Order at p. 8. Finally, the Court found that the undisputed facts demonstrate that Mr. McClarn lacked bad faith in the delay of his tender of payment to Defendants. Order at p. 10.

The Court correctly held that "[t]he undisputed evidence establishes that Defendants breached the Consent Order by failing to provide Mr. McClarn with online access to his account and by failing to timely apply the escrow balance and Mr. McClarn's payment to the loan balance." Order at p. 10. These events occurred. There is no factual dispute that these events occurred. Defendants have offered no evidence, much less newly-discovered evidence, that these events did not occur. In all, the Defendants have presented no new evidence or an example of manifest injustice that would warrant reconsideration. *See* BLR 9023. The Reconsideration Motion should therefore be denied.

---

[3] An attempt to re-litigate the same arguments that were already made, which presents no new facts or interpretation of the law, does not set forth a valid basis for reconsideration. *In re 1278 Vill. Run Tr.*, No. 17-59905-PMB, 2017 Bankr. LEXIS 2475, at *3 (Bankr. N.D. Ga. Aug. 23, 2017). To prevail, the movant must present new evidence or establish a manifest error of fact or law. *In re Patel*, 16-65074-LRC, 2017 Bankr. LEXIS 216, at *4 (Bankr. N.D. Ga. Jan. 26, 2017). Moreover, a manifest error is not demonstrated merely because the losing party is disappointed. *Id.*

### III.   The Court Correctly Granted Mr. McClarn Summary Judgment as to Defendants' Liability on the Contempt Count.

#### A. *The Court's Order is Valid Under* Taggart.

Defendants assert in their Reconsideration Motion that the Court failed to address the standard established in *Taggart v. Lorenzen*, 139 S.Ct. 1795 (2019). The Defendants cited the *Taggart* case in their original summary judgment filings. *Taggart* is not case law that has not been considered. This Court correctly held that a consent decree can be enforced by contempt sanctions if the obligations of a consent order are found within the four corners of the consent order. The *Taggart* decision does not alter this conclusion in any way.

In its Order, this Court held:

> "Because a consent decree is a contract, we follow the rules for interpretation of contracts and apply principles of state contract law." *Peery v. City of Miami*, 977 F.3d 1061, 1069 (11th Cir. 2020). The court's inquiry involves both the interpretation of what the consent decree requires and the application of that interpretation to the facts. *Reynolds v. McInnes*, 338 F.3d 1201, 1211 (11th Cir. 2003); See also *Reynolds v. Roberts*, 202 F.3d 1303, 1312 (11th Cir. 2000); *Jacksonville Branch, N.A.A.C.P. v. Duval Cnty. Sch. Bd.*, 978 F.2d 1574, 1578 (11th Cir. 1992) (citing *United States v. Armour & Co.,* 402 U.S. 673, 682, (1971)); and *Paradise v. Prescott*, 767 F.2d 1514, 1525 (11th Cir.1985), *aff'd*, 480 U.S. 149 (1987)).  "Although a consent agreement may be enforced by judicial sanctions, … obligations required of each party to a consent decree must be found 'within its four corners, and not by reference to what might satisfy the purposes of one of the parties to it.'"  *Jacksonville Branch*, 978 F.2d at 1578 (citing United States v. Armour, 402 U.S. at 682 and *Paradise v. Prescott*, 767 F.2d at 1525).

Consent Order at p. 7. The *Taggart* case does not mandate a different result from that already reached by this Court in its Order.[4]  In the Reconsideration Motion, the Defendants state:

> The Defendants do not dispute that contract principles should guide the interpretation of the Consent Order, but that is not the entire analysis. In *Taggart*, the Supreme Court was clear that civil contempt "should not be resorted to where there is a fair ground of doubt as to the wrongfulness of the defendant's conduct . . . and that principles of 'basic fairness require that those enjoined receive explicit notice' of 'what conduct is outlawed' before being held in civil contempt." 139 S. Ct. at 1801 (citations omitted)….  This Court did not utilize or even refer to the *Taggart* standard in its Order, which the Defendants contend constitutes clear

---

[4] Defendants cited *Taggart* in their initial motion and therefore was considered but not cited by this Court in the Consent Order.

error. The Defendants briefed the *Taggart* standard in their summary judgment motion. See [Doc. 67] at pp. 9-10.

Defendants are correct that they "briefed" the "*Taggart* standard" in their summary judgment motion. But Defendants are incorrect in their assertion that the Court did not obtain the proper result.

As quoted by the Defendants, the *Taggart* standard indicates that sanctions should not be imposed unless the party to be held in contempt has explicit notice of what conduct is being outlawed.  The Defendants in the case at bar had explicit notice of what was required of them based upon the four corners of the Consent Order. Defendants flaunted and failed to follow the Court's Consent Order. There is no basis for the Court to reconsider its ruling:

> Defendants admit that McClarn did not have online access to his account by February 6, 2020, as required by the Consent Order.  Doc. 84, p. 3.  Defendants allege that McClarn gained online access in July of 2020, but McClarn insists that he has never had consistent online access to his account.  Doc. 66, Ex. C, p. 5, 6; Doc. 76, Ex. 1, p. 5.  Regardless, the undisputed fact remains that Defendants failed to provide McClarn with online access to his account within the time required by the Consent Order.

Order at p. 4. Defendants provide nothing that should persuade the Court it should reconsider its Order. Defendants do not point to any newly discovered evidence. Defendants instead baldly state that the Court misinterpreted the applicable legal standard. Defendants, in essence, urge the Court to read the *Taggart* case again.

When read in its entirety, the Order makes clear that Mr. McClarn was to make a payment of the outstanding post-judgment arrearage owed on his mortgage loan, and Defendants were to: (i) apply all withheld escrow funds to Mr. McClarn's account balance; (ii) grant Mr. McClarn online account access within 7 days of the entry of the Consent Order; and (iii) bring Mr. McClarn's account current through February 1, 2020. Defendants did none of these things correctly. Defendants were required to do these things so that Mr. McClarn could access his mortgage account and begin making regularly scheduled payments once more.

*B. The Court's Order Correctly Finds that Defendants' Actions Constitute Contempt.*

1. Defendants' Failure to Grant Mr. McClarn Account Access Supports a Finding of Contempt.

Defendants claim in the Reconsideration Motion that Defendant Citizens Trust does not have a website where borrowers can access their loan information. But Defendant Citizens Trust negotiated and agreed to the Consent Order. The Order clearly directed the Defendant to issue online account access within seven days of the entry of the order. In the most charitable understanding of Defendant Citizen Trusts' intention, one could assume that Citizens Trust had some sort of control over Defendant Loancare's willingness or ability to issue online account access to Citizens Trust loan holders. In a less charitable and perhaps more accurate reading of Defendant Citizens Trust's intention, one may assume that Citizens Trust never had the ability to grant Mr. McClarn account access, and Citizens Trust used the prospect of such access as a bargaining chip to secure the Order and Mr. McClarn's post judgment arrearage amount despite its intention never to comply with the Order.

As to the Defendants' obligation to grant Mr. McClarn online account access, the unrefuted evidence demonstrates that Defendants willfully violated the order or in the alternative never intended to comply with the Order even while negotiating its terms. In either case, there is no fair ground of doubt as to the wrongfulness of Defendants' conduct. As such, the Court did not err in ruling that Defendants are in contempt.

2. Defendants' Failure to Apply Mr. McClarn's Excess Escrow Funds Until After He Filed Suit Supports a Finding of Contempt.

The Consent Order expressly required Defendants to apply Mr. McClarn's outstanding escrow balance to the principal and interest of Mr. McClarn's mortgage account. Though the Consent Order did not set out an exact date by which the Defendants were to apply funds, it is evident based on the requirement for Mr. McClarn to pay his outstanding due mortgage payments, and the requirement that Mr. McClarn's account be made current through February 2020, that the parties intended those efforts to cure any delinquencies on Mr. McClarn's account so that Mr.

McClarn could start making payments when and as due in February 2020. That intention is further supported by the Court's directive to grant Mr. McClarn account access so that he could monitor the application of his payments.

When the Consent Order is taken as a whole, it is clear that Defendants were to immediately apply Mr. McClarn's payments so that he could make regular remittances as due and get his account back on track. It is unresolved whether a short delay in Defendants' efforts to apply payments would have constituted a violation of the Consent Order. But what is evident is that Defendants' failure to apply those payments for a period of months, all the while receiving contacts from Mr. McClarn to remedy them, constitutes a willful disregard for Mr. McClarn's rights under the Consent Order. Defendants' bad intention and disregard for Mr. McClarn is further supported by the fact that Defendants did immediately apply the outstanding escrow funds as soon as Mr. McClarn sought legal recourse. As such, the Court correctly found that Defendants' failure to apply escrow funds to Mr. McClarn's account was grounds for contempt.

3.  <u>Defendants' Failure to Bring Mr. McClarn's Account Current Until After He Filed Suit Supports a Finding of Contempt.</u>

Finally, Defendants committed a breach of the Order by failing to bring Mr. McClarn's account current as required by the Consent Order. Defendants claim that they complied with the Order by bringing Mr. McClarn's account current through February 2020 nearly four months later, *i.e.,* four months after February 2020. That reading of the provision would render the intention of the entire Consent Order meaningless. Defendants' actions caused Mr. McClarn to be nearly four months behind in his monthly payments by the time Defendants "brought him current." By that time, Mr. McClarn had been told that his mortgage was in foreclosure, and Mr. McClarn was forced to file a separate legal action against Defendants. Defendants ask the Court to ignore the context supplied by the Order and to find that Defendants could have brought Mr. McClarn current through February 2020 whenever they pleased. However, that interpretation is illogical. Read in its totality, it is evident that the parties and the Court sought to give Mr. McClarn the opportunity to bring his account current through the conclusion of his bankruptcy and to start making

payments as normal. As such, Defendants were on notice that they were to bring Mr. McClarn's

account current in the month of February. Their failure to do so constitutes an act of contempt.

## IV.    The Court Correctly Held Judgment on the Issue of Damages for Trial.

In their Reconsideration Motion, Defendants assert that Mr. McClarn failed to adequately

address the Defendants' Motion for Summary Judgment with regard to the issue of damages.

Defendants assert that therefore Mr. McClarn is barred from raising any argument with regard to

the issue of damages.

Defendants mis-state their own summary judgment motion and brief.[5] The Defendants'

motion for summary judgment was not phrased in any way similar to the following **hypothetical**

wording:

> Defendants seek summary judgment as to any liability on the Plaintiff's claim for
> contempt.  Furthermore, to any extent that the Court declines to grant Defendants
> summary judgment with regard to the Plaintiff's claim for contempt, Defendants
> seek summary judgment with regard to the Plaintiff's ability to recover damages
> with regard to the following categories of damages asserted by Plaintiff…

Defendants did not make this argument by their motion. Instead, Defendants sought summary

judgment because Mr. McClarn allegedly had no damages in any event. In other words,

Defendants assert that the damages element of the cause of action for contempt was lacking as

a matter of law.

Defendants' Brief specifically argues:

> Even if the Plaintiff could show that the Defendants violated any provision(s) of the
> Consent Order, summary judgment should still be granted to the Defendants
> because the Plaintiff does not have any recoverable damages.

Defendants' Brief (Doc. No. 67) at p. 11.

> Since the Plaintiff has failed to show that he is entitled to any of the damages that
> he has claimed, summary judgment should be granted to the Defendants on the
> Plaintiff's contempt claim as a whole and this case should be dismissed with
> prejudice.

Defendants' Brief (Doc. No. 67) at p. 15.

---

[5] Defendants' pattern and practice is to deflect their disregard of this Court's Consent Order upon
Mr. McClarn.

Defendants did not seek summary judgment as to a category or specific item of damages asserted by Plaintiff.  Instead, Defendants sought summary judgment on the cause of action for contempt based upon an argument that no damages were suffered by Plaintiff.

The Court should reject the assertion in the Reconsideration Motion that Mr. McClarn failed to sufficiently dispute or deny Defendants' factual statements regarding the issue of damages. This Court correctly concluded that the issue of damages is a fact issue to be determined at trial, where, inter alia, the credibility of testimony (from Mr. McClarn and from the Defendants' agents) and the demeanor of witnesses can be determined.

Defendants' Reconsideration Motion asserts that Mr. McClarn has not established any damages to Mr. McClarn based on Defendants' contempt.[6] The Reconsideration Motion treats the contempt count as if contempt is a claim for breach of contract or negligence. Under such causes of action, a court's inquiry is two-fold. First, liability is established. Second, damages are assessed. Mr. McClarn shows that the Court correctly has reserved the issue of damages for trial. However, Mr. McClarn also shows that the appropriate award at trial on Defendants' existing contempt is not limited to damages that Mr. McClarn has suffered. Other awards are both possible and warranted in this case.

The Court may assess three different types of awards against Defendants based upon their contempt of this Court's Order. Where a party has failed to comply with an order of a bankruptcy court, then the court has the power to impose sanctions as necessary and appropriate to carry out its orders. *Windstream Holdings Inc. v. Charter Commc'ns. Inc.*, 2021 Bankr. LEXIS 926, (S.D.N.Y. 2021) (reversed on other grounds at *In re Windstream Holdings Inc.*, 2022 U.S. Dist. LEXIS 183574 (S.D.N.Y. 2022)). The *Windstream* court held that such sanctions may include: "(1) coercive sanctions to encourage compliance, (2) damages for monetary harm, and (3) in appropriate generally egregious circumstances, relatively minor non-compensatory, or

---

[6] Defendants, of course, do not admit to be subject to a claim for contempt of the Order. Rather, Defendants argue that, even if Defendants are "liable" for contempt, then no damages award is appropriate.

punitive sanctions." *Id.* at 47-48. (Internal citations omitted). In this case, this Court should impose coercive, compensatory, and minor non-compensatory punitive sanctions on the Defendants for their failure to comply with this Court's Consent Order.

A. *The Court May Impose Coercive Sanctions at Trial.*

Coercive sanctions are meant to encourage compliance with an order of the court. *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1949). Coercive sanctions must specifically account for: "(1) the character and magnitude of the harm threatened by the continued contumacy; (2) the probable effectiveness of any suggested sanction in bringing about compliance; and (3) the contemnor's financial resources and the consequent seriousness of the burden of sanction upon him." *Weston Capital Advisors, Inc. v. PT Bank Mutiara, Tbk*, 738 Fed. Appx. 19, 22 (2d Cir. 2018).

In the current instance, the first factor weighs in favor of coercive sanctions. The character and magnitude of the harm imposed by Defendants' continued noncompliance is substantial. Defendants continue to assess interest on Mr. McClarn's account. Additionally, Defendants' noncompliance has served to hinder Mr. McClarn's efforts to refinance the property through another lender. Finally, the continued refusal of Defendants to grant Mr. McClarn electronic access to his loan account causes continued harm to him. Mr. McClarn is unable to monitor the account or the Defendant's activities with reference to the loan.

The second factor, the probable effectiveness of the suggested sanction in bringing Defendants into compliance, also weighs in favor of imposing coercive sanctions on Defendants. Specifically, Mr. McClarn has tried for over two years to bring Defendants into compliance with the Consent Order. Mr. McClarn's efforts have been to no avail. Even throughout this action, Defendants have refused to provide account access to Mr. McClarn. Defendants have failed to return funds which are rightfully owed to Mr. McClarn. Defendants have not allowed Mr. McClarn to make a payment. It seems unlikely that anything less than a substantial daily monetary sanction (until Defendants fully comply with the Consent Order) will prompt Defendants' compliance.

Finally, the third factor, the assets available to the contemnor, also weighs in favor of the imposition of daily coercive sanctions. The Defendants here are a bank and a mortgage servicer. Not only do they have access to assets from which they can pay sanctions, but Defendants oversee countless loan accounts. Others may be suffering from the same misfeasance imposed here on Mr. McClarn.

### B.  The Court May Award Compensatory Sanctions at Trial.

Compensatory sanctions, unlike coercive sanctions, are meant to compensate for losses or damages sustained by reason of non-compliance. See *McComb* at 191. These sorts of sanctions are meant to compensate a party for the actual damages incurred based on the subject parties' non-compliance. While the amount of compensatory sanctions does not need to be an exact one to one ratio between the damage done to the movant and the assets subject to the resulting contempt sanction, the amount sanctioned should correspond to some degree to the magnitude of the sanction imposed. *Weston Capital* at 21.

In their Reconsideration Motion, Defendants assert that the Court should have granted them summary judgment as to damages. Defendants focus on their perception that Mr. McClarn has not suffered compensatory losses or damages. In this case, Mr. McClarn has incurred substantial costs as a result of Defendants' noncompliance. Those damages include but are not limited to: interest assessed, escrow withheld, and attorneys' costs.

### C.  The Court Should Assess Non-compensatory Punitive Sanctions at Trial.

Bankruptcy courts have the authority to impose non-compensatory damages for an action of civil contempt under 11 U.S.C. § 105(a). *Adell v. John Richards Homes Bldg. Co. LLC.*, Fed Appx. 401, 415 (6th Cir. 2013). While the Court in *In re John Richards Homes Bldg. Co., LLC* found that there was no statutory basis for a bankruptcy court to impose "serious non-compensatory punitive damages," the Court did recognize that 11 U.S.C. § 105 (a) granted bankruptcy courts the authority to award minor non-compensatory punitive sanctions on non-compliant creditors. *Id.*

Other courts have similarly found that non-compensatory damages are appropriate where a creditor persists in its determination to violate a court's order. *In re 1601 W. Sunnyside #106, LLC*, 54 Bankr. Ct. Dec. 43, at 21-23 (Idaho 2010). Though the issue in *1601 W. Sunnyside* concerned the violation of an automatic stay by a creditor, the court relied on its inherent authority under § 105(a). The court held that bankruptcy courts can impose punitive sanctions under § 105 rather than under the courts' expanded power to protect the bankruptcy estate under 11 U.S.C. §326. The *Sunnyside* court declined to exactly define where the line lies between "relatively mild" and "serious" non-compensable sanctions. But the *Sunnyside* court did clarify that the relatively mild non-compensatory fines that do fall within the courts power under §105(a) are to be "narrowly limited to the amount necessary for rule enforcement."

If any doubt remains as to a Bankruptcy Court's authority to issue such sanctions, the court in *Rosellini v. United States Bankruptcy Ct.* found unambiguously that "bankruptcy courts, like Article III courts, possess inherent sanctioning powers… includ[ing] the power to impose relatively minor non-compensatory sanctions, [in appropriate circumstances]." *Rosellini v. United States Bankruptcy Ct.*, 941 F.3d 625, 627-28 (2d Cir. 2019).

## V.    Conclusion.

Mr. McClarn has tried to make payments on his loan multiple times since the Court entered the original Order. *See* McClarn Affidavit ¶ 20. Since Mr. McClarn tendered the Check for the post-petition arrearage on February 20, 2020, Defendants have never accepted any attempts by Mr. McClarn to make payments on his Mortgage account. *See* McClarn Affidavit ¶ 20. When Mr. McClarn attempts to make a payment in person, employees tell him they cannot accept his payments and advise Mr. McClarn to speak with Loancare's bankruptcy counsel. *See* McClarn Affidavit ¶ 21. When Mr. McClarn attempts to make a payment by phone, he is transferred to the bankruptcy department or collections and told that his loan is in foreclosure. *See* McClarn Affidavit

¶ 22. Defendants ignore these facts and fly-speck the Order instead by seeking to deconstruct each sentence separately.

Mr. McClarn respectfully requests this Court deny Defendants' Motion for Reconsideration.

This 2nd day of May, 2023.

**JONES & WALDEN LLC**

_/s/ Leon S. Jones_
Leon S. Jones
Georgia Bar No. 003980
Attorney for Anthony Carver McClarn
699 Piedmont Ave NE
Atlanta, Georgia 30308
(404) 564-9300
ljones@joneswalden.com

**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| IN RE:<br><br>**ANTHONY CARVER MCCLARN,**<br><br>        Debtor. | **CHAPTER 13**<br><br>**CASE NO. 14-75160-sms** |
| **ANTHONY CARVER MCCLARN,**<br><br>        **Plaintiff,**<br>v.<br><br>**CITIZENS TRUST BANK and<br>LOANCARE LLC,**<br><br>        **Defendants.** | **ADVERSARY PROCEEDING**<br><br>**NO. 20-06070-sms** |

## <u>CERTIFICATE OF SERVICE</u>

        This is to certify that I have on this day electronically filed the foregoing *Response in Opposition to Defendants' Motion for Reconsideration* (the "Response") using the Bankruptcy Court's Electronic Case Filing program, which sends a notice of and an accompanying link to the Motion to the following parties who have appeared in this case under the Bankruptcy Court's Electronic Case Filing Program:

- **Bret J. Chaness**    bchaness@rubinlublin.com, BJC-ECF-Notifications@rubinlublin.com
- **A. Christian Wilson**    cwilson@simplawatlanta.com, sscheu@simplawatlanta.com

        This 2nd day of May, 2023.

                        **JONES & WALDEN LLC**

                        */s/ Leon S. Jones*
                        Leon S. Jones
                        Georgia Bar No. 003980
                        699 Piedmont Avenue, NE
                        Atlanta, Georgia 30308
                        (404) 564-9300
                        ljones@joneswalden.com
                        Attorney for Plaintiff