IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE:<br><br>ANTHONY CARVER MCCLARN,<br><br>    Debtor. | Case No. 14-75160-sms<br>Chapter 13 |
| ANTHONY CARVER MCCLARN,<br><br>    Plaintiff,<br><br>v.<br><br>CITIZENS TRUST BANK and LOANCARE, LLC,<br><br>    Defendants. | Adversary No. 20-06070-sms |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION IN LIMINE TO LIMIT PLAINTIFF'S THEORIES OF THE CASE AND CLAIMS AND CALCULATIONS OF DAMAGES AND PRECLUDE INTRODUCTION OF UNDISCLOSED DOCUMENTS**

COME NOW, Citizens Trust Bank ("Citizens"), LoanCare, LLC ("LoanCare") (collectively, the "Defendants"), and file this Memorandum of Law in Support of their Motion in Limine to Limit the Plaintiff's Theories of the Case and Claims and Calculations of Damages and to Preclude Introduction of Undisclosed Documents, respectfully showing this Honorable Court as follows:

**RELEVANT FACTS**

Earlier in this case, the Defendants propounded written discovery on the Plaintiff, including interrogatories and requests for production of documents. *See* [Doc. 21]. One of the

1

interrogatories asked the Plaintiff to describe how he contends the Defendants violated the Consent Order. He responded as follows:

> 1. Failure to provide accurate statements;
> 2. Failure to provide online access to tender the funds;
> 3. Failure to apply funds;
> 4. Seeking to collect erroneous amounts in excess of what was allowed by the Consent Order;
> 5. Failing to update Plaintiff's account to reflect the Consent Order.

[Doc. 25] at pp. 6-7.

Another interrogatory posed to the Plaintiff asked him to "[p]lease describe, in detail, the damages that you are claiming in this action." [Doc. 38] at p. 3. In response, and under oath, the Plaintiff responded as follows:

- Interest incurred from 2019 to present due to not being able to modify or refinance the loan due to having dispute inaccurate accounting and other issues that prevented the bankruptcy from closing: $14,161.96 (30 months of 6.50% vs. 2.7%)
- Lost promotion opportunity ($20,000 annual): $21,667
- Medical costs: $63,832.26
- Pain and suffering, anxiety, sleep and memory problems: $50,000.00
- Punitive damages
- Attorney fees/costs: $4,850 ($200/hourly)

*Id.* at pp. 3-4.

Additionally, the Plaintiff was asked to "[p]lease produce all documents that evidence any damages that you are claiming in this adversary proceeding." [Doc. 37] at p. 8. In response, the Plaintiff claimed that "reasonably available documents has [*sic*] been produced by Plaintiffs and/or Defendants are already in possession of all the documents relevant to this request." *Id.* The Plaintiff produced only four PDF files totaling 17 pages during the entirety of this litigation. *See* Declaration of Bret Chaness, attached hereto as **Exhibit "A"**. These PDF files are: (1) a screenshot of a hard inquiry on the Plaintiff's credit report from 2019; (2) an overview of a medical visit from May 28, 2019; (2) a picture of a pill bottle from one of the Plaintiff's

2

prescriptions; and (3) a collection of monthly mortgage statements from January 2019, March 2020, April 2019, May 2019, August 2020, and November 2020. *Id.*

With respect to attorney's fees, the Defendants showed that the Plaintiff "never produced any evidence to substantiate that he actually incurred these fees and costs or what he actually paid. When asked for evidence, the Plaintiff produced nothing." [Doc. 67] at p. 15. The Plaintiff even admitted in his Response to the Defendants' Statement of Material Facts that he has not produced any evidence regarding fees. *See* [Doc. 78] at p. 31, ¶ 40. However, he did say that "Plaintiff's Affidavit . . . substantiates attorney fees incurred." *Id.* That is incorrect, and the only thing the affidavit said is:

> I have incurred at least $18,500 in attorneys' fees bringing this action. Specifically, I have been billed $18,500 by attorneys to prosecute this adversary proceeding in an effort to enforce the Consent Order. True and correct copies of the invoices from my counsel and prior counsels are available for use at trial.

[Doc. 78] at p. 11, ¶ 38.

In his Brief in Support of his Cross-Motion for Summary Judgment, the Plaintiff went beyond his interrogatory responses and contended he is entitled to compensatory damages that "include but are not limited to: interest assessed, the escrow funds withheld, and attorney's fee costs." [Doc. 77] at p. 20. Specifically, with respect to the interest assessed, the Plaintiff claimed that he is seeking "at least $22,122.63 in interest which Defendants assessed during the period when Defendants have rejected Plaintiff's payments." [Doc. 77] at p. 18. This is different than the reasoning given in his interrogatory response, which was that he was seeking interest caused by not being able to modify or refinance his loan. Also in that brief, the Plaintiff tried to introduce new theories as to how the Consent Order was violated by raising alleged issues that took place long after the Complaint was filed, such as insurance proceeds from April 2021 and a refinance loan application in 2022. *See* [Doc. 77] at pp. 14-17. These theories, however, were

3

determined by this Court to be "better characterized as alleged damages or requests for injunctive relief relating to Defendants' breaches of the Consent Order" rather than ways in which the Consent Order was allegedly violated. [Doc. 92] at p. 5.

On July 11, 2023, at 4:36pm, following mediation with Judge Bonapfel, the undersigned received an e-mail from Leon Jones that contained the Plaintiff's Supplemental Responses to Defendants' Interrogatories and Requests for Admission. *See* [Doc. 111] (certificate of service). A true and correct copy of the supplemental responses are attached hereto as **Exhibit "B"**. In his reply brief during summary judgment, the Plaintiff stated he "intends to submit supplemental discovery responses shortly following the filing of this brief." [Doc. 87] at pp. 5-6 n.1. That brief was filed on November 16, 2022. Discovery closed on July 18, 2022. [Doc. 63]. Thus, it took the Plaintiff nearly eight months to supplement once he stated his intent to do so and did so almost one year after the close of discovery. In his supplemental responses, the Plaintiff now claims the following as damages:

> 5. Please describe, in detail, the damages that you are claiming in this action.
>
> **RESPONSE:** Mr. McClarn seeks damages or sanctions in the form of:
>
> (1) abatement or removal of all interest on the loan from January 2020 to present;
>
> (2) insurance payment proceeds converted by Defendants from Mr. McClarn (plus interest from the date Defendants refused to return the check as promised). This amount is $15,054.53 plus interest accrual on such amount;
>
> (3) amounts (to be determined at trial) for Defendants' failure to timely process Mr. McClarn's refinancing application and his lost opportunity to take advantage of lower interest rates. This amount is currently estimated at $44,149.14. This is the difference in the interest rate that the continuous refusal to provide Mr. McClarn's payoff balance (with CUFS) cost Mr. McClarn;
>
> (4) attorney's fees and costs to Mr. McClarn in bringing this action, in an amount to be later determined at trial. As of June 30, 2023, Plaintiff has incurred attorney fees of approximately $64,370.00. This includes: (a) $53,370 incurred with Jones & Walden, LLC, and (b) $11,000.00 incurred with the Simmons Finney Law Firm;

4

(5) refund of appraisal fee paid to CUFS because the defendants would not report the payoff to the refinance lender after being asked numerous times by the refinance lender and Mr. McClarn's attorney at the time. This amount is $600.00.

(6) damages for emotional distress in an amount to be determined by the trier of fact but requested at $150,000.00;

(7) any punitive damages sanctions which the Court deems appropriate based on Defendants' continued non-compliance with Consent Order. Mr. McClarn seeks an award of punitive damages in recognition of Defendants' callous disregard for the rights of Mr. McClarn, as demonstrated by Defendants' conduct since the entry of the Order; and

(8) the application of any escrow funds to the principal balance of Mr. McClarn's account or payment of such to Mr. McClarn.

Additionally, Mr. McClarn is seeking coercive sanctions, which are severe enough and consequent enough to encourage the Defendants to come into compliance with the Order.

Also in the supplemental responses, the Plaintiff is adding numerous theories as to how the Consent Order was supposedly violated, stating:

> **RESPONSE:** Mr. McClarn asserts that the Defendants violated the Consent order by:
>
> (1) Failing to bring Mr. McClarn's account current, and subsequently classifying his account as in foreclosure or bankruptcy;
>
> (2) Denying Mr. McClarn access to his online account;
>
> (3) Rejecting Mr. McClarn's payment attempts since February of 2020;
>
> (4) Applying interest to Mr. McClarn's account for outstanding funds during a period in which they were denying his payments, and continuing to let that interest to accrue despite Mr. McClarn inability to access his account and make payments;
>
> (5) Seizing and retaining insurance proceeds ($15,054.53) which are rightfully owed to Mr. McClarn;
>
> (6) Failing to process Mr. McClarn's mortgage refinancing application in a timely manner; and
>
> (7) Failing to provide Mr. McClarn's refinance lenders with accurate payoff statements as requested.
>
> Mr. McClarn reserves the right to amend this response as new facts are discovered, and as additional theories are developed.

5

Lastly, the Plaintiff, in his supplementation, is again refusing to provide any evidence of his attorney's fees:

> 10. If any of the damages that you identified in response to Interrogatory No. 5 include attorney's fees, please describe your fee arrangement with your counsel, including (1) the hourly rate, and (2) whether your fee arrangement is memorialized in writing.
>
> **RESPONSE:** Throughout the course of this litigation, Mr. McClarn has had three separate counsels, each with its own fee arrangement. Mr. McClarn's Fee Agreement with Jones & Walden, LLC is payment of fees based on current hourly rates. Mr. McClarn's fee arrangement with the Simmons Finney Law Firm is based on fees at the hourly rates. Mr. McClarn does not seek damages based upon fees of Jeff Field's representation. A true and correct copy of all invoices of Mr. McClarn's Counsel and prior counsel are available for use at trial. Mr. McClarn reserves the right to amend this response as new facts are discovered, and as additional theories are developed.

The Plaintiff must be held to the theories and categories of how the consent order was allegedly violated and damages claimed in his interrogatory responses and additionally cannot be allowed to introduce any evidence that was not produced in response to the Defendants' Request for Production of Documents. Although he has tried to supplement his responses, that has come far too late and they must be excluded.

## ARGUMENT AND CITATION OF AUTHORITY

**A.  THE PLAINTIFF MUST BE LIMITED TO HIS THEORIES AND CALCULATIONS OF DAMAGES THAT WERE PROVIDED DURING DISCOVERY**

The Plaintiff is trying to stray far afield from the theories of the case and damages claimed and calculated in his interrogatory responses. This should not be permitted at trial. "A party's opinion and contentions *are* discoverable by interrogatory." *Banks v. Office of Senate Sergeant-at-Arms*, 222 F.R.D. 7, 13 (D.D.C. 2004) (citing Fed. R. Civ. P. 33(c) & advisory

6

committee's note) (emphasis in original). "As to requests for opinions or contentions that call for the application of law to fact, they can be most useful in narrowing and sharpening the issues, which is a major purpose of discovery." *Id.* "More specifically, contention interrogatories may enable the propounding party to determine the proof required to rebut the responding party's position." *Johnson v. Kraft Foods N. Am., Inc.*, 236 F.R.D. 535, 544 (D. Kan. 2006) (citing *Steil v. Humana Kan. City, Inc.*, 197 F.R.D. 445, 447 (D. Kan. 2000); *see also CIBA Vision Corp. v. Bausch & Lomb, Inc.*, No. 2:99-CV-0034 RW, 2003 WL 25774307, at *3 (N.D. Ga. Dec. 22, 2003) (citations omitted) ("The court recognizes that the purpose of interrogatories is not only to obtain facts, but narrow and crystalize the issues before the court." [cit.]. "The purpose of contention interrogatories is to narrow and define issues for trial and to enable the propounding party to determine the proof required to rebut the respondent's position." [cit.].).

The Defendants sought to narrow the issues from the Complaint by discovery, especially as all claims except one (for contempt) were dismissed before discovery started. They sought to discover the exact theories the Plaintiff intended to proceed on and the damages he was claiming in an effort to understand what needed to be defended against and what needed to be asked at the Plaintiff's deposition. The Plaintiff must be bound by his interrogatory responses, which he verified under oath and never supplemented until *one year* after the close of discovery. To allow him to expand the issues at this point in the case is unfair surprise and highly prejudicial to the Defendants. *See, e.g., Hochstein v. Microsoft Corp.*, No. 04-73071, 2009 WL 2498481, at *5-6 (E.D. Mich. Aug. 17, 2009) (granting motion in limine with respect to new theories never set forth in pleadings or interrogatory responses).

In fact, Fed. R. Civ. P. 37(c)(1) expressly precludes the Plaintiff from pursuing different theories from those set forth in response to the contention interrogatory "unless the failure was

7

substantially justified or is harmless." "The burden of establishing that a failure to disclose was substantially justified or harmless rests on the nondisclosing party." *Mitchell v. Ford Motor Co.*, 318 F. App'x 821, 824 (11th Cir. 2009) (quoting *Leathers v. Pfizer, Inc.*, 233 F.R.D. 687, 697 (N.D. Ga. 2006)). In full, the rule states:

> **(c) Failure to Disclose, to Supplement an Earlier Response, or to Admit.**
> **(1) *Failure to Disclose or Supplement.*** If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:
>> **(A)** may order payment of the reasonable expenses, including attorney's fees, caused by the failure;
>> **(B)** may inform the jury of the party's failure; and
>> **(C)** may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).

In turn, Rule 26(e) requires that

> **(1) *In General.*** A party who has made a disclosure under Rule 26(a)--or who has responded to an interrogatory, request for production, or request for admission-- must supplement or correct its disclosure or response:
>> **(A)** in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or
>> **(B)** as ordered by the court.

Although the Plaintiff tried to supplement, it does not count under Rule 26(e). The rule requires supplementation in a *timely* manner, not eight months after you announce your intention to do so and one year after the close of discovery and under two months before trial.[1] *See L.A. v. Riverside Mil. Acad. Found., Inc.*, No. 2:18-CV-00215-RWS, 2021 WL 8998914, at *5 (N.D.

---

[1] The fact that the supplementation came on the afternoon following mediation is shocking. The Defendants spent hours preparing for and attending mediation and evaluated the case based on information provided during the discovery process to value settlement offers. Then, one hour after the conclusion of mediation, the Plaintiff supplemented to claim damages in amounts that are nearly double what he originally claimed ($299,173.67 versus $154,511.22).

8

Ga. Sept. 30, 2021) (citing *Rigby v. Philip Morris USA Inc.*, 717 F. App'x 834, 295 (11th Cir. 2017); *Davis v. Green*, No. 1:12-CV-3549-WSD, 2015 WL 1729879, at *1 (N.D. Ga. Apr. 13, 2015)).

> FRCP 26(e)(1)(A) does not define "in a timely manner," implying that timeliness "depend[s] on the facts and circumstances of each case." U.S. ex rel. Fry v. Guidant Corp., No. 3:03–0842, 2009 WL 3103836, at *4 (M.D. Tenn. Sept. 24, 2009). In any circumstance, parties should supplement disclosures and responses "in a fashion that will allow [the opposing party] to conduct meaningful discovery and avoid undue delay in the progress of [the] case." Id.
>
> To determine whether a disclosure was timely, some courts look to the thirty-day window to respond to other discovery requests. See Trust v. Durst, No. 12–5255, 2015 WL 7720481, at *6 (D.N.J. Nov. 30, 2015). Other courts define "timely" based on when the disclosing party should reasonably know that its disclosures are incomplete or incorrect. Jama v. City & Cty. of Denver, 304 F.R.D. 289, 299-300 (D. Colo. 2014). And still other courts, including the Eleventh Circuit, excluded disclosures when the party filed them after the discovery deadline. See Rigby v. Philip Morris USA Inc., 717 F. App'x 834, 835 (11th Cir. 2017) (finding Plaintiff's supplemented Witness List untimely because they disclosed the witnesses after the discovery period ended). In Sommer v. Davis, for example, the Sixth Circuit excluded expert testimony when a party made disclosures more than seven months after the close of discovery. 317 F.3d 686, 692 (6th Cir. 2003).
>
> . . .
>
> Federal Rule of Civil Procedure 37(c)(1) establishes the consequences for parties who fail to comply with Rule 26. According to FRCP 37(c)(1), the Court may impose appropriate sanctions if a party fails to: (1) make initial disclosures under Fed. R. Civ. P. 26(a)(1); (2) make expert disclosures under Fed. R. Civ. P. 26(a)(2); or (3) supplement such disclosures as required by Fed. R. Civ. P. 26(e)(2).
>
> Rule 37's sanctions are not absolute. A court does not have to impose sanctions if it finds that a failed or inadequate disclosure was "substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1); see also Kondragunta, 2013 WL 1189493, at *7. The Kondragunta Court utilized five factors to decide whether an inadequate disclosure was harmless: (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the non-disclosing party's explanation for its failure to disclose the evidence. Kondragunta, 2013 WL 1189493, at *7.

*Id.* at *3.

9

The first question is whether the supplementation was timely. It was clearly not. In *Rigby*, the Eleventh Circuit found that supplementing after discovery ended was untimely. 717 F. App'x at 835. In *Sommer*, the Sixth Circuit found that supplementing six months after the close of discovery was untimely. 317 F.3d at 692. And in *L.A.*, the district court found that supplemental disclosures made "two weeks before the Consolidated Pretrial Order was due . . . and in the last three months before trial" were untimely, noting that "Plaintiff's timing put unnecessary stress on Defendants and further disrupted two years of delayed litigation." 2021 WL 8998914, at *5-6.

In another case in this district, Judge May adopted the report of a Special Master concluding that supplemental interrogatory responses were untimely when they were made on the last day of discovery. *See Bayer Healthcare Pharms., Inc. v. River's Edge Pharms., LLC*, No. 1:11-CV-1634-LMM, 2015 WL 11142425 (N.D. Ga. July 31, 2015), *report and recommendation adopted*, 2015 WL 11142428 (N.D. Ga. Sept. 22, 2015). The Special Master concluded "that Plaintiffs' supplementation was not timely . . . because it was not provided in time for Defendants to respond during fact discovery. Plaintiffs' supplementation was slipped in under the wire, which is not consistent with fair play in discovery." *Id.* at *6.

Here, the untimeliness is far more egregious than in any of the cited cases. The Plaintiff here waited nearly one year after the close of discovery and eight months after he announced his intention to supplement during summary judgment briefing (although even if he had supplemented immediately after this it would have been untimely), with trial less than two months away. As in *L.A.*, "Plaintiff's timing put unnecessary stress on Defendants and further disrupted [three] years of delayed litigation." 2021 WL 8998914, at *5-6. The stress on the Defendants cannot be understated, with trial less than two months away, the Plaintiff has now introduced entirely new theories of the case and of his damages and the Defendants have no idea

10

what to prepare for at trial. The supplemental responses are untimely, and as will be shown, were not substantially justified or harmless.

Now that it has been established that the supplemental responses were untimely, the next question to answer is whether the failure to timely supplement was substantially justified or harmless. *See* Fed. R. Civ. P. 37(c)(1). It must be reiterated that the burden is on the Plaintiff to make this showing. *See Mitchell*, 318 F. App'x at 824. The facts are clear that he will never be able to meet this burden. Judges in this district use five factors to determine if an untimely supplementation is harmless:

> (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the non-disclosing party's explanation for its failure to disclose the evidence.

*L.A.*, 2021 WL 8998914 at *3 (quoting *Kondragunta*, 2013 WL 1189493, at *7).

There is no substantial justification for supplementing this late in the game and the Plaintiff has never tried to provide one. This is especially true because the Plaintiff had ample time to supplement his interrogatory responses between February 17, 2021 (when they were initially served) [Doc. 25] and the close of discovery on July 18, 2022. [Doc. 63]. The failure to timely supplement was also not harmless and all five factors weigh in favor of prohibiting the use of any of the information from the supplemental responses.

*First*, the Defendants were completely caught off guard and surprised by the extremely late supplemental responses. This case has been pending for over three years and discovery has been complete for nearly one year. Although the Plaintiff suggested in his summary judgment briefs that he was prosecuting the case based on theories and damages claims not set forth during discovery and was going to imminently supplement (which would have still been untimely) the Plaintiff never formally supplemented, and therefore the Defendants "did not know for sure how

11

or whether Plaintiff[ ] would rely on the evidence until the interrogatory was supplemented." *Bayer*, 2015 WL 11142425, at *9. Moreover, the supplemental responses do not identically match what was set forth in the summary judgment briefs. The surprise was magnified by the fact that the additional damages sought were not made known to the Defendants until after they had spent hours of time and thousands of dollars preparing for and attending a mediation with a completely different view of the case than the Plaintiff arrived with due to the supplemental responses.

*Second*, there is no ability to cure the surprise. Trial is scheduled for August 30 and the discovery period expired nearly a year ago. While it is certainly possible to reopen discovery and continue the trial date to try to cure the surprise, *see, e.g., id.*, this is not a viable option and is one that would significantly prejudice the Defendants. This is primarily because the Plaintiff's newly claimed damages include interest that is accruing each month and attorney's fees that continue to mount. Allowing additional discovery would only allow the Plaintiff to claim more damages due solely to the delay. As Judge Story said in refusing to reopen discovery to remedy untimely supplementation, "[a]t some point, the Court has to stop discovery and require the litigants to commit to their positions so that the case can be concluded." *CIBA*, 2003 WL 25774307, at *3. In *CIBA*, the supplementation occurred in September 2003 when discovery ended in March 2002 and trial was scheduled for January 2004. That is a similar situation to the instant case. The Defendants have been defending this case for over three years and it is time to try it and get it concluded.

*Third*, allowing the new theories and claims of damages would absolutely disrupt the trial. There is no way for the Defendants to adequately prepare for the new theories and claims of damages on such short notice, and allowing the Plaintiff to rely on these would only "provide

fodder for future parties to do the same." *L.A.*, 2021 WL 8998914, at *7. The August 30 trial date should proceed as scheduled without allowing the Plaintiff to utilize anything other than the theories and claims of damages set out in his discovery responses served while discovery was still open.

*Fourth*, the new theories and calculations of damages set forth by the Plaintiff are immensely important to this case, as this Court has already determined liability and the trial is solely about damages. Thus, the supplemental information is likely the heart of the case that the Plaintiff will be putting on at trial. He should not be allowed to do such a thing at the last minute.

*Fifth*, as noted earlier, the Plaintiff has offered no justification for the untimely supplementation. This is his burden.

Thus, all five factors clearly weigh in favor of prohibiting the Plaintiff from utilizing any of the supplemental discovery responses served on July 11, or anything else outside of the discovery responses that were served while the discovery period was still open. *See* [Docs. 25, 38].

In addition to Rule 37 prohibiting the Plaintiff from using the claims in the supplemental responses, Rule 15 also provides support. This is because many of the issues set out in the supplemental responses that serve as alleged bases for how the consent order was violated or how the Plaintiff was damaged concern actions that took place long after the Complaint was filed, such as insurance proceeds from April 2021 and a refinance loan application in 2022. *See also* [Doc. 77] at pp. 14-17. These issues were obviously not raised in the Complaint and are not brought up at all in the original interrogatory response detailed above. When a plaintiff attempts to raise issues that arose after the filing of the Complaint, "[Fed R. Civ. P.] 15(d) required

13

Plaintiff to provide reasonable notice and move for leave to set out a new cause of action." *Iler Group, Inc. v. Discrete Wireless, Inc.*, 90 F. Supp. 3d 1329, 1344 (N.D. Ga. 2015).

> But "[a] district court shall freely give leave to amend 'when justice so requires.'" *Nance v. Ricoh Elecs., Inc.,* 381 Fed.Appx. 919, 923 (11th Cir. 2010) (quoting *Laurie v. Ala. Court of Criminal Appeals,* 256 F.3d 1266, 1274 (11th Cir.2001)). " 'There must be a substantial reason to deny a motion to amend,' such as 'undue delay, bad faith, dilatory motive on the part of the movant, ... undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment.' " *Id.*

*Id.*

> Binding case law holds that "[p]rejudice and undue delay are inherent in an amendment asserted," as in this adversary proceeding, "after the close of discovery and after dispositive motions have been filed, briefed, and decided." *Campbell v. Emory Clinic,* 166 F.3d 1157, 1162 (11th Cir. 1999) (citations omitted). Indeed, undue delay has been found when a motion to amend was filed on the last day of an extended discovery period, even before motions for summary judgment were filed. *Maynard v. Board of Regents,* 342 F.3d 1281, 1287 (11th Cir. 2003); *Keeler v. Florida Dept. of Health,* 324 fed. Appx. 850, 857–58 (11th Cir. 2009) (finding undue delay when discovery was closed and deadline to file motions to amend had passed). An amendment made after discovery has closed would have "produced more attempts at discovery, delayed disposition of the case, and likely prejudiced [the defendant]." *Id.*

*Cooper v. Bullock (In re Bullock)*, No. 08-43724-MGD, 2012 WL 4511266, at *3 (Bankr. N.D. Ga. Aug. 14, 2012).

Since the Plaintiff here has waited until after the close of discovery and after summary judgment was filed to assert new theories of contempt based on facts that arose after the Complaint was filed, it follows that there is undue delay and prejudice to the Defendants if this Court was to allow consideration of these issues. Since the Plaintiff has failed to comply with Rule 15(d), he should not be permitted to raise these issues now. This Motion in Limine should be granted and the Plaintiff should be prohibited from asserting any theories of contempt or claims of damages that are not found in his initial interrogatory responses found at Docket Entries 25 and 38.

14

B.  **THE PLAINTIFF SHOULD BE BARRED FROM INTRODUCING ANY EVIDENCE NOT PREVIOUSLY DISCLOSED TO THE DEFENDANTS**

As detailed above, the Plaintiff has produced a total of 17 pages of documents in this case. He must be limited to utilizing only these documents as his documentary evidence, as Rule 37(c)(1) applies equally to requests for production of documents. *See* Fed. R. Civ. P. 26(e). Courts around the country routinely grant motions in limine to prohibit the use of undisclosed evidence. *See Doe v. Stephen*, No. 3:20-CV-00005-SHL-HCA, 2022 WL 4182197, at *4 (S.D. Iowa July 27, 2022); *Massey, Inc. v. Moe's Sw. Grill, LLC*, No. 1:07-CV-00741-RWS, 2014 WL 11517813, at *1 (N.D. Ga. Nov. 18, 2014); *Union Pac. R. Co. v. Progress Rail Servs. Corp.*, No. 8:10CV38, 2013 WL 1869779, at *5 (D. Neb. May 3, 2013), *aff'd*, 778 F.3d 704 (8th Cir. 2015). Here, the Plaintiff did not even attempt a late supplementation of documents and this Court is faced with simply prohibiting the use of documents that have *never* been produced in any form at any time. Since Rule 37(c)(1) applies, the same analysis regarding the interrogatory responses should compel this Court to conclude that the Plaintiff cannot use anything but the 17 pages previously produced.

This Court should especially preclude the introduction of any evidence of the Plaintiff's attorney's fees, as his behavior with respect to these documents has been particularly egregious. The Defendants asked in discovery for evidence of these fees and were not given any documentation, and when pointed out during summary judgment, the Plaintiff admitted this point and said that he's going to withhold all that information until trial. Shockingly, the Plaintiff is continuing to take this stance in his supplemental responses even though he is now claiming that his current attorney has incurred $53,370 in fees. Essentially, he wants to surprise the Defendants with this information and deny them any opportunity in advance of trial to prepare a defense to these fees. This bad faith litigation tactic should not be tolerated and the Plaintiff should be

15

prohibited from introducing any undisclosed document, including all evidence of his attorney's fees.

## CONCLUSION

Based on the foregoing, the Defendants respectfully request that this Court grant their Motion in Limine and (1) preclude the Plaintiff from utilizing any of the theories of the case or claims and calculations of damages set out in his supplemental discovery responses served on July 11, 2023; (2) limit the Plaintiff to the theories of the case and claims and calculations of damages set forth in his interrogatory responses filed at Docket Entries 25 and 38; and (3) preclude the Plaintiff from introducing any evidence not previously disclosed to the Defendants.

Respectfully submitted, this 14th day of July, 2023.

/s/ Bret J. Chaness
BRET J. CHANESS (GA Bar No. 720572)
**RUBIN LUBLIN, LLC**
3140 Avalon Ridge Place, Suite 100
Peachtree Corners, GA 30071
(678) 281-2730 (Telephone)
(404) 921-9016 (Facsimile)
bchaness@rlselaw.com

*Attorney for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on the 14th day of July, 2023, I filed the within and foregoing via CM/ECF, which will serve electronic notice on all parties.

/s/ Bret J. Chaness
BRET J. CHANESS (GA Bar No. 720572)

16